Diane M. Johnsen, 007634 / djohnsen@omlaw.com
John L. Blanchard, 018995 / jblanchard@omlaw.com
Ronda R. Fisk, 022100 / rfisk@omlaw.com
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2794
(602) 640-9000

Attorneys for National Board of Medical Examiners,
Federation of State Medical Boards of the United States, Inc.,
Educational Commission for Foreign Medical Graduates

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph E. Krolik, M.D.,<br><br>           Plaintiff,<br><br>vs.<br><br>United States Medical Licensing Examination, a joint program of the Federation of State Medical Board of the U.S., Inc., and the National Board of Medical Examiners, National Board of Medical Examiners, Federation of the State Medical Board of the U.S., Inc., Educational Commission for Foreign Medical Graduates,<br><br>           Defendants. | No. CV05-0315 PHX FJM<br><br>**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Plaintiff Ralph Krolik is a 60-year-old man with a history of substantial academic and professional success. A military veteran, he graduated from the University of New Mexico with a Bachelor of Science in Pharmacy. After passing a licensing exam, he worked for many years as a pharmacist, then was admitted to the American University of the Caribbean Medical School. Dr. Krolik graduated with a medical degree in 1996 at the age of 52 after completing a rigorous academic course load. He now seeks an extraordinary order from this Court requiring the National Board of Medical Examiners (the "NBME" or the "Board") to give him twice the time allowed other examinees when he takes the United States Medical Licensing

Examination ("USMLE" or the "Examination").[1]  As shown below, his request should be denied.

The USMLE is used throughout the United States to test the minimum competency of individuals who wish to become physicians.  *See* Declaration of Joseph Abram Doane ("Doane Decl."), attached as Exhibit 1 hereto, ¶ 3.  Defendant NBME administers the USMLE through Thomson Prometric, its delivery vendor.  *Id.* ¶ 7.  States have chosen to accept passage of the USMLE as demonstrating minimum competency, relying on the integrity and validity of the test.  *Id.* ¶ 4.  All 50 states require the successful completion of the USMLE as a prerequisite to obtaining a medical license.  *Id.*  As a screening device, the USMLE tests the minimum knowledge required to be a physician.  *Id.* ¶ 3.  Thus, the integrity of the USMLE is essential to the protection of the public.  The NBME is responsible for ensuring that the USMLE impartially tests the qualifications of aspiring physicians.  *Id.* ¶ 8.

The USMLE is composed of three components, called "Steps."  *Id.* ¶ 5.  Plaintiff has been unable to pass any Step despite sitting for the Examination 13 times since 1995.  *Id.* ¶ 15.[2]  He asserts he is entitled under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, to receive special accommodations to take the Examination because he alleges he suffers from Attention Deficit/Hyperactivity Disorder ("ADHD") and a Learning Disorder.

Plaintiff first sought special accommodations for the Examination in 1998.  Doane Decl. ¶16.  The limited information Plaintiff has submitted in support for his requests—testing results, academic records, and expert reports—show that he has achieved a lifetime of success without accommodations and no evidence of an impairment that limits his ability to work, learn or read in comparison to most people.

---

[1]  Examinees take the USMLE at a computer, reading the questions on the screen and responding using the keyboard and/or mouse.  Dr. Krolik also asks that the Court require the NBME to permit him to take the test using a paper and pencil.

[2]  Dr. Krolik asserts that he has unsuccessfully taken Step 1 of the USMLE six times and Step 2 eight times.  Affidavit of Ralph E. Krolik ("Krolik Aff."), Motion, Exhibit A thereto, ¶ 4.  NBME records show he took Step 1 seven times and Step 2 six times.  Doane Decl. ¶ 15.

Accordingly, each of his requests has been denied because he cannot prove that he has a disability within the meaning of the ADA.

