**Section 3. Questions about Scientific Research and Clinical Practice Standards**

The NBME disability evaluation guidelines include diagnostic evaluation and documentation requirements that are not specifically required for diagnosis of ADHD by qualified professionals, according to *DSM-IV* (1994), the official diagnostic manual of mental disorders to which the NBME so frequently refers. To understand whether the NBME evaluation requirements are reasonable, it is critical to understand some of the current limits of scientific knowledge and lack of conclusive professional consensus about the reliability and validity of DSM-IV ADHD criteria in the diagnosis of ADHD in adults.

All qualified professionals, including well-recognized ADHD experts, are familiar with the current limits of scientific evidence and current lack of any conclusive professional consensus about the child-oriented ADHD diagnostic symptoms and criteria in the diagnosis and evaluation of adults. The NBME has not acknowledged these well-known and unresolved controversies, but, nevertheless, the NBME has imposed these unreasonable diagnostic disability and test-taking accommodations requirements that create potential serious consequences for individuals with disabilities seeking reasonable test-taking accommodations.

As seen below, Table 3 lists the official ADHD diagnostic criteria in *DSM-IV* (APA 1994). Note these diagnostic criteria do not include any requirement that professionals obtain standardized, retrospective parental ratings or objective documentation (i.e., elementary, secondary, or post-secondary educational records) of childhood ADHD symptoms and functional impairments in order to diagnose ADHD in adult patients. Indeed, DSM-IV does not require or recommend any specific tests and measurement methods for mental disorders, but rather instructs qualified professionals to use their clinical judgment to diagnose mental disorders, as previously stated.

As also will be discussed, Table 4 compares what are arguably the most widely-used current adult ADHD diagnostic rating scales, with associated norm-referenced samples, authors, test descriptions, and evidence supporting test validity. Although these tests are not required by disability laws, DSM-IV, or the NBME, this evaluator used the results of Dr. Krolik's self-report and his wife's third-party report on these adult ADHD rating scale results as well as all other clinical information as part of differential diagnostic consideration and conclusions as will be discussed below.

Even rigorous empirical studies of adults with ADHD, published in peer-reviewed scientific journals, do not demand adult ADHD research subjects to provide "objective historical documentation" of the childhood onset of ADHD diagnostic symptoms, criteria, and impairments in order to be included in empirical studies (e.g., see studies Biederman et al 1993; Murphy et al 2002 cited below).

**Table 3. Attention-Deficit/Hyperactivity Disorder Diagnostic Criteria (DSM-IV)***
A. Either (1) or (2):
(1) six or more of the following symptoms of **inattention** *have persisted for at least six months to a degree that is maladaptive and inconsistent with developmental level:* (italics added)
>    *Inattention*
>    (a) often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities
>    (b) often has difficulty sustaining attention in tasks or play activities
>    (c) often does not seem to listen when spoken to directly
>    (d) often does not follow through on instructions and fails to finish schoolwork, chores, duties in workplace (not due to oppositional behavior or failure to understand instructions)
>    (e) often has difficulties organizing tasks and activities
>    (f) often avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort (such as schoolwork or homework)
>    (g) often loses things necessary for tasks or activities (e.g., toys, school assignments, pencils, books, or tools)
>    (h) is easily distracted by extraneous stimuli
>    (i) is often forgetful in daily activities

(2) six (or more) of the following symptoms of **hyperactivity-*impulsivity*** *have persisted for at least 6 months to a degree that is maladaptive and inconsistent with developmental level:* (italics added)
>    *Hyperactivity*
>    (a) often fidgets with hands or feet or squirms in seat
>    (b) often leaves seat in classroom or in other situations in which remaining seated is expected
>    (c) often runs about or climbs excessively in situations in which it is inappropriate (in adolescents or adults, may be limited to subjective feelings of restlessness)
>    (d) often has difficulty playing or engaging in leisure activities quietly
>    (e) is often "on the go" or often acts as if "driven by a motor"
>    (f) often talks excessively
>    *Impulsivity*
>    (g) often blurts out answers to questions before the questions have been completed
>    (h) often has difficulty awaiting turn
>    (i) often interrupts or intrudes on others (e.g., butts into conversations or games)

B. **Some** hyperactive-impulsive or inattentive symptoms that caused impairment were present before age 7 years. [emphasis added]
C. **Some** impairment from the symptoms is present in two or more settings (e.g., at school [or work] and at home). [emphasis added]
D. There must be **clear evidence of clinically significant impairment in social, academic, or occupational functioning**. [emphasis added]
E. The symptoms do not occur exclusively during the course of a Pervasive Developmental Disorder, Schizophrenia, or other Psychotic Disorder, and are not better accounted for by another mental disorder (e.g., Mood Disorder, Anxiety Disorder, Dissociative Disorder, or a Personality Disorder).
* emphasis added to highlight important elements of official diagnostic criteria

Biederman and colleagues (1993), for example, <u>did not</u> require research subject inclusion criteria based on 1) objective documentation of childhood educational, medical, and mental health histories or 2) third-party parent or teacher reports on standardized childhood ADHD rating scale from research subjects with adult ADHD. They stated:

> "(w)e studied 84 adults of both sexes who had been referred to the Psychopharmacology Unit at Massachusetts General Hospital for the treatment of attention deficit hyperactivity disorder. Each had a clinical diagnosis of childhood-onset hyperactivity disorder confirmed by <u>structured interview</u>." (emphasis added, page 1793)

Further, Biederman and colleagues (1993) state:

> "(t)o be given a diagnosis of adult attention deficit hyperactivity disorder, the subject had to 1) have met the DSM-III-R criteria for the diagnosis by the age of 7, 2) have at least five DSM-III-R symptoms of this disorder at the time of the assessment, and 3) describe a chronic course of symptoms of the disorder from childhood to adulthood. To elicit these symptoms we used the attention deficit hyperactivity disorder module from the KIDDIE-SADS-E, wording questions in the past tense. If the subject endorsed a symptom to a clinically meaningful degree, we asked whether similar problems were currently present. By using this method we could ensure that the syndrome observed in adulthood had some continuity with the syndrome reported in childhood." (page 1793)

In another example, Murphy, Barkley, and Bush (2002) did not require research subject inclusion criteria based on "1) have met the DSM-III-R criteria for the diagnosis by the age of 7, 2) have at least five DSM-III-R symptoms of this disorder at the time of the assessment, and 3) describe a chronic course of symptoms of the disorder from childhood to adulthood." They used expert clinical judgment to diagnose adult ADHD and stated:

> "Participants in the ADHD group ... had to receive an expert clinical diagnosis of ADHD established **not only by meeting the DSM-IV diagnostic criteria, but also by the judgment of an expert clinician.** The DSM criterion for onset of symptoms was amended to age 12 or earlier rather than the threshold of 7 years of age. This adjustment was based on the consideration that no empirical, historical or pragmatic evidence exists to show that criterion of onset by age 7 distinguishes valid from invalid cases (Barkley and Biederman, 1997). Moreover, the DSM-IV field trial (using only children) also found that use of this criterion significantly diminished the reliability of the diagnosis (Applegate et al., 1997). Imposition of such an unjustifiable threshold would create even further difficulties for the reliability of diagnosis in adults given the greater span of time involved in their own retrospective reports of their childhood behavior. **Consequently, participants were asked to consider their childhood behavior between the ages of 5 and 12 years of age (elementary school years) in answering questions about the onset of their symptoms, *as recommended by Barkley and Biederman (1997)* [emphasis added].**" (page 149)

However, Barkley and Biederman (1997) did not actually make this specific recommendation as stated by Murphy and colleagues (2002). As will be discussed below under Criterion B, Biederman and Barkley (1997) concluded that there was no

conclusive empirical support for any age-of-onset criterion for either ADHD symptoms or impairments.

