Ralph E. Krolik, M.D.,
vs.
National Board of Medical Examiners,

No. 05-CV-0315-PHX-FJM

INDEX OF EXHIBITS TO
DEFENDANT'S PRE-HEARING BRIEF
IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

EXHIBIT A          Psychological Evaluation Report of Pamela R. Hoblit, Ph.D.

EXHIBIT B          Plaintiff's Response to Defendant's First Set of Requests for
                   Admissions, Interrogatories and Requests for Production of
                   Documents

EXHIBIT C          Declaration of Samuel J. Keith, M.D.

1148798_1.DOC

# EXHIBIT A

OCHSNER CLINIC
1514 JEFFERSON HIGHWAY
NEW ORLEANS, LA 70121
CABLE ADDRESS: OCHSCLINIC
(504) 842-4000



## PSYCHOLOGICAL EVALUATION

**NAME:** Ralph Krolik, M.D.    **REFERRED BY:** Gayle Wurzlow, M.D.
**OC#:** 1591339           **EVALUATED BY:** Pamela R. Hoblit, Ph.D.
**DOB:** 11/22/44        **EVALUATION:** 10/2 and 11/12/98

Dr. Krolik, a 53 year old white male, came for further evaluation of Attention Deficit Hyperactivity Disorder; the initial diagnosis was made by Dr. Wurzlow, a psychiatrist with expertise in adult ADHD.

Dr. Krolik graduated from the University of New Mexico with a GPA of 2.34 earning a pharmacy degree. He then attended the American University of the Caribbean School of Medicine where he never failed a course. His difficulties began when he began taking the National Board Exam; he has failed different parts repeatedly and sought the evaluation with Dr. Wurzlow to determine the cause of his difficulty.

Dr. Krolik was married for 30 years and then divorced; he has subsequently remarried.

Dr. Krolik was seen for an initial interview; in the second appointment a structured clinical interview was done using the Brown ADD Scales, a set of procedures for diagnosis of ADD; psychological testing was also done.

During his sessions with me, Dr. Krolik was alert and cooperative. During his session with the testing technician, Mrs. Morrison, he was cooperative and worked well on the test. She noted that he was attentive; his concentration was excellent and he had no obvious trouble focusing. However, she did notice that he seemed anxious and flustered on occasions when he knew he was being timed. His hands trembled and he tried to write too quickly at times.

Tests administered were Wechsler Adult Intelligence Scale-Third Edition, Bender Visual Motor Gestalt, Wide Range Achievement Test-Third Revision, Brown ADD Scales-Ready Score, Attention Deficit Scales for Adult (ADSA), Incomplete Sentences, MMPI-2, MCMI-III, and Conners' Continuous Performance Test.



Psychological Evaluation
Ralph Krolik (OC# 1591339)
Page 2

<u>Test Findings and Interpretations.</u>    The clinical interview and the clinical history protocol explored a wide-range of functioning.

Dr. Krolik's chief complaint is that he has repeatedly failed medical board exams due to inability to complete the test in the time allotted. He indicated that he first noted the problems with ADHD type symptoms with this experience. His work in the past involved owning his own business; he ran a multimillion dollar chemical company. He indicated that he worked on business matters and phone calls during the day, and then took paperwork home at night. He felt that he did fine with the paperwork and "stayed on top of things." He did not complain about organizational skills, procrastination, or distractibility.

Early school history indicated that he was an "average B/C student, never outstanding." He was actively involved in athletics. He did not recall a history of teacher complaints in grade school of inability to concentrate, attention problems, distractibility, overactivity, impulsivity or disruptive behavior. He was never considered a behavior problem and was never suspended or expelled. He never failed a grade. He did note, "I am a slow reader and a slow processor."

Family history indicated a nephew with learning disability and a cousin with Schizophrenia. He knew of no family members diagnosed with ADHD. He reported no other family history of mood disorder or anxiety disorder. His paternal grandfather was alcoholic. Dr. Krolik reported that his health has been fine. He has a diagnosis of spinabifida, but has not experienced significant problems. He is currently taking Prozac and Ritalin prescribed by Dr. Wurzlow. He denied problems with alcohol use, stating that he rarely drinks. He denied any history of drug use.

