Pete V. Domenici, Jr., Esq.
Domenici Law Firm, P.C.
320 Gold Avenue SW, Suite 1000
Albuquerque, New Mexico 87102
(505) 883-6250
Attorney for Plaintiff Krolik, M.D.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| RALPH E. KROLIK, M.D., | ) | CASE NO. CV-05-0315 PHX FJM |
| | ) | |
| Plaintiff, | ) | |
| Vs. | ) | **PLAINTIFF'S NOTICE OF FILING** |
| | ) | **EXHIBITS TO HEARING BRIEF IN** |
| | ) | **SUPPORT OF MOTION FOR** |
| | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| NATIONAL BOARD OF MEDICAL | ) | |
| EXAMINERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMES NOW** the Plaintiff, Ralph E. Krolik, M.D., by and through his counsel of record, Domenici Law Firm, P.C. (Pete V. Domenici, Jr., Esq.) and for his Notice of Filing Exhibits to Hearing Brief in Support of Motion for Preliminary Injunction states as follows:

### INDEX OF EXHIBITS TO PLAINTIFF'S HEARING BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1. Defendant's Supplemental Response to Plaintiff's First Set of Interrogatories

2. Oral Deposition testimony of Michael Gordon, Ph.D., November 15, 2005 –
    a. Page 20, Lines 23 – 2 4
    b. Page 21, Lines 1 – 24
    c. Page 22, Lines 1 - 13
    d. Page 74, Lines 23 – 2 3
    e. Page 75, Lines 1 – 6

    **f.**  Page 165, Lines 22 – 24
    g.  Page 166, Lines 1 – 2 0

        Respectfully submitted,

        DOMENICI LAW FIRM, P.C.

        <u>S/ Pete V. Domenici, Jr., Esq.</u>
        PETE V. DOMENICI, JR., Esq.
        320 Gold Avenue SW, Suite 1000
        Albuquerque, New Mexico 87102
        (505) 883-6250

I hereby certify that a true and correct
Copy of the foregoing was mailed/faxed/emailed
To Opposing counsel this __10th__ day
Of January, 2006.

<u>S/ Pete V. Domenici, Jr., Esq.</u>
PETE V. DOMENICI, JR., Esq.

Diane M. Johnsen, 007634 / djohnsen@omlaw.com
John L. Blanchard, 018995 / jblanchard@omlaw.com
Ronda R. Fisk, 022100 / rfisk@omlaw.com
OSBORN MALEDON, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona 85012-2794
(602) 640-9000

Attorneys for National Board of Medical Examiners

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph E. Krolik, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> National Board of Medical Examiners, <br><br> Defendant. | No. CV05-0315 PHX FJM <br><br> **DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

Defendant National Board of Medical Examiners ("NBME") hereby supplements its responses to Plaintiff's First Set of Interrogatories as follows:

**INTERROGATORY NO. 7:** For the years 1999 to the present, please identify the yearly number of applicants who have applied to take the USMLE; the number of applicants who have applied to take the USMLE with reasonable accommodations related to ADHD and ADD, the number of applicants who are authorized by USMLE to take the USMLE exam with reasonable accommodations related to ADHD and ADD; please identify the types of reasonable accommodations for ADHD and ADD authorized; and please identify USMLE' rational [sic] for authorizing or denying the accommodation.

**SUPPLEMENTAL RESPONSE:**

Without waiving its previously stated objections, NBME supplements its prior response to this interrogatory by stating that since 1999, approximately 900 persons have applied for test accommodations on USMLE based on Attention Deficit/ Hyperactivity Disorder ("ADHD"). This number includes persons whose applications for accommodations asserted that they suffered from either ADHD or Attention Deficit Disorder. Accommodations were granted to approximately 50 percent of those who applied on these grounds. Accommodations were denied to about 34 percent of such applicants. No decision was or has been made in the remainder of the cases (i.e., the application was withdrawn or the NBME is awaiting additional information).

DATED this 6th day of January, 2006.

OSBORN MALEDON, P.A.

By _____
Diane M. Johnsen
John L. Blanchard
Ronda R. Fisk
2929 North Central Ave., Suite 2100
Phoenix, Arizona 85012-2794
Attorneys for National Board of Medical Examiners

ORIGINAL and one copy of the foregoing mailed this 6th day of Janaury, 2006 to:

Pete V. Domenici, Jr.
Domenici Law Firm, PC
320 Gold Avenue, SW, Suite 1000
Albuquerque, New Mexico 87102
Attorneys for Plaintiff Krolik, M.D.

_____

Michael Gordon, Ph.D.
November 15, 2005

```
 1   ADHD patients we're delighted if we get them past
 2   high school and employed.
 3       Q.        How many accommodation requests for
 4   ADHD have you reviewed on behalf of various
 5   organizations?
 6                 MS. JOHNSEN:  You mean all the
 7       organizations?
 8                 MR. DOMENICI:  All of them.
 9                 THE WITNESS:  I'll have to
10       give you an approximate number.
11                 MR. DOMENICI:  An
12       approximation will be fine.
13                 THE WITNESS:  I've been doing
14       this for about ten years, roughly ten
15       years.
16                 MR. DOMENICI:  Okay.
17                 THE WITNESS:  And I'd say six,
18       700, I would think.
19   BY MR. DOMENICI:
20       Q.        And out of that approximately how
21   many have been for the National Board of Medical
22   Examiners?
23       A.        Again, very approximately.  It must
24   be around two to 300.
```

