

Diane M. Johnsen, 007634 / djohnsen@omlaw.com
Ronda R. Fisk, 022100 / rfisk@omlaw.com
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000

Attorneys for National Board of Medical Examiners

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph E. Krolik, M.D.,<br><br>                    Plaintiff,<br><br>vs.<br><br>National Board of Medical Examiners,<br><br>                    Defendant. | No. CV05-0315 PHX FJM<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |

Dr. Ralph Krolik ("Plaintiff" or "Dr. Krolik"), a man with a lengthy record of substantial academic and professional success, seeks disability accommodations to which he is not entitled under the Americans With Disabilities Act ("ADA"). Plaintiff seeks damages and an order requiring the National Board of Medical Examiners (the "NBME") to lower its standards for his benefit in the administration of the United States Medical Licensing Examination ("USMLE"), making it more likely that he will pass the USMLE and be eligible for a position as a medical resident. The NBME moves for summary judgment on the ground that as a matter of law, Plaintiff is not entitled to relief under the ADA because he does not suffer from a disability that substantially limits him in a major life activity as compared to most people. Alternatively, the NBME seeks an order that Plaintiff may not recover damages under the ADA.

This motion is supported by the attached Memorandum of Points and Authorities, the separate Statement of Undisputed Facts Pursuant to Local Rule 56.1(a), the file in this matter, and such argument as the Court permits.

DATED this 25th day of April, 2006.

OSBORN MALEDON, P.A.

s/ Ronda R. Fisk
Diane M. Johnsen
Ronda R. Fisk
Attorneys for
National Board of Medical Examiners

## MEMORANDUM OF POINTS AND AUTHORITIES

As a matter of law, Plaintiff's contention that he has a cognizable disability under the ADA is simply implausible. To be eligible for accommodations under the ADA, Plaintiff must prove that he has an impairment that substantially limits him in a major life activity – which he claims is his ability to work – in comparison to the *average* person. As the Court noted in denying Plaintiff's motion for a preliminary injunction, "there is no evidence that the plaintiff has been limited in the major life activities of working and learning." Dkt. 71 at 2. Indeed, Plaintiff's success as a student and his careers as a pharmacist and the founder and owner of a multi-million dollar business refute any such contention. For these reasons and for those set forth in more detail below, judgment should be entered in favor of the NBME pursuant to Fed. R. Civ. P. 56.

### I.   FACTUAL BACKGROUND

The USMLE is used throughout the United States to test the minimum competency of individuals who wish to become physicians. Defendant's Separate Statement of Facts Pursuant to Local Rule 56.1(a) ("**SOF**") ¶ 32. The USMLE is composed of three components, called "Steps." SOF ¶ 33. Defendant NBME

administers the USMLE through Thomson Prometric, its vendor. *Id.* ¶ 34. Relying on the integrity and validity of the USMLE test, state medical boards have chosen to accept passage of the test as demonstrating minimum competency, *Id.* ¶ 35. All 50 states require the successful completion of the USMLE as a prerequisite to obtaining a medical license. *Id.* As a screening device, the USMLE tests the minimum knowledge required to be a physician. *Id.* ¶ 36. Thus, the integrity of the USMLE is essential to the protection of the public. The NBME is responsible for ensuring that the USMLE impartially tests the qualifications of aspiring physicians. *Id.* ¶ 37.