Plaintiff cannot meet the standards for a mandatory preliminary injunction for at least three separate reasons. First, he cannot demonstrate any imminent or irreparable injury sufficient to support a preliminary injunction prior to a hearing on the merits. Dr. Krolik has already graduated from medical school and has been trying unsuccessfully to pass the Examination since 1995. Although he has threatened legal action since 1999, he filed this lawsuit in February 2005 and only now has belatedly sought an injunction. In any event, the delay Dr. Krolik alleges is compensable by damages.

Second, Plaintiff has failed to demonstrate a strong likelihood of success on the merits. In order to establish a cognizable disability under the ADA, Plaintiff must prove that he has an impairment that substantially limits a major life activity—which he claims is his ability to work—in comparison to the *average person*. Dr. Krolik's evidence fails to establish that he has an impairment, let alone one that substantially limits his ability to work in the same capacity as the average person. His success as a student and his lengthy career as a pharmacist refute any such contention.

Finally, the balance of hardships and public policy strongly favors the denial of a preliminary injunction. The NBME grants appropriate accommodations to qualified examinees to ensure that every examinee takes the Examination on equal footing and to allow states to determine whether physician candidates meet the minimum prerequisites for medical knowledge. Doane Decl. ¶ 9. The NBME is entrusted with the responsibility of ensuring that the Examination is administered in a manner that properly identifies those individuals qualified to become physicians. *Id.* ¶ 3. To accomplish this goal, the NBME carefully reviews, and, when appropriate, grants requests for accommodations due to disabilities. *Id.* ¶ 9. However, the NBME cannot grant a request for an accommodation by an examinee who is not actually impaired in performing a major life activity as compared to the general population. To do so

3

would undermine the integrity of the USLME and the method for determining minimum standards for the medical profession, would put patients at risk, would be unfair to those taking the exam without accommodation, and would undermine the goal of the ADA to put the disabled on an equal footing with others.

For these reasons and for those set forth in more detail below, Plaintiff's motion for a preliminary injunction should be denied.

## FACTUAL BACKGROUND

Dr. Krolik graduated from American University of the Caribbean Medical School in 1996. Like many medical students, he first took Step 1 of the USMLE while still in medical school, in 1995. Doane Decl. ¶ 15. Between September 1995 and August 12, 1998, Plaintiff attempted and failed Step 1 five times and Step 2 (CK) three times. *Id*. It was only then, Dr. Krolik alleges, that he was first diagnosed with ADHD. Affidavit of Ralph E. Krolik, M.D. ("Krolik Aff."), Motion, Ex. A thereto, ¶ 6. In late 1998, Dr. Krolik for the first time requested testing accommodations in connection with the USMLE under the ADA. Doane Decl. ¶¶ 16-18. He submitted other requests for accommodations in 1999, 2001 and 2003. *Id.* ¶¶ 20, 23, 24. Expert evaluators searched his submissions for evidence demonstrating that he is indeed impaired by ADHD or a Learning Disability, and, if so, whether his impairment substantially limits him in a major life activity. *Id.* ¶¶ 18, 22, 26-28. Because Dr. Krolik's documentation failed to show that he suffers from ADHD or a Learning Disability and failed to demonstrate any substantial limitation of a major life activity, each of his requests was properly denied. *Id.* ¶¶ 18-29.

At issue in Dr. Krolik's Complaint is his most recent application for accommodations, dated November 3, 2003. In response to NBME's invitation to supplement his application with certain expert analyses, Plaintiff supplied two psychological reports and various elementary school records. *See* Doane Decl. ¶ 24; Motion, Exs. B, D thereto. Because Dr. Krolik asserted he suffered both from ADHD and a Learning Disability that impaired his ability to read, following the NBME's