"The diagnosis of ADHD was determined through a multistep process. **First, all potentially eligible study subjects completed the Adult ADHD Rating Scale ...for their current functioning and for recall of childhood, ages 5 to 12 years, as an initial screen for probable ADHD. Whenever possible, these same two rating scales were completed by the participants' parents. Parent information was available for 80 of 105 ADHD participants (76%)** [emphasis added]. Some local norms (*i.e.,* those currently followed in central Massachusetts) were available on this rating scale for both the self-report forms (Murphy and Barkley, 1996b). These norms were used to determine that the participants displayed clinically deviant levels of ADHD symptoms (at least +1.5 SD [standard deviations] more than the normal mean). Second, study subjects passing this screen received a structured clinical diagnostic interview. Whenever possible, this interview included at least one of the participant's parents. This interview was conducted by a licensed clinical psychologist with 9 years of clinical experience evaluating teens and adults with ADHD (K.R.M.). **Given that no DSM-IV-based structured interview exists for the determination of ADHD in adults, the investigators created one for this project that explicitly set forth all symptoms and other diagnostic criteria for ADHD (with age of onset criterion modified as already specified)** [emphasis added]. ... To be eligible at this stage, study subjects had to meet DSM-IV criteria for ADHD with onset of symptoms producing impairment before age 12 years." (page 149)

**In the last stage, the expert clinician then based his final judgment of the diagnosis not only on the reports of participants to these explicit DSM criteria but, when available, on those of their parents as well. Furthermore, the expert's final decision also included a review of past school records, where available, and any other sources of information the study subject brought to the evaluation (previous professional reports). It also involved ruling out other more parsimonious explanations for the subject's symptoms in keeping with DSM-IV recommendations to this effect** [emphasis added]." (page 150)

Overall, these published empirical studies of adult ADHD used scientific research standards that are less rigorous than the NBME evaluation requirements. The NBME requires objective documentation of childhood educational, medical, and mental health histories, as well as third-party parent and teacher reports.

I will now review current unresolved professional controversies about each of the five DSM-IV ADHD diagnostic criteria.

- *Criterion A from the ADHD Diagnostic Criteria (DSM-IV)* (see Table 3)

---

A. Either (1) or (2):
(1) six or more of the following symptoms of **inattention** have persisted for at least six months to a degree that is maladaptive and inconsistent with developmental level:
    *Inattention*
(2) six (or more) of the following symptoms of **hyperactivity-impulsivity** have persisted for at least 6 months to a degree that is maladaptive and inconsistent with developmental level:
    *Hyperactivity*

---

First, qualified professionals who are knowledgeable about childhood ADHD understand that these symptoms and impairments are not consistently exhibited across multiple ratings, settings, or areas of functioning. Furthermore, children with ADHD do not exhibit consistently severe, pervasive symptoms, as noted by Barkley (1998), who states:

"all the primary symptoms of ADHD show significant fluctuations across various settings and caregivers." (page 73)

Further, "(s)ome of the factors determining this variation have been delineated. One of these, the extent to which caregivers make demands on ADHD children to restrict behavior, appears to affect the degree of deviance of the child's behavior from normal children. In free-play or low-demand settings, ADHD children are less distinguishable from normal children than in highly restrictive ones (Barkley 1985; Jacob et al., 1978; Luk, 1985; Routh & Schroeder, 1976). **Related to this issue of setting demands is the effect of task complexity on ADHD children. The more complicated the task and hence its greater demand for planning, organization, and executive regulation of behavior, the greater the likelihood that ADHD children will perform more poorly on the task than normal children (Douglas, 1983; Luk, 1985). Clearly, the symptoms of ADHD are only handicapping when the demands of the environment or task exceed the child's capacity to sustain attention, regulate activity, and restrain impulses. In environments that place little or no demands on these behavioral faculties, ADHD children will appear less deviant and certainly be viewed by others as less troublesome than in settings or tasks that place high demands on these abilities** [emphasis added]. As Zentall (1985) rightly noted in her comprehensive review of setting factors in the expression of ADHD symptoms, we must look closely at the nature of the stimuli in the task and setting to which the child is being required to respond to gain a better understanding of why these children have so much trouble in some settings and with some tasks than others." (page 74)

Barkley (1998) further notes:

**"(t)hese situational fluctuations in symptom levels have significant implications for clinical diagnosis of ADHD. It is clear that the disorder is not completely pervasive across all settings. As a result, the previous and common clinical practice of establishing places where the ADHD child**

**could behave normally and then ruling out the diagnosis is no longer tenable. ... It is now quite clear that ADHD children show a tremendous variation in their symptom severity across settings, tasks, and time. And although they are typically more deviant than normal children in their levels of activity and inattention in most settings, the factors within the setting and especially in the demands of the task are highly related to the level of deviance noted (Zentall, 1985) [emphasis added]."** (page 78)

Furthermore, Barkley (1998) notes that daily fluctuations in academic functioning are common in children affected by ADHD:

**"Even for those without comorbid learning disabilities, almost all ADHD children are haunted by their highly erratic educational performance over time, some days performing at or near normal levels of ability and accomplishing all assignments, other days failing quizzes and tests and not completing assigned work [emphasis added]."** (page 191)

Barkley (1998) also summarized associated childhood academic impairments in **a minority of adults with ADHD:**