Sleep and appetite are reportedly within normal limits.

He has had no previous psychotherapy.

When asked to describe his usual mood, he responded, "Very easy going." He then went on to describe himself as "scrutinous" which he elaborated as meaning "I wonder about people's motives; I am easily pissed off a lot." He denied any problem controlling his temper and added, "Unless I was threatened, I wouldn't hurt anyone."

<u>ADHD Measures.</u>    He was questioned on DSM-IV criteria for diagnosis of ADHD. He reported 0 out of 9 symptoms of inattentiveness, 4 out of 9 symptoms of hyperactivity and impulsivity.    The items were answered concerning both childhood and current behaviors.



Psychological Evaluation
Ralph Krolik, M.D. (OC# 1591339)
Page 3

On the Attention Deficit Scales for Adults (a self-report questionnaire), the profile was within normal limits. The ADSA total score was at the 6.7 percentile, extremely low. A percentile rank of 97.7 is considered to be a highly probable indicator of ADHD. Obviously, he scored in the opposite direction. The same finding occurred on another self-report questionnaire, the Brown ADD Scales-Ready Score, Adult Form. His total score was average with a total score of 51. He did show a borderline significant score on the attention cluster. The Threshold Interpretation Scale of total score was ADD possible but not likely. His wife also completed the Brown ADD Scales-Ready Score, Adult Form to provide collateral information. On her report of his behavior, he scored within the significant range, with a total score at T=76.  Clusters within the significant range were memory (T=88) and attention (T=82). His wife clearly reported a number of features in his behavior which are often associated with ADHD and the Threshold Interpretation Scale of total score was ADHD highly probable.

For further objective information, the Conners' Continuous Performance Test was administered. He had no difficulty with this task and the computer printout noted overall Ralph Krolik performed well on the Conners' CPT. The results of this test do not suggest attention difficulty. Overall, Index = 0.00.

<u>Other Assessment Measures.</u>   Administration of the WAIS-III indicated a Verbal IQ of 116 (high average), a Performance IQ of 109 (average), and a Full Scale IQ of 113 (high average).

Index Score Summary indicated a Verbal Comprehension Index Score of 103, a Perceptual Organization Index Score of 105, and a Working Memory Index Score of 150.

Individual age standard scores were as follows where 10 is average:

| **VERBAL TESTS** | | **PERFORMANCE TEST** | |
|---|---|---|---|
| VOCABULARY | 12 | PICTURE COMPLETION | 10 |
| SIMILARITIES | 9 | DIGIT SYMBOL-CODING | 11 |
| ARITHMETIC | 14 | BLOCK DESIGN | 10 |
| DIGIT SPAN | 19 | MATRIX REASONING | 13 |
| INFORMATION | 11 | PICTURE ARRANGEMENT | 13 |
| COMPREHENSION | 11 | | |
| LETTER NUMBER SEQUENCING | 19 | | |



Psychological Evaluation
Ralph Krolik, M.D. (OC# 1591339)
Page 4

There was a statistically significant (.05) level indicating a weakness in Similarities and Information and a strength in Digit Span and Letter Number Sequencing.

Findings from the academic screening measure, WRAT-III, indicated Reading (Word Recognition) standard score 107, Spelling standard score 111, and Arithmetic standard score 110.

Findings from cognitive assessment are noteworthy in several respects. A rather dramatic finding is his exceptionally high score on the Working Memory Index where he had a percentile rank of greater than 99; it is typically (but not always) found that people with ADHD have a relatively low score on this Index; his score was not only in the opposite direction, but exceptionally strong.

There were no obvious indicators of a learning disability, but he may have some learning dysfunction as suggested by a definite pattern of strengths and weakness. Finally, the Verbal Comprehension Index of 103 may be significantly lower than is typical for people taking the medical boards; he may have some difficulty with processing information, particularly as he noted that he is also slow in processing such material.

<u>Personality and Emotional Factors.</u> Findings from objective self-report personality questionnaires did not indicate the presence of a mood disorder or anxiety disorder; this finding was consistent with information reported during the clinical interview. The MMPI findings were within normal limits with some indication of reluctance to admit to problems. Responses suggested that he is likely to be somewhat reclusive and cynical. His interests seem to involve primarily stereotypic male oriented activities and he seemed to lack the cultural interest that are characteristic of individuals with his educational level.