| | | |
|---|---|---|
| 1 | Q. | In that roughly ten-year time period? |
| 2 | A. | Correct. |
| 3 | Q. | And out of that two to 300, how many have you recommended some type of accommodation for? |
| 6 | A. | Again, not having an exact number by any means for this, I would imagine it would be roughly in the ten to 15 percent area. It's low because by definition people have made it to the point of being able to take a step exam, have done much better than most people just to get to that point, so just statistically it's going to be a low figure. But I would imagine it would be ten percent plus or minus. |
| 15 | | The reason that ten to 15 percent is higher than the five percent from studies is I tend to be, and I think those of us who do this, tend to bend over backwards to try to give accommodations if we can and don't hold with, I think, undue strictness to the criteria. |
| 21 | Q. | In looking through this stack of documents here there's a number of either declarations or affidavits that represent or appear to represent your statement in court |

Michael Gordon, Ph.D.
November 15, 2005

```
 1   proceedings.  And there appears to be at least to
 2   some extent sort of a format you use, a standard
 3   format.
 4        A.        That's correct.
 5        Q.        Is there a similar standard format
 6   for the ten percent plus or minus that you have
 7   given accommodations or recommended
 8   accommodations?
 9        A.        I use the same analysis for all
10   cases, if that's what you're asking.  So the ten
11   percent that I recommend accommodations for are
12   those who in that analysis seem reasonably close
13   to be able to recommend accommodations.
14        Q.        Could you off the top of your head
15   identify a letter?  And I don't need the name of
16   the person, but I'd like to know the
17   circumstances, if you can recall one, where you
18   recommended accommodations.
19        A.        Are you asking me if I can remember
20   somebody --
21        Q.        Yeah.  You're saying you used the
22   same format whether you recommend or don't
23   recommend.
24        A.        Oh, yeah, it's the same.
```

Michael Gordon, Ph.D.
November 15, 2005

1  check in it is a 9 when they reprinted these for
2  your legal purposes.
3     Q.     Okay.
4     A.     What they would have seen is a check
5  box on either side with a check in it.
6     Q.     And you would have checked the box
7  that says diagnosis is not supported?
8     A.     Not supported.
9     Q.     And accommodation is not supported?
10    A.     That's correct.
11    Q.     After two hours of review?
12    A.     Yeah.
13    Q.     Can you recall circumstances where
14 you have checked the diagnosis is supported by
15 documentation but the accommodation is not
16 supported?
17    A.     I seem to remember a case where it
18 seemed that ADHD was -- no, I can't.  I was
19 thinking that there might have been one where
20 there was an accommodation that wasn't all
21 relative to the test, but I can't remember the
22 circumstances.
23    Q.     To the best of your recollection, in
24 the circumstances where you've indicated the

```
 1   diagnosis is supported --
 2      A.        Is supported?
 3      Q.        Is.  You've also indicated that the
 4   accommodation is supported?
 5      A.        I would say in almost every case
 6   that -- any case I can think of.
 7      Q.        Now, turning to Appendix C.  And then
 8   attached to that is the June 4th, 1999 letter.
 9      A.        Okay.
10      Q.        Either from reviewing this or from
11   your recollection, is this when you had an
12   opportunity to review the grade reports, Exhibit
13   4, for the first time?
14      A.        Yes.
15      Q.        Okay.
16      A.        Yes, following new information.
17      Q.        And then in the bottom paragraph
18   there it's starts with "The grade reports
19   Dr. Wurzlow submitted."
20                Is this your analysis, paraphrasing
21   your analysis of these reports, Exhibit 4?
22      A.        Yes.
23      Q.        To your recollection is there
24   anywhere else where you've in writing analyzed
```

1       about your actual clients.

2              THE WITNESS:  Yeah, I don't

3       have that many personally.

4  BY MR. DOMENICI:

5    Q.        But you haven't turned anyone down

6  who has asked you to help them with an

7  accommodation request?

8    A.        No.  I'm just not asked enough to

9  give you enough to -- you know, to make it enough

10  of a sample to speak to.  The only times I've done

11  it -- no, the only times I've done it are people

12  who I have reason to believe should apply because

13  they, in my opinion, have ADHD.

14    Q.        Have you been the one recommending

15  that or have they asked you?

16    A.        I've been asked.  The people would

17  know I would advocate for that.  I mean part of

18  the irony of all this is that I, you know, am very

19  much active in support groups for people with

20  this.  And I make it clear that if you have a

21  diagnosis you should get the accommodations.

22    Q.        I think I asked you this.  Let me ask

23  it a different way.

24              Have you been asked to review

```
 1   accommodation requests by the NBME within the last
 2   six months?
 3       A.      Yes.
 4       Q.      For ADHD?
 5       A.      Yes.
 6       Q.      And do you have any idea as to how
 7   many reviews NBME asks of persons other than you
 8   for ADHD?
 9       A.      I have no idea.  For ADHD?
10       Q.      Yes.  Would you expect that the NBME
11   would have statistics available on the
12   accommodation requests and accommodation
13   responses, denials or granted?
14                   MS. JOHNSEN:  Object to the
15           form.
16                   THE WITNESS:  It's
17           hypothetical, but they must tally.  I
18           would assume that they tally the number of
19           requests they get and the disposition of
20           those requests.
21   BY MR. DOMENICI:
22       Q.      Looking on the next page after the
23   summary page it says in the records reviewed by
24   Dr. Butterbaugh.  The second bullet there mentions
```