In 1996, nearly 30 years after receiving a bachelor's of science degree in pharmacy, Plaintiff graduated from the American University of the Caribbean Medical School. *Id.* ¶¶ 5-7, 24. Like many medical students, he first took Step 1 of the USMLE in 1995, while still in medical school. *Id.* ¶ 38. Between September 1995 and August 12, 1998, Plaintiff attempted and failed Step 1 five times and Step 2 (CK) three times. *Id*. It was only then, Plaintiff alleges, that he was first diagnosed with ADHD. *Id.* ¶ 39. In late 1998, Plaintiff for the first time requested testing accommodations in connection with the USMLE under the ADA. *Id.* ¶ 40. He submitted other requests for accommodations in 1999, 2001, and 2003. *Id.* ¶ 41. The NBME and its experts searched Plaintiff's submissions for evidence demonstrating that he is indeed impaired by ADHD or a Learning Disability, and, if so, whether his impairment substantially limits him in a major life activity. *See* Declaration of Joseph Abram Doane ("**Doane Decl**."), Exhibit 9 to SOF ¶¶ 18, 22, 26-28. Because Plaintiff's documentation failed to show that he suffers from ADHD or a Learning Disability and failed to demonstrate any substantial limitation of a major life activity, each of his requests was properly denied. *Id.* ¶¶ 18-29. Plaintiff has taken and failed Steps 1 and 2 (CK) of the USMLE 13 times since 1995. *Id.* ¶ 15.

At issue in Plaintiff's Complaint is his most recent application for accommodations, dated November 3, 2003. In response to NBME's invitation to supplement his application with expert analyses, Plaintiff supplied two psychological

reports and various elementary school records. *See* Doane Decl. ¶ 24. Because Plaintiff asserted he suffered both from ADHD and a Learning Disability that impaired his ability to read, the NBME followed its standard practices and procedures, and had his material reviewed by experts in those two fields, Drs. Michael Gordon and Joseph E. Bernier, respectively. *See Id.* ¶ 26; *see also* SOF ¶¶ 42, 45.

Dr. Gordon, a recognized ADHD expert, SOF ¶ 44, concluded that Plaintiff's documentation failed to show that he suffered from ADHD or that he was substantially limited in a major life activity, as required by the ADA. Doane Decl. ¶ 27. Dr. Bernier, a learning disability expert, also reviewed Plaintiff's submissions and found compelling evidence that Plaintiff did not suffer from the Learning Disability that he had alleged. SOF ¶ 42.

Based on these recommendations and based on its well-established procedures, the NBME denied Plaintiff's request for accommodations on February 2, 2004. Doane Decl. ¶ 29. Nearly one year later, on January 25, 2005, Plaintiff filed his Complaint in this case and, six months later, sought mandatory preliminary injunctive relief, which this Court denied. Dkt. 71. On August 15, 2005, Plaintiff filed a First Amended Complaint ("Complaint"), alleging discrimination under Titles II and III of the ADA (Count I) and the Rehabilitation Act (Count III). Dkt. 34.[1] After the parties

---

[1] Plaintiff's claim against the NBME arises, if at all, under Title III of the ADA. The ADA, codified at Title 42, Chapter 126 of the United States Code, is divided into subsections, including Employment ("Title I"), Public Services ("Title II") and Public Accommodations and Services Operated by Private Entities ("Title III"). Although the Complaint cites both to Title II and Title III, the former applies only to public entities, defined as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government," or National Railroad Passenger Corporation, and any commuter authority." 42 USC § 12131. Because the NBME is a private nonprofit corporation — not a public entity — Title II does not apply. The only applicable ADA provision is Title III, specifically section 309, codified at 42 U.S.C. § 12189: "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." *See Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 155 (3d Cir. 1999). The Department of Justice ("DOJ") interpretive guidelines written for Title III, found at 28 C.F.R. Part 36, applies to claims involving testing by a private agency. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 626, 630-631(6th Cir.

stipulated to dismissal of the Rehabilitation Act Claim, the ADA claim is all that remains of the Complaint.  Dkt. 51 & 52.

## II.   ARGUMENT

The NBME moves for summary judgment on the single count remaining in the Complaint pursuant to Fed. R. Civ. P. 56 and, in the alternative, for an order dismissing Plaintiff's claim for monetary damages under the ADA.  Summary judgment should be entered against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); s*ee also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor.").  Although, most disability cases are rife with issues of fact created by opposing expert witnesses, this case is different:  Summary judgment is appropriate here because Plaintiff's *own testimony* disproves his claim.