1  standard practices and procedures, his material was reviewed by experts in those two
2  fields, Drs. Michael Gordon and Joseph E. Bernier, respectively.  *See* Doane Decl.
3  ¶ 26; Report of Michael Gordon, Ph.D., attached as Exhibit 2 hereto ("Gordon Rep.");
4  Declaration of Joseph E. Bernier, Ph.D., attached as Exhibit 3 hereto ("Bernier
5  Decl.").
6      Dr. Gordon, a recognized ADHD expert, concluded that Dr. Krolik's
7  documentation failed to show that he suffered from ADHD or that he was
8  substantially limited in a major life activity, as required by the ADA.  Doane Decl. ¶
9  27.  His report noted that while ADHD by definition manifests in childhood and
10 affects the sufferer in school, at work and in routine tasks, Dr. Krolik demonstrated no
11 such history of significant impairment.  Gordon Rep. ¶¶ 20-26.  To the contrary, Dr.
12 Gordon found that Dr. Krolik's documentation showed him to be a highly successful
13 and well-adjusted individual whose academic credentials "place him at a level of
14 academic attainment beyond the reach of many people."  *Id.* ¶ 25.  Dr. Bernier, a
15 learning disability expert, also reviewed Plaintiff's submissions and found compelling
16 evidence that Dr. Krolik did not suffer from the Learning Disability that he had
17 alleged.  Doane Decl. ¶ 28;  Bernier Decl. ¶ 20.
18     Based on those recommendations and based on its well-established procedures,
19 the NBME denied Dr. Krolik's request for accommodation on February 2, 2004.
20 Doane Decl. ¶ 29.  Nearly a year later, on January 25, 2005, Plaintiff filed his
21 Complaint in this case, and six months after that, sought mandatory preliminary
22 injunctive relief.

23                        **ARGUMENT**

24     Because Plaintiff has not met the heightened legal standard required for
25 issuance of mandatory preliminary injunctive relief, his motion for a preliminary
26 injunction must be denied.
27
28

## I. PLAINTIFF HAS FAILED TO SUBSTANTIATE THE NEED FOR INJUNCTIVE RELIEF PRIOR TO A TRIAL ON THE MERITS.

Plaintiff carries a heavy burden in order to justify the extraordinary relief of a mandatory preliminary injunction. A prohibitory injunction "preserve[s] the status quo pending a determination of the action on the merits." *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 427 (9th Cir. 1970). By contrast, a mandatory preliminary injunction "seeks mandatory preliminary relief that goes well beyond maintaining the *status quo pendente lite*." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994). A mandatory injunction "is particularly disfavored" and should be denied "'unless the facts and law clearly favor the moving party.'" *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979) (quoting *Martinez v. Mathews,* 544 F.2d 1233, 1243 (5th Cir.1976)).

The relief that Dr. Krolik requests in his motion is precisely the relief that he would receive after a successful trial on the merits of his case: The right to take the Examination with the benefit of accommodations including extra time not available to other examinees. As discussed in more detail below, the pre-litigation status quo is best preserved by making Dr. Krolik prove at a trial on the merits that he has a disability under the ADA that warrants granting him special testing accommodations.

## II. PLAINTIFF HAS FAILED TO SATISFY THE REQUIREMENTS FOR ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF.

The Ninth Circuit uses two alternative sets of criteria to determine whether preliminary injunctive relief is appropriate. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Under the "traditional" formulation, a plaintiff must prove four factors to obtain a preliminary injunction: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff; and (4) advancement of the public interest." *Id.* Alternatively, the court may grant preliminary injunctive relief "if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious

6

questions are raised and the balance of hardships tips sharply in his favor." *Id.* (citations omitted; emphasis in original). These two criteria "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Id*.

Plaintiff advocates the "traditional" four-part formulation, but regardless of which formulation is used, Plaintiff fails to satisfy his burden on any of the criteria used to determine the merits of granting preliminary injunctive relief. As a threshold matter, Plaintiff has failed to present any evidence proving that he will be irreparably harmed if an injunction does not issue. Moreover, he cannot demonstrate a likelihood of success on the merits because he is not "disabled" under the ADA. Finally, the balance of hardships and public policy strongly militates in favor of denying a preliminary injunction.

### A. Plaintiff Fails to Establish an Imminent Threat of Irreparable Harm.

At a minimum Plaintiff must demonstrate that he will be exposed to irreparable harm if preliminary injunctive relief is not granted. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).