"Adults diagnosed with ADHD seem to share a similar likelihood of problems in academic functioning at some time during their schooling, as was found in children having ADHD followed over development. **Between 16% and 40% of clinic-referred adults have repeated a grade, in keeping with the figures reported for ADHD children discussed earlier in this chapter (Barkley et al., 1996b; Biederman et al., 1993; Murphy & Barkley, 1996b). Up to 43% have also received some of form of extra tutoring services in their academic histories to assist them with their schooling (Biederman et al., 1993). Barkley et al. (1996b) found that 28% of their young adult sample had received special educational services; a figure about that found in hyperactive children followed to young adulthood but still higher than normal** [emphasis added]. Consistent with these studies, Roy-Byrne et al. (1997) also found clinic-referred adults with ADHD to have significantly greater frequency of achievement difficulties in school, grade retentions, and special educational services. A history of behavioral problems and school suspensions is also significantly more common in clinic-referred adults with ADHD than in clinical control groups (Murphy & Barkley, 1996b). **Yes, young adults with ADHD seen in clinics are far more likely to have graduated high school (92%) and attended college (68%) than are clinic-referred children with ADHD followed to adulthood (Barkley et al., 1993), for whom the high school graduation rate is only about 64% (see earlier). Some studies indicate that clinic-referred adults with ADHD may have less education than non-ADHD adults seen at the same clinic (Roy-Byrne et al., 1997), a finding consistent with adult follow-up of ADHD children (Mannuzza et al., 1993). Others, in contrast, have not found this to be the case (Murphy & Barkley 1996b)** [emphasis added]." (page 214)

Please recall that these academic impairments are not specifically required by DSM-IV, are not exhibited by most clinic-referred adults who are diagnosed with adult ADHD, and are associated with other childhood mental disorders and developmental disabilities.

Other experts in ADHD, such as Keith Conners, Ph.D., and colleagues (1999), have expressed serious unresolved professional controversies about the reliability and validity of the DSM-IV ADHD diagnostic criteria, symptoms, and functional impairments in regard to adult ADHD. Conners and colleagues (1999) state that:

"... **(I)nterest in the phenomenology, assessment, diagnosis, and treatment of adult attention-deficit/hyperactivity disorder has risen dramatically in recent years. It is important to emphasize, however, that the pace of clinical activity involving ADHD in adults has outstripped the development of empirically validated methods of assessment, diagnosis, and treatment.** [emphasis added] Understanding of the phenomenology of ADHD in adulthood is still in a very primitive state. Clinical impressions and anecdotal reports from accumulated cases have formed much of what is known about the nature of ADHD in adults (Hallowell & Ratey, 1994). The area lacks empirically based measures of known reliability and validity (e.g., structured interviews, standardized rating scales).

**One important factor limiting the advancement of research is that consensus has not yet emerged on the appropriate diagnostic criteria for ADHD in adults.** [emphasis added] The set of criteria offered for ADHD in the DSM-IV (APA, 1994), despite being commonly employed by practitioners and researchers, suffers from a number of important limitations. These criteria were developed on the basis of field tests with children and adolescents ranging from 4-16 years of age (see Applegate, [sic] et al., 1995). Thus, the applicability of the DSM-IV criteria for adults with ADHD may be questioned on a number of grounds:

- There are age-related changes in the phenomenology and functional impact of ADHD symptoms (see March, Wells, & Conners, 1995; Weiss & Hechtman, 1993). The DSM-IV items may lack content validity by not adequately sampling core symptoms in adults (e.g., self-organization, planning, or time management).
- DSM-IV item-wording may be inappropriate for adult samples." (page 49).

In his classic text on ADHD, Barkley (1998) also cautions about the appropriateness of official ADHD criteria as applied to adults

"***The developmental appropriateness of DSM criteria for adults.*** **(italics in the original) This issue was debated in the committee meetings associated with the creation of the DSM-IV criteria but was not fully resolved. ... Most DSM items are still far more pertinent to childhood than to adult contexts. This fact poses a problem for the study of persistence of ADHD over the lifespan. ... Use of the DSM criteria across the life span would make it appear as if individuals with ADHD were outgrowing their disorder when in reality they were simply outgrowing the DSM item set.**" (emphasis added; Barkley 1998; page 205).

Barkley (1998) also has documented the serious limitations of retrospective self-reported, as compared to parent-reported, childhood ADHD symptoms and impairments in a follow-up study of research subjects who were diagnosed with ADHD as children:

"Thus, the persistence of ADHD into adulthood is very much a matter of the source of information and the diagnostic criteria being employed (Fischer, 1997). If DSM criteria are applied to the subject's own self-reports, low rates of persistence of ADHD are found in this study. But if parent reports of the subjects continue to be used, as they were in the prior follow-up assessments (and in other studies of ADHD into adolescence), persistence of disorder is 14 times greater. And if an empirical criterion is established for disorder, rates are nearly 23 times greater. **This and other information** (see Chapter 1, this volume) **suggests that the DSM criteria become increasingly less sensitive to the disorder with age. This information also implies that subjects with ADHD may be prone to seriously underreporting their symptoms of the disorder relative to what others may say about them...** [emphasis added]" (page 202)

Relevance of Criterion A to Dr. Krolik's Case

These citations document the complexity of the ADHD diagnostic evaluation task in children. This task is arguably more complex with adults because:

1. limited scientific evidence and lack of professional consensus exists regarding the reliability and validity of the use of the child-oriented DSM-IV ADHD diagnostic criteria in the evaluation of adults;
2. affected adults with ADHD may not be reliable or valid reporters given that they may under-report their childhood ADHD symptoms and impairments, as compared to third-party reporters;
3. as Gordon and Irwin (1997) note about evaluating adults with ADHD: "There are fewer standardized settings in which to judge performance. All children study in classrooms, but adult jobs vary in demands for attention and planning." (page 3-37)
4. and, in Dr. Krolik's case, ADHD (or its precursor diagnosis) was unknown to educational, medical, and mental health professionals during the 1950s and early 1960s and, as a result, they would have lacked the knowledge to reliably and validly observe, and diagnose ADHD during childhood.

As is evident in Table 4 on the next page, the current widely-used standardized ADHD rating scales have limitations in the representativeness of their norm-referenced samples and evidence-based support for test validity with the exception of the Conners scale. Fortunately, third-party reports about Dr. Krolik's ADHD symptoms and impairments were available from his spouse of 9 years, a licensed physician and adult psychiatry resident, who completed standardized adult ADHD rating scales as part of my evaluation as well as prior mental health evaluations from 1998. Nevertheless, this evaluator used Dr. Krolik's self-reported and his wife's third-party reported results on all of these adult ADHD scales.