Findings from the MCMI noted his emphasis on self-reliance and self-determination; he may focus on his competitive values and autonomy. His style involves a high degree of self-confidence combined with mistrust of others. He is likely to emphasize his hard-boiled strength.

<u>Recommendations and Conclusions.</u> Dr. Krolik told of many life accomplishments and successes. He played professional football in a Canadian league and also hockey. He has a pilot's license and in the past used to enjoy flying airplanes; he also had a collection of cars including Porsche's and Mercedes. He was in the military and earned a purple heart. He enjoyed owning and running his multimillion dollar business.

He has encountered a high degree of frustration associated with this unaccustomed experience of failure as he has attempted to pass his Boards. He indicated that he has been feeling a great deal of stress and anger about the situation.



Psychological Evaluation
Ralph Krolik, M.D.  (OC# 1591339)
Page 5

Given his life experiences of success and accomplishment and his personality style of
maintaining a confident, self-determined and decisive approach, he may have had a
reluctance (possibly unconscious) to admit to the types of deficits associated with
Attention Deficit Hyperactivity Disorder.  Therefore, it seems appropriate for him to
pursue further evaluation.  He indicated that he has an appointment to see Dr. Mark
Zielinski, a psychiatrist with expertise in Adult Attention Deficit Hyperactivity Disorder.
Even though the standard procedures for diagnosis of ADHD used in the current
evaluation did not indicate a high probability of the presence of ADHD, there is no
definitive test for Attention Deficit Hyperactivity Disorder.  As there is the possibility
that he has ADHD, further evaluation and another opinion may be helpful.

Pamela R. Hoblit, Ph.D.
Clinical Psychologist

jk

# EXHIBIT B

Pete V. Domenici, Jr., Esq.
Domenici Law Firm, P.C.
320 Gold Avenue SW, Suite 1000
Albuquerque, New Mexico 87102
(505) 883-6250
Attorney for Plaintiff Krolik, M.D.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RALPH E. KROLIK, M.D.,     ) | CASE NO. CV-05-0315 PHX FJM |
|                   ) | |
|       Plaintiff,    ) | |
| Vs.                ) | **RESPONSE TO DEFENDANT'S** |
|                   ) | **FIRST SET OF REQUESTS FOR** |
|                   ) | **ADMISSIONS, INTERROGATORIES** |
|                   ) | **AND REQUESTS FOR PRODUCTION** |
|                   ) | **OF DOCUMENTS** |
| NATIONAL BOARD OF    ) | |
| MEDICAL EXAMINERS,    ) | |
|                   ) | |
|       Defendants.    ) | |
|                   ) | |

TO: National Board of Medical Examiners
      C/o Diane M. Johnsen, Esq.
      Osborn Maledon, P.A.
      2929 North Central, Suite 2100
      Phoenix, Arizona 85012-2794

Plaintiff Dr. Ralph Krolik, by and through his attorney of record, Domenici Law Firm,

P.C. (Pete V. Domenici, Jr.), hereby submits his Response to Defendant's First Set of

Requests for Admissions, Interrogatories and Requests for Production of Documents.

## REQUESTS FOR ADMISSIONS

1.    Admit that prior to 1999, you had not sought accommodations, pursuant to

the Americans with Disabilities Act, in connection with any examination.

Admit __X with qualifications_____ Deny _____

During my tenure in medical school, accommodations were made available
to students for more time to complete exams and whether the
accommodations were made pursuant to the ADA or not, I am not sure, but
accommodations for more time were always made available and I used the
added time to complete the exams.

2.     Admit that you have never been granted accommodations, pursuant to the
Americans with Disabilities Act, in connection with any examination.

Admit _X_ with qualifications_____         Deny _____

During my tenure in medical school, accommodations were made available
to students for more time to complete exams and whether the
accommodations were made pursuant to the ADA or not, I am not sure, but
accommodations for more time were always made available and I used the
added time to complete the exams.