**A.   Plaintiff Is Not Entitled to Relief Because He Is Not Disabled Under the ADA.**

An individual has a disability under the ADA if, *inter alia*, he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. §  12102(2)(A).  A plaintiff bears the burden of proving that he is disabled within the meaning of the ADA.  *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir.  2005) ("*Wong II*").[2]  Recognizing the individualized nature of disability, the Ninth Circuit applies a three-part inquiry to

---

2000) (applying DOJ guidelines to Title III claim against NBME); *see also* 90 CIS P.L. 101336; 101 CIS Legis. Hist. P.L. 336.

[2]   Plaintiff erroneously contends that his request for accommodations should be granted because (1) the ADA purportedly recognizes ADHD as a "disability," and (2) a medical professional has diagnosed him as having ADHD.  A diagnosis that one has an impairment is not sufficient to prevail under the ADA; each claim for disability must be evaluated on its individual facts.  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

decide whether a plaintiff is entitled to an accommodation under the ADA: (1) whether the plaintiff's condition constitutes a mental or physical *impairment*; (2) whether the life activities as to which the plaintiff alleges he is limited are *major life activities*; and (3) whether the impairment *substantially limits* the major life activities identified. *Wong II*, 410 F.3d at 1063. The Supreme Court has held that the terms "major life activities" and "substantially limits" "need to be interpreted *strictly* to create a *demanding standard* for qualifying as disabled." *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 197 (2002) (emphasis added). Thus, to avoid summary judgment, Plaintiff must present evidence that a genuine issue of material fact exists as to whether he is substantially limited in one or major life activities as compared to the average person in the general population. *Wong II*, 410 F.3d at 1063. As a matter of law, Plaintiff has failed to meet his burden of proof.

### 1. Plaintiff Has Failed to Prove That He Suffers From a Mental or Physical Impairment.

Although the Complaint does not identify the exact nature of the alleged impairment that forms the basis for Plaintiff's claim, in his motion for a preliminary injunction, Plaintiff asserted that he has been diagnosed with ADHD and a reading disorder that constitutes a Learning Disability. Dkt. 24 at 7. As explained in NBME's opposition to the motion for a preliminary injunction, Dkt. 28, Plaintiff's documentation fails to support his assertion that he suffers from ADHD or has a learning disability. However, recognizing that courts "are better able to determine whether a disability limits an individual's ability in comparison to most people," *Price v. Nat'l Bd. of Med. Exm'rs*, 996 F. Supp. 419, 427 (S.D. W. Va. 1997), the Court should dismiss the Complaint because, even assuming that Plaintiff suffers from ADHD, he is not substantially limited in a major life activity, as required to prevail on a claim under the ADA.

1222058v2

### 2. Plaintiff Cannot Prove That His Alleged Impairment Limits a "Major Life Activity."

Plaintiff is not disabled for purposes of the ADA because he cannot show that his alleged impairment limits a "major life activity." The Supreme Court has held that "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota*, 534 U.S. at 195 (emphasis added).

Plaintiff alleges that his so-called impairment limits him in the major life activity of "working." Dkt. 34 ¶ 18.[3] By his own sworn statements, however, he has had a long, successful work history. While Plaintiff's Complaint characterizes the affected major life activity as "working," in reality he claims that he has an impairment that has limited his ability to take a particular standardized test – the USMLE. Plaintiff errs by equating the act of *test-taking* with the fundamentally different act of *working*. Neither the Supreme Court, the Ninth Circuit, nor the DOJ has ever recognized the inability to pass a particular timed test as a "major life activity." Additionally, since the Court recently denied Plaintiff's belated motion to amend the Complaint to add "learning" and "reading" as major life activities affected by his alleged impairment, Dkt. 71 at 2, neither of those issues is properly before the Court.[4]