Plaintiff does not satisfy this standard because he fails to assert—let alone demonstrate—an *imminent* threat of *irreparable* harm if he is not granted injunctive relief. Rather, he merely argues that "[t]he continued passage of time without mastery of the USMLE is irreparable harm to Plaintiff" because "he is not able to obtain the professional license to practice medicine." Motion at 8. This allegation of a potential future injury that is compensable by money damages does not suffice for obtaining preliminary injunctive relief.

The question is whether Dr. Krolik faces an imminent threat of irreparable injury if he is denied the immediate relief he seeks. Nowhere does he explain the urgency of his purported need for relief; nor does he explain why money damages would not provide him an adequate remedy. In fact, he alleges no irreparable harm and no threat that such harm is imminent.

The only harm of any sort that Plaintiff alleges is that he is unable to begin working as a medical doctor until he passes the USMLE. That argument of course presumes that he would pass the USMLE with the accommodations that he requests. Even so, it would not necessarily follow that Dr. Krolik would be able to practice medicine and, in any event, he would not be able to do so right away. As a graduate of a foreign medical school, Dr. Krolik must pass Steps 1 and both parts of Step 2 (Clinical Knowledge and Clinical Skills) of the USMLE in order to be certified by the Educational Commission of Foreign Medical Graduates ("ECFMG") and thereby eligible to serve a medical residency. Doane Decl. ¶ 6. A medical residency is a program that must be successfully completed before one is licensed to practice medicine. *Id.* ¶ 5. Step 3, the last component of the USMLE, normally is taken during or at the completion of a residency. *Id.*[3] It is only after completion of a residency program and after passage of all three Steps of the USMLE that one may be licensed by a state accrediting agency to practice medicine. *Id.* These facts belie Dr. Krolik's suggestion that he could "practice medicine" if only he could win the testing accommodations for the first two Steps of the USMLE.[4]

---

[3] Dr. Krolik seeks an order granting him testing accommodations not only for Steps 1 and 2 of the Examination, but also for Step 3. As a medical school graduate, Dr. Krolik is eligible to sit for Steps 1 and 2, but it is unlikely he would sit for Step 3 of the Examination until sometime during his residency or even at the completion of his residency. Given that, his request for a mandatory injunction with respect to Step 3 is particularly inappropriate.

[4] In his memorandum, Plaintiff asserts without elaboration that he "has been offered a position to practice medicine, but is not able to accept the offer without the USMLE license to practice medicine." Motion at 8. Absent evidence of the terms or conditions of that offer, the assertion deserves little credit.

Moreover, Plaintiff's nearly decade-long delay in bringing this motion disproves any argument he might make about imminent threat. Dr. Krolik first took Step 1 of the USMLE in September 1995. Since then he has taken and failed Step 1 seven times and Step 2 six times. Doane Decl. ¶ 15. In 1999, he retained his current counsel, who sent a document he styled a "Notice of Claim" on behalf of Dr. Krolik, based on the refusal to grant him testing accommodations. *See* Doane Decl. ¶ 19 and Exhibit C thereto.[5] Delay in seeking relief from alleged imminent harm weighs against granting relief. *See Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (five-year delay); *see also Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622 (S.D.N.Y. 1959) ("By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action").

Not only does Dr. Krolik fail to demonstrate any imminent threat of harm, the injury he does allege – delay in his ability to practice medicine – is precisely the sort of harm that, if proved, is compensable by money damages. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (temporary loss of income usually does not constitute irreparable injury); *Los Angeles Memorial Coliseum Comm'n*, 634 F.2d 1197, 1202 (9th Cir. 1980); *cf. Bedrossian v. Northwestern Memorial Hosp.*, 409 F.3d 840, 845-846 (7th Cir. 2005) (no irreparable harm alleged by physician seeking to enjoin his termination).