Dr. Krolik underestimated his own current ADHD impairments, but his wife of 9 years reported severe, chronic impairments that exceeded those of 90-95% of individuals in the general population. Indeed, this evaluator would have been concerned about the validity of her

**Table 4. Comparison of Standardized Adult ADHD Rating Scales**  (NR = Not Reported)

| | Current Symptom Scales | | Childhood Symptom Scales | | Brown ADD Scales | | Conners Adult ADHD Scales | |
|---|---|---|---|---|---|---|---|---|
| | Self-Report | Other-Report | Self-Report | Other-Report | Self-Report | Collateral-Report | Self-Report | Observer-Report |
| *Authors* | Barkley & Murphy, 1998 | | Barkley & Murphy, 1998 | | Brown, 1996 | | Conners et al 1999 | |
| *Manual: Norms, Validity & Test Description?* | ADHD: symptom/impairment rating scales | | ADHD: symptom/impairment rating scales | | ADHD symptom/impairment rating scales | | ADHD symptom/impairment rating scales | |
| *Norm-Referenced Sample?* | No? local sample n = 719 | No | No? local sample n = 719 | No | No? local sample n = 143 | No | Yes, national samples n = 1,026 | Yes, national samples n = 943 |
| *Ages* | 17-84 yo | NR | 17-84 yo | NR | 18-64 yo | NR | 18-80 yo | 18-72 yo |
| *Sample* | Recruited from 2 DMV offices in Worcester, MA | NR | recruited from 2 DMV offices in Worcester, MA | NR | recruited from work setting or civic association | NR | recruited from US and Canadian locations | recruited from US and Canadian locations |
| *Validity?* | | | | | | | | |
| *Factor Analysis?* | No | No | No | No | No | No | Yes | Yes |
| *Group n's* | NR | NR | NR | NR | NR | NR | n = 1,026 | n = 943 |
| *Discriminative?* | No | No | No | No | Yes | No | Yes | No |
| *Group n's* | | | | | n = 143 ADHD  n = 142 no ADHD | NR  NR | n = 96 ADHD  n = 96 no ADHD | NR  NR |
| *Construct?* | No | No | No | No | | | | |
| *Self- & Other-Reports* | NR | NR | NR | NR | Yes, correlated for teens | Yes, correlated for teens | Yes, correlated | Yes, correlated |
| *Diagnostic Accuracy?* | No | No | No | No | Yes | No | Yes | No |
| *Group n's* | NR | NR | NR | NR | n = 285 | NR | n = 192 | NR |
| *Correct/ Incorrect Rates* | NR | NR | NR | NR | 4% false positive; 6% false negative; NR % correct classification | NR | 29% false negative; 25% false positive; 73% correct classification | NR |

third-party results, except for the fact that Dr. Krolik presented as one of the most hyperactive adults with whom I have worked. Ironically, he did not report clinically significant symptoms of adult ADHD, but his wife did, a pattern that is obviously consistent with empirical results reported in the scientific literature.

Unfortunately, the NBME did not acknowledge this third-party evidence, which was apparently dismissed by the NBME without explanation. Despite the obvious evaluation challenges due to 1) the deaths of his parents and the consequent absence of their retrospective reports, 2) the historical absence of professional knowledge of both ADHD as a diagnosis, and 3) the historical absence of disability laws during Dr. Krolik's childhood, the NBME disregarded the conclusions and clinical judgment of two qualified professionals about his past and current diagnostic- and disability-related status.

- *Criterion B from the ADHD Diagnostic Criteria (DSM-IV)*

**Some** hyperactive-impulsive or inattentive symptoms that caused impairment were present before age 7 years.

The NBME required Dr. Ralph Krolik (and no doubt other applicants with potentially eligible disabilities) to provide "objective documentation" of the childhood onset of ADHD symptoms and impairments.

The NBME requirement does not reflect the unambiguous rebuke of two undisputed experts in ADHD research, Russell A. Barkley, Ph.D., and Joseph Biederman, MD. These experts concluded in their widely cited review of the ADHD scientific literature that there was no conclusive scientific evidence for, or professional consensus about, the validity of a diagnostic age-at-onset criterion (AOC) for either childhood ADHD symptoms or related functional impairments, despite the inclusion of the AOC as a diagnostic criterion in *DSM-IV*. Barkley and Biederman (1997) state:

"ADHD also has been granted the status of a disability under various forms of legislation and regulation, such as eligibility for special educational services, Social Security Disability benefits, and insurance and employment protections provided under the Americans With [sic] Disabilities Act (Latham and Latham, 1992). **Failing to grant the diagnosis of ADHD when, with the exception of meeting the AOC, it would be correct to do so can serve to disenfranchise these individuals from important services, treatments, and legal protections.** [emphasis added] While Shaffer (1994) may have been prudent to caution clinicians about being too liberal in granting a diagnosis of ADHD to adults or being too quick to prescribe medications for treatment in such cases, the consequences of not diagnosing or treating when a valid disorder exists are as much or more egregious." (page 1209)

"**The present discussion demonstrates, however, that at least one of the criteria required for ADHD did not have its conceptual feet held to the empirical fire when the *DSM-IV* and *ICD-10* criteria were drafted—that criterion is the precise AOC of 7 years for impairing symptoms. Both this age of onset of symptoms and the further stipulation that those symptoms be impairing by that age are without merit. While clearly a useful criterion for research purposes, the AOC of age 7 years has come to be enshrined in**

clinical diagnostic criteria and now serves to constrain the very research it was initially intended to benefit. Prudence, therefore, dictates that a precise AOC not be required for the clinical or research diagnosis of ADHD until such time as there is reasonable empirical support to introduce one into a diagnostic taxonomy. Moreover, the onset of impairment needs to be studied as a separate issue from that of onset of symptoms so as to give both careful study. There is no harm, and probably there is some conceptual value, in continuing to view ADHD as a developmental disorder whose typical symptoms arise in childhood. Nor is there harm, and indeed there is some good, in researchers specifying an early onset for symptoms so as to ensure a relatively homogenous sample, reliability of selection criteria across studies, and a high probability of subjects of having a valid disorder. But until such time as a justification can be marshaled for a precise AOC for either symptom onset or impairment, the AOC deserves to be either abandoned or very generously interpreted as occurring sometime in childhood, broadly construed. To do otherwise would be simply arbitrary, surely discriminatory, and empirically indefensible. [emphasis added]" (Barkley & Biederman 1997, page 1209).

Regarding the age of onset criterion (AOC) for ADHD, Barkley and Biederman (1997) concluded:

"But it is one thing to conceptualize ADHD as having an onset in childhood and quite another to stipulate that a precise (and relatively early) AOC [age-at-onset criterion] must be met in order for the diagnosis to be valid, either clinically or for research purposes. And it is an even greater leap of faith to extend this AOC to that of symptoms producing impairment, for which no prior supportive evidence exists. Few other childhood and no adult disorders require so precise an AOC even though many are as "developmental" as ADHD, often having their onset in childhood or adolescence. For many of the childhood disorders, an onset of symptoms before 18 years of age appears to be sufficient if any AOC is required at all. None require an onset of impairment by so young an age [emphasis added]. And so there exists ample precedent for continuing to consider a disorder as typically having a childhood onset without demanding that it do so to be valid or that impairment be associated with that onset. Nor would conceptualizing ADHD as a childhood-onset disorder necessarily invalidate the disorder as an adult diagnosis just because a specific AOC cannot be reliably recalled by adults with any precision. Many of the mood and anxiety disorders of adulthood often have their onset in childhood (Newman et al., 1996), but no childhood AOC is required for their diagnosis nor must their recall of such onset be reliable to render them valid. The issue, then, is not whether ADHD should be viewed as a childhood-onset disorder, but whether so precise an AOC should be used to establish validity of disorder and whether onset of impairment should be folded in with it. The evidence suggests not" (emphasis added, page 1208).