## INTERROGATORIES

1.     For the period from the date of your college graduation to the present,
identify each employer with whom you have been employed (including any
consulting or independent contractor work), and for each such employer,
identify:

a.   the dates of your employment;

b.   the employer's address and telephone number;

c.   the name(s) of your supervisors;

d.   the position or positions you held and a description of your duties;

e.   the wage or salary earned from the employer; and

2

f.  the reason your employment ended.

RESPONSE:

<u>Dates</u>        1965-1969
<u>Employer</u>     Campbell Drug, Albuquerque, NM
<u>Supervisor</u>   Dick Campbell
<u>Position</u>     Pharmacy intern
<u>Wage</u>         ?
<u>Reason Left</u>  Worked 6 months. Looking for own store.


<u>Dates</u>        1969-1970
<u>Employer</u>     Dale Drug, Phoenix, AZ
<u>Supervisor</u>   Dale ?
<u>Position</u>     Pharmacy intern
<u>Wage</u>         ?
<u>Reason Left</u>  In 1969 passed the Arizona pharmacy boards; short answer questions.
First job out of pharmacy school. Quit.


<u>Dates</u>        1969-1970
<u>Employer</u>     Mark Graf Pharmacy, Phoenix, AZ
<u>Supervisor</u>   Mark and Ed Graf
<u>Position</u>     Pharmacy intern and Pharmacist
<u>Wage</u>         ?
<u>Reason Left</u>  Fired.


<u>Dates</u>        1969-1970
<u>Employer</u>     Issac School Pharmacy, Phoenix, AZ
<u>Supervisor</u>   Abe Rolnik
<u>Position</u>     Pharmacy intern and Pharmacist
<u>Wage</u>         ?
<u>Reason Left</u>  Fired.


<u>Dates</u>        1969-1970
<u>Employer</u>     Apache Trail Pharmacy, Apache Jct, AZ
<u>Supervisor</u>   Bob Bishop
<u>Position</u>     Pharmacy intern and Pharmacist
<u>Wage</u>         ?
<u>Reason Left</u>  Owner went broke.


3

Dates          1970
Employer       St. Lukes Hospital Pharmacy
Supervisor
Position       Registered Pharmacist
Wage           ?
Reason Left    Quit to go to Mexico to attend Guadalajara medical school.

Dates          1970-1971
Employer       Guadalajara, Mexico medical school
Supervisor
Position       medical student
Wage           ?
Reason Left    Attended school for one year and was not able to overcome the dual-language program and academic challenges. Quit

Dates          1972-1974
Employer       Sav-On Drug, Gallup, NM
Supervisor     Self
Position       Owner, Pharmacist
Wage           ?
Reason Left    Returned from Mexico and opened his own pharmacy in Gallup, New Mexico. Was successful for one year but had to work 18-20 hours/day to complete all the assignments. Sold the business for cash; $40,000.

Dates          1974 -
Employer       New York Life Insurance
Supervisor     Self
Position       Agent
Wage           ?
Reason Left    Could not work in the structured environment.

Dates          1974-1991
Employer       CEO and President CAEM MFG Corp. and REK Industries, Alb, NM
Supervisor     Self
Position       CEO and President
Wage           $300,000
Reason Left    REK Industries was a distributorship for hand cleaner. Dr. Krolik developed his own product with a chemist from Lever Brothers. He had the formula for hand cleaner and plastic scrubbers. Sold business to start REK Chemical. At REK Chemical, Dr. Krolik worked 20 hours/day for 20 years. There was a lot of turnover in his staff but the customers and suppliers were loyal to the business. Dr. Krolik transitioned to medical school after the EPA and other regulatory issues made it difficult to operate without paperwork and structure.

4

Dates        1991-1996
Employer     Medical student – Amer ican Medical School of the Caribbean
Supervisor
Position
Wage
Reason Left  Graduated. After graduating, Dr. Krolik's wife, Mary passed her
medical boards and got a residency in New Orleans.

Dates        1997-2000
Employer     C's Pharmacy, New Orleans, LA
Supervisor   Larry Ciolino
Position     Pharmacist
Wage         ?
Reason Left  Fired.

Dates        1997-2000
Employer     Rite Aid, LA
Supervisor
Position     Pharmacist
Wage         ?
Reason Left  Fired.

Dates        1997-2000
Employer     Castellon Pharmacy, LA
Supervisor   Dick Castellon
Position     Pharmacist
Wage         ?
Reason Left  Would not sell names to dealers and was fired.