---

[3] The Supreme Court has called into question whether "working" is a "major life activity." *See Toyota Motor Mfg. Inc. v. Williams*, 534 U.S. 184, 200 (2002). As the Court explained in *Sutton v. United Air Lines*, there is a "conceptual difficulty in defining 'major life activities' to include work, for it seems 'to argue in a circle to say that if one is excluded, for instance, by reason of an impairment from working with others then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap.'" 527 U.S. 471, 492 (1999) (citations and punctuation omitted). This case exemplifies the circular reasoning that the Court sought to avoid in *Sutton.* The Ninth Circuit has assumed without deciding that working is a major life activity, but no Ninth Circuit decision has addressed whether "working" is a major life activity following the *Toyota* and *Sutton* decisions. *See Wong II*, 410 F.3d at 1063 n.5; *c.f. E.E.O.C. v. United Parcel Service, Inc.*, 424 F.3d 1060, 1072 (9th Cir. 2005) (decided on grounds of California state law which recognizes "working" as a major life activity (Cal. Gov. Code § 12926(k)(1)(B)(iii)).

[4] As noted in *Wong II*, the issue on summary judgment is whether the plaintiff "presented sufficient evidence to demonstrate that he was substantially limited in the *specified* major life activities." 410 F.3d at 1065 (emphasis added). Plaintiff's failure to specify the major life activities of reading and learning earlier means that they are

### 3. Plaintiff Cannot Prove He Is Substantially Limited In a Major Life Activity.

Even if the Plaintiff suffers from an impairment that limits a major life activity, he still cannot establish a disability under the ADA because his alleged impairment does not *substantially limit* a major life activity. "Substantial limitation" is assessed by comparison to most people, not to a select group. *See Wong II,* 410 F.3d at 1064-65 (applying the demanding standards set forth in *Toyota*, 534 U.S. at 197); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 630-32 (6th Cir. 2000) (ADA compares plaintiff's performance in major life activity to that "of most people"); *see also* 28 C.F.R. pt. 36, app. B. Thus, the relevant question is *not* whether Dr. Krolik's alleged impairment makes it impossible for him to become eligible to work as a medical doctor; it is "whether his impairment substantially limited his ability to [perform a major life activity] *as a whole, for purposes of daily living, as compared to most people*." *Wong II,* 410 F.3d at 1065 (emphasis added).

When – as here – the facts offered on summary judgment make "implausible" a plaintiff's contention that he is disabled in a particular major life activity "as compared to most people," then he is required to "come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." *Wong II*, 410 F.3d at 1066 (quoting *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)). Plaintiff's claim must be dismissed because he has not presented sufficient evidence in support of his contention to establish a triable issue of fact.

### a. Plaintiff Has Failed to Present Persuasive Evidence That His Alleged Impairment Substantially Limits the Major Life Activity of Working.

If the Court chooses to recognize working as a "major life activity," Plaintiff has failed to present evidence that his alleged impairment has substantially limited his ability to work *as compared to most people*. The fact that Plaintiff would like

---

not properly before the Court. Nonetheless, if they were, the outcome would be the same: Plaintiff is not entitled to accommodations under the ADA and his Complaint should be dismissed.

employment in the medical field is irrelevant. The question is whether his alleged impairment generally limits his ability to work, not whether it limits his ability to work as a physician. That is, even if "working" were a major life activity for purposes of the ADA, the fact that Krolik's alleged impairment may preclude him from potential employment in the medical field does not constitute a limitation of a "major life activity" under the ADA. *See, e.g., McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F.3d 974, 979 (10th Cir. 1998) ("For the purposes of the ADA, inability to pursue one career, such as medicine, does not constitute a severe impact on an individual's life."). Plaintiff must prove that his alleged impairment limits his performance in wide variety of disciplines. *Id.*

Plaintiff's contention that he suffers from an impairment that has limited his ability to "work" is simply implausible given his history of professional success. Plaintiff has worked (or gone to school) almost continuously since he graduated from high school in August 1962. In Fall 1962, Plaintiff enlisted in the United States Army and served until 1965, when he was honorably discharged after being diagnosed with spina bifida. SOF ¶ 3. He then went to the University of New Mexico, where he completed a five-year program for a bachelor of science in pharmacy in only four years. *Id.* ¶ 5. Following graduation, he had various pharmacy internships and in 1970 passed the exam to become a licensed pharmacist in Arizona. *Id.* ¶¶ 8, 9.