**B. Because Plaintiff Is Not Disabled Under the ADA, He Cannot Establish a Likelihood of Success on the Merits.**

Plaintiff bears the burden of proving that he is disabled within the meaning of the ADA. *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir. 2005) ("*Wong II*"). Dr. Krolik erroneously contends that his ADA claim has a strong likelihood of success on the merits because (1) the ADA purportedly recognizes

---

[5] Dr. Krolik himself wrote on April 9, 1999, to assert that the denial of accommodations violated his civil rights and would be resolved by "the legal system." *See* Doane Decl. ¶ 20 and Exhibit D thereto. On May 14, 1999, he asserted that he was "filing a vigorous official complaint with the U.S. Department of Labor (EEOC) for violation of my rights under [the ADA]." *Id.* ¶ 21 and Exhibit F thereto.

ADHD as a "disability," and (2) a medical professional has diagnosed him as having ADHD. Motion at 7. To the contrary, as shown below, there is no *per se* disability under the ADA, and each claim for disability must be evaluated on its individual facts. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

Recognizing the individual nature of the question, the Ninth Circuit applies a three-part inquiry to decide whether a plaintiff is entitled to an accommodation under the ADA: (1) whether the plaintiff's condition constitutes a mental or physical impairment; (2) whether the life activities as to which the plaintiff alleges he is limited are *major* life activities; and (3) whether the impairment *substantially limits* the major life activities identified. *Wong II*, 410 F.3d at 1063. The Supreme Court has held that the terms "major life activities" and "substantially limits" "need to be interpreted *strictly* to create a *demanding standard* for qualifying as disabled." *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 197 (2002) (emphasis added).[6]

Plaintiff has failed to prove *any* of these elements, much less all three.

---

[6] The ADA, codified at Title 42, Chapter 126 of the United States Code, is divided into subsections, including Employment ("Title I"), Public Services ("Title II") and Public Accommodations and Services Operated by Private Entities ("Title III"). Although the Complaint cites both to Title II and Title III, the former applies only to public entities, defined as "any State or local government or any department, agency, special purpose district, or other instrumentality of a State or States or local government, National Railroad Passenger Corporation, and any commuter authority." 42 USC § 12131. Because the NBME is a private nonprofit corporation—not a public entity—Title II does not apply. The only applicable ADA provision is Title III, specifically section 309, codified at 42 U.S.C. § 12189: "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 155 (3d Cir. 1999) ("the rationale of the 'specific governs the general' canon counsels that we treat section 309 as Congress's specific definition of what Title III requires in the context of examinations").

The Department of Justice ("DOJ") interpretive guidelines written for Title III, found at 28 C.F.R. Part 36, apply to claims involving testing. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 626, 630-631(6th Cir. 2000) (applying DOJ guidelines to Title III claim); *see also* 90 CIS P.L. 101336; 101 CIS Legis. Hist. P.L. 336.

### 1. Plaintiff Fails to Prove That He Is Impaired by ADHD.

Although Plaintiff's pleadings do not identify the exact nature of the alleged impairment that forms the basis for his claim, he asserts that he has been diagnosed with symptoms of ADHD and a reading disorder that constitutes a Learning Disability. Motion at 7. In support of his motion, Dr. Krolik relies on a letter dated September 18, 2003, from Gayle F. Wurzlow, M.D. (Motion, Ex. B thereto) and two reports by Grant Butterbaugh, Ph.D. (Motion, Exs. C, D thereto), all of which focus for the most part on his ADHD claim. Taken separately or together, the documentation he presents fails to support his assertion that he suffers from a disability requiring accommodations within the meaning of the ADA.