Relevance of Criterion B to Dr. Krolik's Case

These references highlight the current limits of scientific evidence and lack of conclusive professional consensus about: 1) whether to require an age-of-onset diagnostic criterion for either ADHD symptoms or functional impairments and 2) how to

reliably and validly measure childhood onset of "some" ADHD symptoms and impairments (if supported by empirical research), given the lack of reliability and validity of adult patient self-reported childhood symptoms or impairments.

This evaluator discussed the objective historical documentation relating to DSM-IV ADHD diagnostic Criterion B that was provided to the NBME regarding "some" plausible childhood ADHD learning impairments at school based on the mid-year or year-end teacher comments on Dr. Krolik's elementary school report cards. Since Dr. Krolik's parents are no longer living, this evaluator conducted an interview in 2001 to obtain a third-party report from Dr. Krolik's older cousin, Mr. Gerald Krolik. In my interview, Mr. Krolik spontaneously reported memories of "some" plausible childhood hyperactive behavior by Dr. Krolik in Dr. Krolik's home setting.

Regarding the onset of symptoms and side-effects (or classroom impairments) of Dr. Krolik's childhood ADHD impairments, it is important to note that the objective historical documentation of Dr. Krolik's elementary school teachers comments shown in Table 5 are consistent with the "some" ADHD diagnostic symptoms and impairments.

Further, Dr. Krolik's teachers' comments are also consistent with 5 of 8 "behaviors or reactions that may indicate ADD in different stages of life," according to Kevin Murphy, PhD, in his popular book on adult ADHD, *Out of the Fog* (1995). Murphy (1995) lists the following 8 behaviors or reactions during elementary school years as indicating onset of ADHD (page 32), with the first five remarkably consistent with his teachers' comments:

1. Inconsistent or poor grades
2. Inability to pay attention in class
3. Interrupting or blurting out answers inappropriately
4. Noncompliance with rules and regulations
5. Delayed social skills
6. Fidgeting
7. Poor emotional regulation
8. Retention in grade

This evidence related to Criterion B was dismissed by the NBME, despite the undisputed fact that, during Dr. Krolik's childhood and early adult years, ADHD did not exist as an official mental disorder until he was in his late 20s. Similarly, disability laws and special education laws and services did not exist until he was in his 20s. Therefore, professionals in the 1950s and 1960s could not have validly observed, diagnosed, treated, remediated, or accommodated his ADHD symptoms and impairments because of the lack of scientific and professional knowledge and training about ADHD.

**Table 5.  Chronology of Dr. Krolik's Life Events and Third Party Reports of "Some" Possible ADHD Impairments**

| Chronology of Dr. Krolik's Life Events | Third-Party Comments and "Setting" Impairments | "Some" Possible ADHD Symptoms |
|---|---|---|
| 11-15-50<br>**Grade 1**<br>(6 years old) | *Teacher Comments*<br>"Ralph is putting forth a good effort but Reading needs a little more concentration"<br><br>*School Setting Impairments*<br>• Received 3 D's in "reading with understanding"<br>• Received D's in:<br>   "follows directions"<br>   "shows initiative" | **1(a)** often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities<br>**1(b)** often has difficulty sustaining attention in tasks or play activities<br>**1(c)** often does not seem to listen when spoken to directly<br>**1(d)** often does not follow through on instructions and fails to finish schoolwork, chores, duties in workplace (not due to oppositional behavior or failure to understand instructions) |
| 4-03-51<br>**Grade 1**<br>(7 years old) | *Teacher Comments*<br>Promoted to Grade 2 | |
| 6-27-52<br>**Grade 2**<br>(8 years old) | *Teacher Comments*<br>Promoted to Grade 3 | |
| 11-xx-52<br>**Grade 3**<br>(8 years old) | *Teacher Comments*<br>"Ralph can and does sometimes give very good work. His behavior must improve. If he attended to his own business, instead of his neighbors', he could be in the top section of the class."<br><br>*School Setting Impairments*<br>• Received D's in<br>   "follows directions"<br>   "observes school regulations"<br>   "respects the rights of others"<br>   "is dependable" | **1(c)** often does not seem to listen when spoken to directly<br>**1(d)** often does not follow through on instructions and fails to finish schoolwork, chores, duties in workplace (not due to oppositional behavior or failure to understand instructions)<br><br>**2(f)** often talks excessively<br>**2(i)** often interrupts or intrudes on others (e.g., butts into conversations or games) |
| 4-30-53<br>**Grade 3**<br>(9 years old) | *Teacher Comments*<br>"Ralph's progress is satisfactory except in arithmetic which could improve. Inclined to rush through his work and consequently his writing suffers. Works hard."<br><br>*School Setting Impairments*<br>• Received C's in 11-xx-52 areas, but see Teacher Comments above | **1a)** often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities<br>**1(b)** often has difficulty sustaining attention in tasks or play activities<br><br>**2(f)** often talks excessively<br>**2(i)** often interrupts or intrudes on others (e.g., butts into conversations or games) |

| Chronology of Dr. Krolik's Life Events | Third-Party Comments and "Setting" Impairments | "Some" Possible ADHD Symptoms |
|---|---|---|
| 6-30-53<br>**Grade 3**<br>(9 years old) | *Teacher Comments*<br>Promoted to Grade 4 | |
| 11-xx-53<br>**Grade 4**<br>(9 years old) | *Teacher Comments*<br>"Ralph can do better work if he takes more care"<br><br>*School Setting Impairments*<br>• Received two D's in "handwriting"<br>• Received two D's in "accuracy and speed" in Math<br>• Received a D, two Es in "ability to reason in Math" | **1(a)** often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities<br>**1(b)** often has difficulty sustaining attention in tasks or play activities<br>**1(f)** often avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort (such as schoolwork or homework)<br><br>**2(e)** is often "on the go" or often acts as if "driven by a motor" |
| 6-30-54<br>**Grade 4**<br>(10 years old) | *Teacher Comments*<br>Promoted to Grade 5 | |
| 11-15-54<br>**Grade 5**<br>(10 years old) | *Teacher Comments*<br>"Ralph's greatest weakness is in English. I am sure the source of his trouble is his lack of attention during lessons. He can do much better."<br><br>*School Impairments*<br>• Received unsatisfactory (U) in "follows directions"<br>• Received two U's in "observes regulations" and "respects others' rights" | **1(a)** often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities<br>**1(b)** often has difficulty sustaining attention in tasks or play activities<br>**1(d)** often does not follow through on instructions and fails to finish schoolwork, chores, duties in workplace (not due to oppositional behavior or failure to understand instructions)<br><br>**2(e)** is often "on the go" or often acts as if "driven by a motor" |
| 6-30-55<br>**Grade 5**<br>(11 years old) | *Teacher Comments*<br>Promoted to Grade 6 | |
| 11-xx-55<br>**Grade 6**<br>(11 years old) | *Teacher Comments*<br>"Ralph is eager to learn, but usually wants more than his share of attention. Reading unsatisfactory."<br><br>*School Impairments*<br>• Received Ds in:<br>  "reading with understanding"<br>  "expression of thoughts in writing"<br>  "observes school regulations"<br>  "respects rights of others" | **1(a)** often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities<br>**1(b)** often has difficulty sustaining attention in tasks or play activities<br><br>**2(f)** often talks excessively |