Dates        1997-2000
Employer     Winn Dixie Pharmacy, LA
Supervisor
Position     Pharmacist
Wage         ?
Reason Left  Fired.

Dates        1997-2000
Employer     Wal-Mart Pharmacy, Hammond, LA
Supervisor
Position     Pharmacist
Wage         ?
Reason Left  Quit. Returned to Phoenix.

5

| Dates | 2000-2004 |
|---|---|
| Employer | Wal-Mart Pharmacy, New Mexico |
| Supervisor | Melissa Christenson |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| Dates | 2000-2004 |
|---|---|
| Employer | Albertsons Pharmacy, Phoenix, AZ |
| Supervisor | Brian ? |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| Dates | 2000-2004 |
|---|---|
| Employer | Bashas Pharmacy |
| Supervisor | Ed Sava |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| Dates | 2000-2004 |
|---|---|
| Employer | Dependable Staffing |
| Supervisor | Laura was the scheduler |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Bad assignments. Quit. |

| Dates | 2000-2005 |
|---|---|
| Employer | Studying for Medical Boards |
| Supervisor | |
| Position | |
| Wage | |
| Reason Left | |

| Dates | 2004-2005 |
|---|---|
| Employer | Working for myself - construction |
| Supervisor | Self |
| Position | Construction Supervisor |
| Wage | None |
| Reason Left | Current position. |

6

2.    Provide a detailed computation of the damages you are seeking in this matter, and if you are seeking more than one category of damages, provide a separate computation of each, and also identify the legal basis for your contention that you are entitled to these amounts.

<u>RESPONSE:</u>

We are still working on the damage claim and will supplement this response.

7

3.      Describe in detail the nature of all disabilities for which you claim you are
        entitled to accommodation while taking the United States Medical Licensing
        Examination ("USMLE").

**RESPONSE:** Dr. Krolik has the following disabilities for which he claims he is
entitled to accommodation while taking the USMLE:

a.  ADD – Disruption of attention, mental impulse control, grasping too
impulsively.  ADD is measured, not through cognitive tests, but by observation of
individual over different situations, or by self-assessment, or by assessment by
family members.

b.  Learning disability problems – attention and memory problems despite having
above-average intelligence.  The learning disability problems disrupt the efficiency of
learning.

c.  Inattentive, hyperactive – as compared to the average citizen and by the collateral
reporting of Dr. Krolik's wife.

d.  Underachiever – repeated problem with underachieving in school.

8

4.   Including but not limited to Dr. Hoblet, identify the name and address of each physician, psychiatrist, psychologist, therapist, counselor, health care professional, or social worker who examined or treated you for any disability listed in response, or social worker who examined or treated you for any disability listed in response to Interrogatory 3; the purpose for which you sought treatment from each; the date of such examination or treatment; the diagnosis and/or treatment you received with respect to each such treatment or examination; identify all documents concerning your treatment; and provide Defendant with a signed medical authorization allowing Defendant to obtain copies of your records from these providers.

RESPONSE:

a. Dr. Gayle F. Wurzlow, M.D., Ochsner Clinic, 1514 Jefferson Highway, New Orleans, LA 70121 (504) 842-4025

b. Dr. Grant Butterbaugh, Ph.D., Associate Clinical Professor of Psychiatry, LSU Health Sciences Center, 1542 Tulane Avenue, New Orleans, LA 70112-2822 (504) 568-6001.

c.  Dr. Vicki Alberts, Valu Options, Phoenix, AZ

9

5.   Other than as identified in response to the previous Interrogatory, identify the name and address of each physician, psychiatrist, psychologist, therapist, counselor, health care professional, or social worker who examined or treated you for any mental, emotional or psychological ailment or condition at any time in your life, the dates and purpose of each such treatment and examination, and the diagnosis and/or treatment you received with respect to each such treatment or examination, and provide Defendant with a signed medical authorization allowing Defendant to obtain copies of your records from these providers.

RESPONSE:  None.

10

6.  Concerning the first claim for relief in the First Amended Complaint, identify each and every act that you contend constitutes a violation of the Americans with Disabilities Act, a detailed description of the alleged act, who made or took each such act, the date of such act, the duration of each such act, and identify others who were present.