Although Plaintiff had no formal education in running a business, not long after college he decided to go into business for himself. He bought his first company in 1970, a "full-service pharmacy" and "variety store" with five or six employees. *Id.* ¶ 12. Plaintiff sold that business and went on to found a highly successful company, REK Industries, which manufactured and distributed cleaning products. *Id.* ¶¶ 13, 14. Plaintiff built REK Industries from the ground up, learning from the "school of hard knocks" how to manage the various aspects of the company, including developing the chemical formulae for the various products; selecting and purchasing supplies; supervising manufacturing; selecting packaging; hiring and managing employees;

1  maintaining the company's books and payroll; and preparing bids for government
2  contracts. *Id.* ¶ 15. Plaintiff even bought three planes and learned to fly them because
3  "they were useful" for making sales calls across New Mexico. *Id.* ¶¶ 19-21. At the
4  height of its success, REK Industries was a multi-million dollar company with over 30
5  employees and the capacity to manufacture more than 50 cleaning products. *Id.* ¶ 16.
6  Plaintiff earned "a good living" as president and sole owner of the company, with an
7  average annual income in the range of $200,000 - $300,000. *Id.* ¶ 17. Plaintiff
8  eventually sold the business and went to medical school at the American University of
9  the Caribbean. *Id.* ¶¶ 18, 22.

10  After graduating from medical school in Fall 1996, Plaintiff chose to continue
11  working as a pharmacist to support his family while his wife completed her first year
12  of residency. *Id.* ¶ 25.  Since that time, he has been gainfully employed as a
13  pharmacist, with various full-time and temporary positions. *Id.* ¶ 26. Plaintiff
14  considers himself a "competent pharmacist," *Id.* ¶ 27, and believes that those he has
15  worked for would say he is "an excellent pharmacist." *Id.* ¶ 28. He cannot name an
16  instance where he lost a job due to his alleged impairment. *Id.* ¶ 29. And although he
17  currently works for a temporary agency, he acknowledges that he could have a full-
18  time position if he wanted one. *Id.* ¶ 30. In short, Plaintiff's alleged impairment has
19  not substantially limited his ability to work as compared to most people.

20  At most, Plaintiff's evidence shows only that he has had difficulty taking and
21  passing the USMLE, which, if he were to pass, at most would make him *eligible* to
22  apply for a position as a medical resident (not actually guarantee his future
23  employment). Doane Decl. ¶ 5. By his claim in this matter, Plaintiff seeks to exploit
24  the ADA to lower the standards for entering the medical profession. But the ADA is
25  not designed "to allow individuals to advance to professional positions through a back
26  door." *Price*, 966 F. Supp. at 421-22. Indeed, in *Powell v. National Board of*
27  *Medical Examiners*, the Second Circuit upheld the procedures used by the NBME in
28

1222058v2

1  determining whether an individual is disabled under the ADA, noting that those
2  procedures

> are designed to ensure that individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination. As administrator of the national exam used by a number of states for licensing medical doctors, the National Board has a duty to ensure that its examination is fairly administered to all those taking it…. Were the National Board to depart from its procedure, it would be altering the substance of the product because the resulting scores would not be guaranteed to reflect each examinee's abilities accurately.

364 F.3d 79, 88-89 (2d Cir. 2004).  As this Court previously found, "The public's interest is advanced when the defendant does its job to ensure that only those who are qualified will be licensed to practice medicine in the United States.  Malpractice and poor medical care is widespread thus suggesting that the present standards may be too low.  The public's interest would not be served by lowering the bar further."  Dkt. 71 at 3.

### b. Plaintiff Has Failed to Present Persuasive Evidence That His Alleged Impairment Substantially Limits the Major Life Activities of Learning and Reading.