Dr. Wurzlow's one-paragraph letter merely asserts that ADHD has been a "lifelong problem" for Dr. Krolik, but offers no specifics or analysis supporting that conclusion and so cannot satisfy his burden under the ADA. "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota*, 534 U.S. at 198.[7]

Nor do Dr. Butterbaugh's reports suffice. As explained in the report of Michael Gordon, Ph.D., an ADHD expert who evaluated Dr. Krolik's materials for

---

[7] The opinion of an expert that a plaintiff has a "learning disability" or a diagnosis under the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) ("DSM-IV") does not necessarily equal an impairment or disability under the ADA. *See Wong II*, 410 F.3d at 1066 n.6 ("[A] person who has a 'learning disability' is not necessarily 'disabled' under the [ADA]"). As the First Circuit explained in *Bercovitch v. Baldwin School, Inc.*:

> We particularly note that the DSM-IV admonishes that because of the "imperfect fit between the questions of ultimate concern to the law and the information contained in a clinical diagnosis[,] in most situations, *the clinical diagnosis of a DSM-IV mental disorder is not sufficient to establish the existence for legal purposes of a 'mental disorder,' 'mental disability,' 'mental disease,' or 'mental defect.'* In determining whether an individual meets a specified legal standard ... additional information is usually required beyond that contained in the DSM-IV diagnosis.... It is precisely because impairments, abilities, and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability."

133 F.3d 141, 155 n.18 (emphasis added) (quoting the DSM-IV).

1032280v5

the NBME, ADHD requires symptoms of attention deficit or lack of self control from childhood.  Gordon Rep., ¶ 12 (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV")).  As a result, individuals with ADHD show numerous accounts of poor academic performance, impaired social adjustment and behavior issues that are chronic and pervasive, i.e. from year to year and from setting to setting – at home, school and work.  *Id.* ¶ 15.  As Dr. Gordon explains, Dr. Krolik offered no evidence that he had any significant problems as a child.  He was promoted each year in school, earned at least average grades and was praised by his teachers.  *Id.* ¶ 21.  Nor is there evidence of impairment during high school, college, in Dr. Krolik's military service, his career as a practicing pharmacist or medical school.  *Id.* ¶¶ 23, 28.

Plaintiff misstates the NBME's requirements in arguing that he should not have to prove that he was diagnosed with ADHD as a child.  Although ADHD was not recognized by that name during Dr. Krolik's childhood, if he had suffered from ADHD as a child, there would be ample evidence of the symptoms, in early school reports and accounts of relatives and friends.  *Id.*  ¶ 14.  As noted above, however, his elementary school report cards demonstrate no such impairment and the recollection of his cousin (to the effect that he jumped on the bed) is insufficient to prove the diagnosis.  *Id.* ¶ 23.  Dr. Butterbaugh's conclusions to the contrary are based on selective observations and inconsistent assertions and entirely fail to address detailed information about Dr. Krolik's academic achievements or success in the military and as a pharmacist.  *Id.* ¶¶ 27-31.

### 2.     Plaintiff Fails to Prove That He Is Impaired by a Learning Disability.

Plaintiff also has not shown that he has a Learning Disability claim under the ADA.  Although Dr. Butterbaugh originally offered a conclusion that Dr. Krolik suffered from a Learning Disability based on reading, he withdrew the request for accommodations on that basis in his final report, dated December 2003.  *See* Ex. D to

Motion at 3 (letter) and 6 (report).  In any event, as demonstrated by the Bernier Decl. ¶¶ 9-12, 16, 20, the evidence is clear that Dr. Krolik is an average or above-average reader, and by no means suffers from a reading disability.

### 3. Plaintiff Cannot Prove That His Alleged Impairment Limits a Major Life Activity.

Even if this Court were to find that Plaintiff suffers from an impairment, he is still not disabled for purposes of the ADA because he has failed to show that his alleged impairment limits a "major life activity." *Toyota*, 534 U.S. at 195 ("Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity."). Plaintiff alleges that his so-called impairment "implicates the major life activity of working because if he is not given a chance to compete fairly on an employment test, he is precluded from potential employment in the medical field."  Compl. ¶ 15.