| Chronology of Dr. Krolik's Life Events | Third-Party Comments and "Setting" Impairments | "Some" Possible ADHD Symptoms |
|---|---|---|
| 6-xx-56<br>**Grade 6**<br>(12 years old) | *Teacher Comments*<br>"Usually dependable. A nice child." | |
| **1950s Period**<br>Retrospective Reports in 2001 about Childhood Behaviors | *Older Cousin's Comments*<br>• "remembered Ralph bouncing up and down on the sofa…"<br>• [and] "always running around"<br><br>*Social-Home Setting Impairments*<br>• hyperactivity-impulsivity-related impairments in the 1950s prior to existence of either ADHD as diagnosis or ADHD treatments | **2(c)** often runs about or climbs excessively in situations in which it is inappropriate (in adolescents or adults, may be limited to subjective feelings of restlessness)<br>**2(d)** often has difficulty playing or engaging in leisure activities quietly<br>**2(e)** is often "on the go" or often acts as if "driven by a motor"<br>**2(f)** often talks excessively |
| **1960s Period**<br>Retrospective Report in 2001 about Adult Behaviors | *College Study Partner's Comments*<br>• "couldn't sit still and concentrate"<br>• "couldn't get textbook into his head"<br>• "problems with details"<br>• "his mind often wandered"<br>• "wouldn't sit and study without talking"<br>• "careless mistakes on exams, yet he had comparable intelligence"<br><br>*College Setting Impairments*<br>• attention- and impulsivity-related learning impairments in the 1960s prior to existence of either ADHD diagnosis/treatments or disability laws and mandated remedial tutoring/accommodations | **1(a)** often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities<br>**1(b)** often has difficulty sustaining attention in tasks or play activities<br><br>**2(c)** often runs about or climbs excessively in situations in which it is inappropriate (in adolescents or adults, may be limited to subjective feelings of restlessness)<br>**2(d)** often has difficulty playing or engaging in leisure activities quietly<br>**2(e)** is often "on the go" or often acts as if "driven by a motor"<br>**2(f)** often talks excessively |

- *Criterion C from the ADHD Diagnostic Criteria (DSM-IV)*

**Some** impairment from the symptoms is present in two or more settings (e.g., at school [or work] and at home).

DSM-IV requires "some" impairment caused by ADHD symptoms be present in two (2) or more settings (e.g., at school [or work] and at home). This criterion refers to the "pervasive" nature of "some" ADHD symptoms and impairments that should be evident in two or more settings. As March, Wells, and Conners (1995) have stated:

> As a rule, children with ADHD exhibit symptoms across multiple contexts--peers, family, and school are the most common. DSM-IV requires ADHD symptoms be present in at least two settings, one of which can be the doctor's office (page 221)."

As previously mentioned, the number of settings in which impairment is displayed, however, is not an explicit requirement under disability laws, which only require "substantial limitations" in at least one major life activity.

Disability laws, DSM-IV, and the NBME evaluation guidelines do not require or recommend any specific tests or measurement methods to determine how qualified professionals should evaluate impairment in specific settings. Fortunately, the DSM-IV does provide the Global Assessment of Functioning Scale on Axis V, which explicitly directs qualified professionals to use clinical judgment in rating the overall level of functioning of an individual across multiple settings and areas of functioning.

Relevance of Criterion C to Dr. Krolik's Case

It is important to recall that disability laws do not require disabling impairments in 2 or more settings (e.g., school, work, home, etc), but DSM-IV does in order to diagnose ADHD. Neither disability laws nor DSM-IV require objective documentation of disabling impairments. Disability laws, DSM-IV, and the NBME do not require or recommend specific test or measurement methods regarding functioning across settings, although DSM-IV justifies the use of clinical judgment in rating individuals' overall functioning across multiple settings on Axis V.

This evaluator provided and discussed evidence of "some" chronic or persistent as well as current and pervasive ADHD impairments across two settings; namely, home and school. This assessment was based on all available records, clinical interviews, test observations, as well as all neuropsychological, psychoeducational, and mental health tests or procedures, including third-party reports by Dr. Krolik's spouse on well-known and widely used standardized adult ADHD rating scales. Furthermore, my diagnosis was consistent with the diagnosis of ADHD made by Dr. Wurzlow, a Board-Certified Psychiatrist, in 1998.

- *Criterion D from the ADHD Diagnostic Criteria (DSM-IV)*

> There must be clear evidence of clinically significant impairment in social, academic, or occupational functioning.

DSM-IV requires evidence of "some" clinically significant impairment in social, academic **or** occupational functioning. Neither disability laws nor the NBME require or recommend specific tests or measurement methods for determining "substantial limitations" or "clinically significant" impairment of social, learning, or work functioning. DSM-IV clearly requires the use of clinical judgment in rating an individual's overall functioning across multiple areas of functioning across multiple settings.

### Relevance of Criterion D to Dr. Krolik's Case

As stated above for Criteria B and C, this evaluator provided and discussed evidence from multiple sources that indicated that Dr. Krolik has clinically significant past and current ADHD impairments in psychosocial and academic areas of functioning. It is important to note that neither disability laws, DSM-IV, nor the NBME require or recommend specific tests or measurement methods to evaluate each specific area of functioning, such as academic, work, or psychosocial areas. As stated above for Criteria B and C, all sources of evidence, including records, third-party reports, clinical interviews, test observations, and standardized test results were used in reaching my diagnostic and disability evaluation conclusions as well as recommended test-taking accommodations.

This evidence was dismissed by the NBME.

- *Criterion E from the ADHD Diagnostic Criteria (DSM-IV)*

> The symptoms do not occur exclusively during the course of a Pervasive Developmental Disorder, Schizophrenia, or other Psychotic Disorder, and are not better accounted for by another mental disorder (e.g., Mood Disorder, Anxiety Disorder, Dissociative Disorder, or a Personality Disorder).