RESPONSE:

Dr. Wurzlow – Dr. Wurzlow is a duly certified recognized professional on ADD and gave an opinion on Dr. Krolik's disability with recommendations for reasonable accommodation. Dr. Wurzlow is a certified professional with diagnosis of the condition and the documentation was not considered and not accepted by USMLE for Krolik's reasonable accommodation request. This was the first point when Dr. Krolik's rights under the ADA were violated.

Dr. Hoblet – Dr. Hoblet's findings could not rule out ADD as a disability but ADD is less probable. However, individuals with ADD can be the last to know. Dr. Hoblet's findings were not considered and not accepted by USMLE for Krolik's reasonable accommodation request.

Dr. Butterbaugh – Dr. Butterbaugh's examination of Dr. Krolik found a reading disability and disorder, poor phonics, poor spelling, and an individual who learned through listening comprehension rather than through reading, or an individual who had good phonics but did not understand what he read. Butterbaugh's findings of Dr. Krolik also found an individual with ADD who had problems staying on task over a long period and who had problems with sustained attention. Dr. Krolik did

11

not have a problem with short term or immediate attention. Dr. Krolik's disability affected a substantial life activity. Dr. Butterbaugh put forth Krolik's self report, childhood symptoms of ADHD, current symptoms of ADHD, family members' reporting, and Krolik's substantial limitations that are disabling. These findings were not considered and not accepted by USMLE for Krolik's reasonable accommodation request and USMLE failed to state why they rejected Dr. Krolik's wife's assessment of his disability.

Dr. Butterbaugh's second report with T-scores on Dr. Krolik was disregarded by USMLE. Dr. Butterbaugh demonstrated that Dr. Krolik's major life activity of work and learning is substantially limited. Dr. Krolik' testing, study habits, not finishing exams, and not sitting and reading substantially limits his major life activity of work and learning. Dr. Krolik did pass college courses but was an underachiever. USMLE did not refute the Krolik test scores done by Dr. Butterbaugh. The USMLE step testing tests attention, comprehension, professional knowledge, professional reasoning, vocabulary, reading, and writing.

12

7.    If your response to any of the foregoing Requests for Admissions is anything other than an unqualified "admit", state all facts upon which you base your response, and identify all documents that refer or relate to or evidence any such facts.

RESPONSE:    During Dr. Krolik's medical school tenure, he was given more time to complete some of his medical exams. In the taking of the exams, Dr. Krolike noticed that while most students were able to complete the exams in ½ to ¾ of the allotted time, Dr. Krolik usually needed the entire time to complete his exams.

PAGE 15/88 * RCVD AT 11/23/2005 8:03:49 PM [US Mountain Standard Time] * SVR:/3 * DNIS:6052 * CSID: * DURATION (mm-ss):30-02

## REQUEST FOR PRODUCTION

1.  All documents reviewed or referenced by you in responding to the
    Interrogatories above.

**RESPONSE:** Enclosed.

2.  All documents requested, identified or described in the above Interrogatories
    and in your responses to the Interrogatories.

**RESPONSE:** Enclosed.

3.  All documents reflecting any communication between you or your counsel and
    Grant Butterbaugh.

**RESPONSE:** None.

4.  All documents reflecting any communication between you or your counsel and
    Jack Sona during the period January 1, 2000, to the present.

**RESPONSE:** None.

5.  All documents to or from any actual or potential employer concerning your
    employment or your qualifications for employment.

**RESPONSE:** None.

6.  Any and all resumes, curriculum vitae, or job application materials that you
    have prepared and/or submitted to anyone for nay reason from January 1, 2000
    to the present.

**RESPONSE:** None.

14

7. Your complete tax returns as filed with Internal Revenue Service, including all schedules and attachments, for the 2002, 2003, 2004, tax years and subsequent tax years through trial.

RESPONSE: Enclosed – 20 02, 2003, 2004.

8. All documents in your possession or control or that of your counsel prepared by any physician, psychiatrist, psychologist, therapist, counselor, health care professional, social worker, or other medical provider, including but not limited to Dr. Hoblet, who examined or treated you for any mental, emotional or psychological ailment or disability at any time for any reason at any time in your lifetime.