If the Court chooses to consider Plaintiff's belated claim that he is limited in the major life activities of reading and learning, Plaintiff's evidence shows that he is not substantially limited in either activity *as compared to most people*.

Although Plaintiff may claim to have "learning" difficulties, individuals "who fail to learn or learn at a slower pace do not automatically qualify for protection under the ADA."  *Ristrom v. Asbestos Workers Local 35*, 370 F.3d 763, 770 (8th Cir. 2004).  Instead, the ADA protects only those who present plausible evidence that they have a "physical or mental impairment that substantially limits their ability to learn as compared to an average person in the general population."  *Id*.  A claim that one is impaired in learning as compared to most people can be "contradicted by [the plaintiff's] ability to achieve academic success, and to do so without special

accommodations." *Wong II*, 410 F.3d at 1065; *see also Gonzales*, 225 F.3d at 630 (rejecting plaintiff's claim of disability because of plaintiff's academic success, including average scores on the SAT and average grades).  Academic success is "directly inconsistent" with a claim that one is substantially limited in learning, especially where there have been no accommodations. *Wong II*, 410 F.3d at 1066.

Similarly, "the relationship between reading and academic success is sufficiently close to make [the] argument [that one is substantially limited in reading] a difficult one to maintain." *Id.* at 1067.  When a plaintiff claims that he is substantially limited in reading, he must present evidence "that he was substantially limited in his ability to read for *purposes of daily living*, or as compared to what is important in the daily life of most people." *Id.* at 1066 (emphasis added).  Thus, a substantial limitation on one's reading ability is not evaluated by what a particular test, class, or job might require, but rather whether one can "read newspapers, government forms, street signs, or the like." *Id.* at 1066-67.  An argument that one "read[s] slowly, especially when compared to his own reading comprehension ability without time limits, or to others in his academic peer group" does not establish a "substantial[] limitation" in reading. *Id.* at 1066.

Unlike an individual who is truly substantially limited in learning and reading, Plaintiff has had years of academic and professional success, without receiving any accommodations.  Indeed, after reviewing the documentation that Plaintiff submitted in support of his request for accommodations, Dr. Joseph E. Bernier, Ph.D., a noted learning disability expert, found that Plaintiff's documentation did not support a finding of a disability based on reading or other learning disability.  SOF ¶ 42.[5]  To the contrary, the evidence shows that Plaintiff is not substantially limited in either learning or reading:

---

[5] During his testimony on the injunction application, Plaintiff's sole expert witness, Dr. Butterbaugh, disclaimed any current contention that Plaintiff suffers from a reading/learning disability.  SOF ¶ 43.

- Plaintiff completed grade school and high school with average grades, without ever being held back. SOF ¶ 1. While in high school, he never received more time to complete his examinations than was allotted other students. *Id.* ¶ 2.

- Plaintiff took an all-day written entrance examination for admission to the University of New Mexico. SOF ¶ 4. While there, completed a five-year pharmacy program in four years, without failing a single class. *Id.* ¶ 5. The pharmacy program involved numerous timed examinations. *Id.* ¶ 6. Plaintiff graduated with a GPA of 2.34. *Id.* ¶ 7.

- On his first try, Plaintiff passed a two-day timed written examination to become a licensed pharmacist in the State of Arizona, without studying and without receiving more time than was allotted other applicants. *Id.* ¶¶ 9, 10. He obtained scores of 78% in Pharmacy, 83% in Chemistry, 72% in Pharmacognosy, 90% in Mathematics, and 82% in Jurisprudence. *Id.* ¶ 9.

- Plaintiff taught himself how to run every aspect of his own chemical company, engaging in complicated activities ranging from developing the chemical formulae for the various products, maintaining the company's books and payroll, and preparing bids for government contracts. *Id.* ¶ 15.

- To obtain his pilot's license, Plaintiff took classes at a ground school and passed a standardized written examination. *Id.* ¶ 20.