The DOJ interpretive guidelines for Title III of the ADA define major life activities as "walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 36.104(2).  The Supreme Court, however, has questioned whether "working" is a "major life activity."  *See Toyota*, 534 U.S. at 200; *Sutton*, 527 U.S. at 492.[8]

In any event, Plaintiff's contention that he suffers from an impairment that has limited his ability to work is simply inconsistent with the facts.  Dr. Krolik served in the military and worked as a licensed pharmacist, apparently since his graduation from the University of New Mexico in 1969 until he commenced medical school. Moreover, even if it were correct that a disability has limited his ability to practice

---

[8] In drafting regulations affecting the impact of the ADA in the workplace, the EEOC also has expressed a reluctance to define "major life activities" to include working, and instead has treated working as a consideration of last resort *only* if no other life activities are implicated.  29 CFR § 1630.2(j) ("If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working").  The Ninth Circuit has not yet addressed whether "working" is a major life activity following the *Toyota* and *Sutton* decisions.  *See Wong II*, 410 F.3d at 1063 n. 5.

1032280v5

medicine, that would not suffice to constitute a "major life activity" under the ADA. *See, e.g.*, *McGuinness v. Univ. of N.M. School of Med.*, 170 F.3d 974, 979 (10th Cir. 1998) (plaintiff must prove that disability impeded performance in wide variety of disciplines; "[f]or the purposes of the ADA, inability to pursue one career, such as medicine, does not constitute a severe impact on an individual's life").

Although Plaintiff's motion characterizes the affected major life activity as "working," in reality what he claims is that he has an impairment that has limited his ability to take timed standardized tests on medical topics. Of course, inability to pass timed tests on medical topics does not qualify as a major life activity.

### 4. Plaintiff Cannot Prove He Is Substantially Limited In a Major Life Activity.

Even assuming that Plaintiff suffers from an impairment and that working is a major life activity, he still cannot establish a disability under the ADA because his alleged impairment does not substantially limit a major life activity as compared to most people. As Plaintiff concedes, Motion at 5, "substantial limitation" is assessed by comparison to most people, not to a select group. *See Wong II,* 410 F.3d at 1065 (applying the demanding standards set forth in *Toyota*, 534 U.S. at 197); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 631-32 (6th Cir. 2000) (ADA compares plaintiff's performance in major life activity to that "of most people"); *see also* 28 C.F.R. Pt. 36, App. B. Thus, the relevant question is not whether Dr. Krolik is likely to prove that his alleged impairment makes it impossible for him to meet the rigorous qualifications necessary to work as a medical doctor; it is "whether his alleged impairment substantially limits his ability to [work] as a whole, for purposes of daily living, as compared to most people." *Wong II,* 410 F.3d at 1065.

Dr. Krolik has failed to produce any evidence demonstrating that he is substantially limited in the major life activity of working as compared to most people. Quite the contrary: Plaintiff has achieved greater professional success than most people, graduating from college with a pharmacy degree and working as a pharmacist.

His inability to pass the USMLE may have prevented him from working as a medical doctor, but the average person does not qualify to be a medical doctor. *See McGuinness*, 170 F.3d at 979.

Moreover, Plaintiff's past academic record undercuts any argument that he is substantially limited in the major life activities of reading and learning in comparison to most people. The limited school records Plaintiff has produced show that he was an average to above-average student. *See* Motion, Ex. B thereto. Plaintiff graduated from the University of New Mexico with a Bachelor of Science in Pharmacy, apparently without accommodations. In 1969, Dr. Krolik took a timed examination to become a licensed pharmacist in the State of Arizona. On the theory portion of the exam he obtained scores of 78% in Pharmacy, 83% in Chemistry, 72% in Pharmacognosy, and 90% in Mathematics; on the jurisprudence portion of the exam, his score was 82%. *See* Record of Examination, attached hereto as Exhibit 4. Based on his successful academic career and subsequent success in professional life, all presumably without accommodations, Plaintiff cannot prove that he is "substantially limited" by his alleged disabilities. *See*, *e.g.*, *Gonzales*, 225 F.3d at 630 (rejecting plaintiff's claim of disability because of plaintiff's academic success, including an average score on the SAT and a 3.15 GPA).