DSM-IV requires that symptoms do not occur during the course of several other disorders, and that they are not accounted for better by another mental disorder. This is not a requirement under disability laws. Neither disability laws nor the DSM-IV recommends or requires specific tests or measurement methods with which qualified professionals should "rule out" and "rule in" mental disorders as part of differential diagnosis. As is well-known, the routine task of differential diagnosis is complicated by various co-morbid mental disorders that often accompany ADHD or learning disorders.

### Relevance of Criterion E to Dr. Krolik's Case

This evaluator considered evidence as part of differential diagnosis based on standardized general inventories of mental disorders (e.g., MMPI-II and Millon Personality Inventory) as well as widely used, standardized adult ADHD-specific diagnostic tests (i.e., Brown Attention-Deficit Disorder Scales, Conners Adult ADHD Rating Scales, and Current ADHD Symptoms Scales). As part of differential diagnosis, this evaluator also considered evidence from comprehensive neuropsychological and

psychoeducational tests recommended by the NBME on their website, as well as additional tests and measures. This evaluator summarized all records/documentation and clinical observations/interviews as well as comprehensive neuropsychological, psycho-educational, and mental health test results as part of differential diagnosis.

For example, despite the historical absence of professional knowledge about ADHD and disability laws and related evaluation and treatment or accommodation services, Mr. Doane and some unnamed ADHD experts concluded that Dr. Krolik had neither ADHD nor an ADHD-related disabling impairment in any major life activity without conducting an evaluation themselves, while ignoring without explanation current and prior evidence of Dr. Krolik's ADHD.

**Summary:**

The NBME requires unreasonable documentation of childhood and current ADHD diagnostic symptoms and functional impairments from adults who otherwise would be appropriately diagnosed with current clinically significant impairments of adult ADHD. Such documentation requirements in regard to the ADHD age-at-onset criterion fail to appropriately acknowledge the well-known lack of conclusive scientific evidence or consensus about these criteria. Further, some NBME requirements exceed the rigorous research standards of empirical studies of adult ADHD that have been published in well-respected, peer-reviewed scientific journals.

However, this qualified professional also would ask Mr. Doane, NBME staff, and unnamed ADHD experts to explain and justify why the NBME imposes such rigorous evaluation requirements as "received scientific fact" without any public acknowledgement about the limits of scientific knowledge about reliable and valid measurement methods in regard to adult ADHD symptoms, diagnostic criteria, and impairments, as discussed above. Further, mental health, medical, and educational professionals or parents in the 1950s and 1960s could not have validly identified, diagnosed, treated, accommodated, as well as appropriately documented mental health evaluations, educational diagnostic evaluations, and instructional accommodations or services that did not exist throughout Dr. Krolik's childhood and early adult education.

Again, it is interesting that individuals with physical disabilities are not subjected to the extensive intrusions into their private personal health, mental health, educational, and family lives, yet they routinely receive reasonable accommodations, such as wheelchair ramps, spacious and adapted restroom facilities. By contrast, individuals with mental disabilities, such as Dr. Krolik, are subjected to routine intrusions into private personal lives, yet are not eligible for common test-taking accommodations. This qualified professional is at a loss to explain such unequal differences in treatment

Of course, the more fundamental scientific and legal question related to professional certification examinations such as the STEP is whether the NBME has published conclusive scientific evidence that the STEP exams and their cut-off (passing) scores can reliably and validly differentiate "competent" from "incompetent" physicians (e.g., Hafferty & Gibson 2003) without discriminating against qualified individuals with disabilities.

**Section 4. Questions about NBME Requirements and Dr. Butterbaugh's Evaluation Reports**

This evaluator's responses to NBME requirements are addressed below and are compared with DSM-IV and research standards in Table 6 (pages 44-47) for both my original report and accompanying letter (faxed to the NBME on 4-9-01) and my revised report and accompanying letter (faxed to the NBME on 12-9-03) for Dr. Krolik. The documentation of each requirement is discussed more fully point by point starting on page 40, as well as in prior and subsequent sections.

**Requirement # 1**: Testing by qualified diagnostician.

**Response:** I provided my qualifications in my previous correspondence with Mr. Doane and the NBME as well as in Part III of this affidavit.

The NBME did not challenge my qualifications as an evaluator.

**Requirement #2**: Testing must be current.

**Response:** My test results reported in my original evaluation were accepted as current by Mr. Doane in our phone call on 12-19-03.

However, I would note that the 1998 IQ test results from Dr. Hoblit, which I referenced in my evaluation, ruled out inadequate intelligence as a possible current explanation for Dr. Krolik's current learning impairments. Therefore, additional IQ testing would not provide relevant IQ subtest results that would differentiate whether or not Dr. Krolik had ADHD or another disability.

No subsequent letter from the NBME challenged either the "currency" or the "comprehensiveness" of my use of available 1998 IQ test results and report.

**Requirement # 3:** Evidence verifying childhood ADHD symptoms and impairments that…

**#3 a.** …began in childhood based on school transcripts, report cards, teacher comments, tutoring evaluations, job assessments, and the like

**Response:** Please also recall that during Dr. Krolik's childhood, the diagnosis of ADHD (or its precursor diagnosis) and related evaluation techniques did not exist and thus were unknown to educational, medical, and mental health professionals, as well as parents. This evaluator reviewed third-party comments documented by Dr. Krolik's elementary school teachers when he was 6-12 years of age, for comparison with ADHD diagnostic symptoms excerpted from the DSM-IV (APA 1994), as shown in Table 5 (starting on page 30). Further, this evaluator interviewed Gerald Krolik, Dr. Krolik's cousin, about Dr. Krolik's hyperactive behavior as a child.

**#3 b.** Have been chronic and pervasive

**Response:** This evaluator obtained clinically significant third-party reports of chronic and pervasive clinically significant ADHD impairments by Dr. Krolik's spouse of 9 years, who completed well-known and widely used standardized ADHD diagnostic

rating scales. At the time of my evaluation, Dr. Krolik's wife was also a licensed physician and a general psychiatry resident. I also interviewed Jack Sona, Dr. Krolik's college study partner, about his behaviors as a young adult.

Further, in my evaluation report of 2-23-01, I also noted Dr. Krolik's prior diagnosis and medication treatment of ADHD in 1998 by Dr. Gayle Wurzlow, a Board Certified Psychiatrist.

The NBME did not note any deficiency in this evaluator's evaluation, yet disagreed with this evaluator's diagnostic conclusions.