RESPONSE: Enclosed.

9. All documents that you have provide to or received from the Equal Employment Opportunity Commission and any other governmental agency concerning any alleged disability and your attempts to receive accommodation on the USMLE, including, without limitation, the Department of Economic Security and/or the Department of Labor.

RESPONSE: None.

10. Any and all transcripts or other documents that reflect any of your secondary or post-secondary education including high school, junior college, college, university, graduate school, professional school or medical school.

RESPONSE: Enclosed.

15

11. Any documents evidencing or reflecting your score or results of any

standardized examination you have ever taken in your life.

RESPONSE:  None.

12. Your applications for admittance to any medical school.

RESPONSE:  We do not have any medical school applications.  In the 1960s Dr.

Krolik received two rejections to his application for admittance to University of

New Mexico Medical School.

13. Any documents evidencing or reflecting any aspect of your military service.

RESPONSE:  None.

14. Any documents reflecting or evidencing or comprising any performance or job

evaluations you have received from any employer since your college graduation.

RESPONSE:  None.

15. Any and all documents that relate to any claim or defense in this litigation.

RESPONSE:  Enclosed.

16. Any and all documents in your possession or that of your counsel that refer to

relate to your contention that you suffer from a disability that entitles you to

accommodations under the Americans with Disabilities Act.

RESPONSE:  Enclosed.

17. All documents that you intend to or may introduce into evidence in this action.

RESPONSE:  Enclosed.

18. All statements that you or anyone acting on your behalf has taken or given

relating to the matters alleged in your First Amended Complaint.

RESPONSE:  None.

16

DATED this ___23___ day of November, 2005.

Respectfully submitted,

DOMENICI LAW FIRM, P.C.

PETE V. DOMENICI, JR., Esq.
Attorney for Plaintiff
320 Gold Avenue SW, Suite 1000
Albuquerque, New Mexico 87102
(505) 883-6250 office
(505) 884-3424 fax.

I hereby certify that a true and correct
Copy of the foregoing was mailed this
___23___ day of November, 2005 to:

Diane M. Johnsen, Esq.
Attorneys for National Board of Medical Examiners
OSBORN MALEDON, P.A.
2929 North Central, Suite 2100
Phoenix, Arizona 85012-2794

PETE V. DOMENICI, JR., Esq.

17

# EXHIBIT C

1   Diane M. Johnsen, 007634 / djohnsen@omlaw.com
    John L. Blanchard, 018995 / jblanchard@omlaw.com
2   Ronda R. Fisk, 022100 / rfisk@omlaw.com
    OSBORN MALEDON, P.A.
3   2929 North Central Avenue, Suite 2100
    Phoenix, Arizona  85012-2794
4   (602) 640-9000

5   Attorneys for National Board of Medical Examiners

6

7                    IN THE UNITED STATES DISTRICT COURT

8                       FOR THE DISTRICT OF ARIZONA

9   Ralph E. Krolik, M.D.,                )   No. CV05-0315 PHX FJM
                                          )
10                          Plaintiff,    )   DECLARATION OF SAMUEL J.
                                          )   KEITH, M.D.
11  vs.                                   )
                                          )
12  National Board of Medical Examiners,  )
                                          )
13                          Defendant.    )
    _____)

14

15  STATE OF NEW MEXICO        )
                               )
16  County of Bernalillo       )

17          I, Samuel J. Keith, hereby depose and state:

18          1.      I am the Chairman of the University of New Mexico ("UNM")

19  Department of Psychiatry.  I make this declaration based on my personal knowledge.

20          2.      The UNM School of Medicine Department of Psychiatry participates in

21  a national residency matching program for selecting students for its residency

22  positions.  Residents are selected largely through this program.

23          3.      Dr. Krolik does not currently have a residency position with the UNM

24  School of Medicine Department of Psychiatry and has not been promised a residency

25  position in the future.

26

1    I declare under penalty of perjury under the laws of the United States that the

2    foregoing is true and correct.

3    Executed this _19_ day of _October_, 2005.

4

5

6    Samuel J. Keith, M.D.

7    Kathleen S. Bell-Peña

8    Notary Public          My comission expires 11/29/2005

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2