- Plaintiff graduated from the American University of the Caribbean having received passing and honors marks in every class. *Id.* ¶ 24. Each of his medical school classes had a final exam, some of which were timed. *Id.* ¶ 23. Although Plaintiff recalls four occasions when he took longer than the allotted time to complete an examination, he neither asked for nor received accommodations. *Id.* ¶ 23.

- Plaintiff's difficulties with a supposed disability began when he began taking the USMLE. *Id.* ¶ 40.

In short, Plaintiff simply has not presented sufficient evidence to establish a triable issue of fact as to whether he is substantially limited in the major life activities of learning or reading.

1222058v2

       **c.**    **Plaintiff Has Overcome Any Difficulties Allegedly Caused by His Impairments.**

Further undermining the his claim is that Plaintiff has been able to adapt and overcome any limitations caused by any impairment. The "ADA's coverage is restricted to only those whose impairments are not mitigated by corrective measures." *Sutton*, 527 U.S at 487. Thus, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures – both positive and negative – must be taken into account when judging whether that person is 'substantially limited' in a major life activity." *Id.* at 482. If Plaintiff does indeed have any impairments, their impact on his major life activities has been mitigated to the point that he is not "substantially limited" by them. Plaintiff has admitted "I understand that I adapted and worked very hard to overcome my difficulties, and I was able to do that by [various] principles" including "competitive values and autonomy," "a high degree of self-confidence," and "hard-boiled strength, personal strength." SOF ¶ 31.

**B.**    **Plaintiff Is Not Entitled to Damages Under ADA.**

Assuming *arguendo* that Krolik could bring a disability claim under the ADA, he cannot recover economic damages. Case law is clear that Titles II and III of the ADA (under which Dr. Krolik purports to sue) provide only for *injunctive relief* and do not permit a damages remedy. *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968) (construing 42 U.S.C. § 2000a-3(a) (ADA's Title II), which also enumerates remedies for violations of ADA's Title III); *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (Title III provides only for injunctive relief); *see also* 42 U.S.C. § 12188(a). "Monetary relief is not an option for private individuals under Title III of the ADA. As a result, a plaintiff who files an ADA claim can at most hope to improve access through an injunction." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1120 (9th Cir. 2000) (internal citation omitted). At a minimum, the Court should grant partial summary judgment to NBME on Plaintiff's claim for damages under the ADA.

### III.   CONCLUSION

As the Eighth Circuit noted in deciding whether an individual is disabled under the ADA, "It can be a harsh reality for an individual to discover he is unable to accomplish that which he hoped to accomplish." *Ristrom*, 370 F.3d at 770.  But the fact that an individual tries multiple times to achieve a particular goal – such as passing a particular class or exam – does not prove that he has an ADA-qualifying disability.  "Human intellect, talents and industry simply are not uniform.  Strive as we might, we cannot learn every skill in life.  Inadequate performance in certain life endeavors does not necessarily reflect any disability," whether it be in working, learning, or reading.  *Id.* at 771.  Plaintiff's inability to pass the USMLE – and his consequent inability to seek employment as a medical doctor – may be a personal disappointment, but it does not qualify as a disability under the ADA.

For all of the foregoing reasons, NBME requests that the Court enter judgment on Plaintiff's Complaint in favor of NBME.

DATED this 25th day of April, 2006.

OSBORN MALEDON, P.A.


s/ Ronda R. Fisk
Diane M. Johnsen
Ronda R. Fisk
2929 North Central, Suite 2100
Phoenix, Arizona  85012-2793
Attorneys for
National Board of Medical Examiners

1222058v2

1  I hereby certify that on April 25, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of
2  a Notice of Electronic Filing to the following CM/ECF registrants:

3  Pete V. Domenici, Jr.
Domenici Law Firm, PC
4  320 Gold Avenue, SW, Suite 1000
5  Albuquerque, New Mexico  87102
pdomenici@domenicilaw.com
6  Attorneys for Plaintiff Krolik, M.D.

7

8  s/ Lindsay B. Jensen

1222058v2