### C. The Balance of Hardships and Public Policy Favors Denial of the Preliminary Injunction.

Finally, Plaintiff cannot show the third and fourth elements required for issuance of a preliminary injunction: that the balancing of hardships favors the issuance of the injunction and that the issuance of the injunction would not be contrary to public interest. It is clear that granting Plaintiff's motion would be contrary to the public interest and detrimental to other test-takers as well as the NBME.

The NBME is responsible for ensuring the integrity and meaningfulness of the examinations relied upon by licensing authorities throughout the United States. Thus,

1   the NBME must take care that the examinations are administered under standard
2   conditions and that no examinee or group of examinees receives an unfair advantage.
3   The NBME provides reasonable accommodations in accordance with the ADA for
4   individuals with documented disabilities who demonstrate a need for
5   accommodations.  The NBME has developed a extensive, standardized system for
6   evaluating and granting requests for accommodations.  *See Powell v. Nat'l Bd. of*
7   *Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004).  The ADA, however, "is not
8   designed to allow individuals to advance to professional positions through a back
9   door.  Rather, it is aimed at rebuilding the threshold of a profession's front door so
10  that capable people with unrelated disabilities are not barred by that threshold alone
11  from entering the front door."  *Price v. Nat'l Bd. of Med. Exam'rs*., 966 F. Supp 419,
12  421-22 (S.D. W. Va. 1997) (citation omitted).  As the *Price* court explained:

> If a court were to grant testing accommodations to persons that do not have disabilities within the meaning of the ADA, it would allow persons to advance to professional positions through the proverbial back door. In so undermining the integrity of the USMLE, that court would hinder the Board's ability to distinguish between qualified students and unqualified students.

17  *Id*. at 422.
18         If the NBME were to extend accommodations to examinees who have not
19  established by the requisite clinical, psychometric and historical data that they are
20  disabled, the NBME's integrity would be called into question as would the entire
21  testing process.  "As administrator of the national exam used by a number of states for
22  licensing medical doctors, the Board has a duty to ensure that its examination is fairly
23  administered to all those taking it."  *Powell*, 364 F.3d at 88-89.
24         The objective of NBME testing is different from the MCAT or medical school
25  tests, which set standards for performance as a medical student, not a physician.  The
26  public relies on and expects the Examination to be fair, equal, and rigorous.  In
27  addition, other individuals who take the examination under standard conditions would
28  be harmed if unfair advantage were given to the Plaintiff.  The accommodation sought

1  here also disadvantages those with real disabilities by creating an uneven playing field
2  again.
3      The issuance of a preliminary injunction in this case would potentially
4  endanger the public and thus, would be contrary to the public interest.  The public has
5  the right to expect that licensed medical doctors have at least met a minimum standard
6  of competence.  Accordingly, the public interest requires the objective, fair and
7  standardized testing of those who seek to become licensed physicians so that those
8  who pass the licensing examinations are qualified to practice medicine.
9      Refusing to grant injunctive relief will not irreparably injure the Plaintiff, but
10 granting injunctive relief may cause irreparable injury to members of the public and
11 also cause injury to the NBME and to the other individuals taking the examination.
12 Accordingly, based on the equities and the public interest, the preliminary injunction
13 should be denied.

## CONCLUSION

For all of the foregoing reasons, NBME requests that the Court deny in all respects Plaintiff's request for a preliminary injunction and other equitable relief.

DATED this 15th day of August, 2005.

OSBORN MALEDON, P.A.

By     s/ Diane M. Johnsen
       Diane M. Johnsen
       John L. Blanchard
       Ronda R. Fisk
       2929 North Central, Suite 2100
       Phoenix, Arizona  85012-2794

Attorneys for National Board of Medical Examiners, Federation of State Medical Boards of the United States, Inc., Educational Commission for Foreign Medical Graduates

1032280_1

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2005, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

I hereby certify that on August 15, 2005, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

Pete V. Domenici, Jr., Esq.
Dolan & Domenici, P.C.
6100 Seagull N.E., Suite 205
Albuquerque, NM  87109
Attorney for Plaintiff

   s/ Kelly Dourlein