**#3 c.** Evidence of ongoing ADHD behaviors that impair functioning in two or more settings

**Response:** This evaluator provided and discussed evidence of "some" chronic or persistent as well as current and pervasive ADHD impairments across at least two settings, namely, home, school, and clinic. This assessment was based on all available records, clinical interviews, test observations, as well as all neuropsychological, psychoeducational, and mental health tests or procedures, including third-party reports by Dr. Krolik's spouse on well-known and widely used standardized adult ADHD rating scales. Furthermore, my diagnosis was consistent with the diagnosis of ADHD made by Dr. Wurzlow, a board-certified psychiatrist, in 1998.

The NBME did not note any deficiency in this evaluator's evidence, yet disagreed with this evaluator's diagnostic conclusions.

**#3 d.** Evidence consists of more than patient self-report. Information from third-party sources is critical in diagnosis.

**Response:** Overall, it is my professional opinion that Dr. Krolik is one of the most obviously hyperactive and impulsive adult clients with whom I have ever worked across my 20-year career in mental health.

For example, our Test Observations (p 2 of 8, revised report dated 12-03) described Dr. Krolik as "cooperative and well-motivated during testing, but he showed obvious and consistent high levels of inattention, impulsivity, and overanxiousness. He frequently started tasks before instructions were completed, became distressed and apologized when he made mistakes, and frequently failed to self-monitor and self-correct his performance on his own. His restlessness resembled the disinhibited behavior of a hyperactive school-aged child with obvious impulsive and overactive behavior. He also frequently interrupted the examiners' comments or instructions, not from deliberate discourtesy, but rather from his own impulsiveness." This description indicates current clinically significant ADHD impairments in at least one setting, the functional and relevant area of tests of learning, especially when considered in the context of all other results.

As previously noted by Barkley (1998), patients' self-report about ADHD symptoms may result in clinically significant underreporting of their past and current symptoms and impairments. Third-party reports are neither required nor recommended under disability laws, but are a clinically necessary diagnostic evaluation strategy that is

used to correct for invalid patient self-report bias. Dr. Krolik certainly underreported his past and current ADHD symptoms, as compared to our own clinical test observations and to his spouse's third-party reports of his current and past ADHD impairments on the widely-used standardized, and norm-referenced Observer Version of the Conners Adult ADHD Rating Scale (CAARS, Conners et al 1999), the standardized Brown Attention-Deficit Disorder Scales (Brown 1996), and the Current ADHD Symptoms Scale—Informant Version (Barkley & Murphy 1998). With the exception of the latter scale, which has been widely used despite its limited norm-referenced data and limited evidence of its diagnostic reliability and validity, these ADHD rating scales are standardized and designed for collateral or third-party reports. All third-party reports by his spouse supported the diagnosis of ADHD.

As Dr. Krolik's parents are deceased, objective documentation of "some" childhood ADHD impairments were based on his elementary school teachers' comments on his report cards. Certainly, reasonable persons can disagree about whether Dr. Krolik's teachers' comments represent diagnostic symptoms, given that they had never heard of, nor were they trained to evaluate, treat, and accommodate this then-nonexistent diagnostic disorder. However, his teachers' comments were consistent across raters as well as with typical ADHD academic or learning impairments. Additionally, no ADHD diagnosis, disability laws or accommodations and special education evaluation or remedial tutoring services were available until after he graduated from his undergraduate pharmacy school or thereafter.

Third-party interviews about Dr. Krolik's childhood and youth were completed in 2001. His older cousin had some quite vivid memories of Dr. Krolik's frequent childhood overactivity and continuing over-talkativeness as an adult. Mr. Jack Sona, Dr. Krolik's "study partner" in undergraduate pharmacy school, reported that Dr. Krolik "couldn't sit still and concentrate" and "was distracted easily and always on the go." Finally, Mr. Sona perceived that Dr. Krolik "was just as smart as me, but that Ralph made careless mistakes on college course exams."

Of course, the reports of Dr. Krolik's parents would have reflected more ideally knowledgeable third-party raters of his childhood behavior and academic, psychosocial, and developmental history. However, the available third-party reports of his older cousin, college study partner, and spouse exceed or meet typical reasonable clinical and research standards of an ADHD diagnostic evaluation, even without the limited but clinically significant teacher comments about his academic underachievement.

Even if the latter childhood data is not considered, it is professionally indefensible why this clinical patient with "some" severe symptoms and impairments that were clinically observed and well-documented by third-party reports of ADHD impairments by his spouse would be required to meet such unrealistically restrictive diagnostic and disability criteria. It is indefensible, given the historical coincidence of his birth some 24 years before the precursor diagnosis of ADHD and some 29 years before the passage of disability laws that first introduced legal concepts such as disability, substantial limitation, and reasonable accommodation, that he be denied on the basis of no parental reports and no "paper trail" of childhood accommodations.

Again, the NBME did not note any deficiency in this evaluator's evidence of more than self-report of ASDHD symptoms, yet disagreed with this evaluator's diagnostic conclusions.

**#3 d i.** Ongoing ADHD behavior that has significantly impaired functioning over time.

**Response:** Dr. Krolik's parents died prior to my evaluation and thus could not be interviewed to complete a comprehensive clinical interview or standardized retrospective ADHD rating scales to evaluate his childhood development. As Dr. Krolik was uncertain of any family history of developmental disabilities or disorders, this evaluator could not complete a comprehensive evaluation in Dr. Krolik's family medical history.

The NBME did not note any deficiency in this evaluator's conclusion about Dr. Krolik's impairments over time, yet disagreed with this evaluator's diagnostic conclusions.

**#3 d ii.** developmental history

**Response:** Dr. Krolik's parents died prior to my evaluation and thus could not be interviewed to complete a comprehensive evaluation of his developmental history.

The NBME did not note any deficiency in this evaluator's developmental history, yet disagree with this evaluator's diagnostic conclusions.

**#3 d iii.** family history of ADHD and other difficulties deemed relevant by the examiner

**Response:** Dr. Krolik's parents died prior to my evaluation and thus could not be interviewed to complete a comprehensive evaluation of his family history. As Dr. Krolik was uncertain of any family history of developmental disabilities or disorders, this evaluator could not complete a comprehensive evaluation in Dr. Krolik's family medical history.

The NBME did not note any deficiency in this evaluator's family history, yet disagreed with this evaluator's diagnostic conclusions.

**#3 d iv.** relevant medical and medication history

**Response:** Dr. Krolik's parents died prior to my evaluation and thus could not be interviewed to complete a comprehensive evaluation of Dr. Krolik's own childhood medical history. Thus, this evaluator could not complete a comprehensive evaluation of Dr. Krolik's childhood medical history.

Dr. Krolik's relevant medical history was reviewed and included his prior diagnosis of, and treatment for, adult ADHD by Dr. Gayle Wurzlow, as was noted in my reports. This evaluator also noted that Dr. Krolik reported a history of a benign congenital type of spina bifida and possible mild traumatic brain injury.

The NBME did not note any deficiency in this evaluator's medical and medication history, except for requesting and expecting childhood documentation of ADHD.