# Exhibit 9

OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone    602.640.9000
Facsimile    602.640.9050

1   Diane M. Johnsen, 007634
    John L. Blanchard, 018995
2   Ronda R. Fisk, 022100
3   OSBORN MALEDON, P.A.
    2929 North Central Avenue, Suite 2100
4   Phoenix, Arizona 85012-2794
    (602) 640-9000
5   Email: djohnsen@omlaw.com
    Email: jblanchard@omlaw.com
6   Email: rfisk@omlaw.com
7
    Attorneys for National Board of Medical Examiners,
8   Federation of State Medical Boards of the United States, Inc.,
9   Educational Commission for Foreign Medical Graduates
10
11              IN THE UNITED STATES DISTRICT COURT
12                   FOR THE DISTRICT OF ARIZONA
13
14  Ralph E. Krolik, M.D.,                    )   No. CV05-0315 PHX FJM
                                              )
15                        Plaintiff,          )
                                              )   **DECLARATION OF JOSEPH**
16  vs.                                       )   **ABRAM DOANE IN SUPPORT**
                                              )   **OF DEFENDANT'S**
17  United States Medical Licensing           )   **OPPOSITION TO MOTION**
    Examination, a joint program of the       )   **FOR PRELIMINARY**
18  Federation of State Medical Board of the  )   **INJUNCTION**
    U.S., Inc., and the National Board of     )
19  Medical Examiners, Federation of the      )
    State Medical Board of the U.S., Inc.,    )
20  National Board of Medical Examiners,      )
    Educational Commission for Foreign        )
21  Medical Graduates,                        )
                                              )
22                        Defendants.         )
23      I, Joseph Abram Doane, having been duly sworn, hereby depose and state:
24      1.      I am Manager, Disability Services and ADA Compliance Officer,
25  Testing Programs, at the National Board of Medical Examiners ("NBME"). I make
26

1    this declaration based on my personal knowledge except where stated to be on

2    information or belief.

3         2.      As Manager, Disability Services and ADA Compliance Officer, Testing

4    Programs, my duties include, among other things, operational responsibility for the

5    subunit that deals with test accommodations processing and decision making.

6         3.      The NBME, together with the Federation of State Medical Boards, has

7    created and established the United States Medical Licensing Examination

8    ("USMLE").  The USMLE is an examination, the results of which are used by

9    individual state medical licensing authorities to assess the qualifications of candidates

10    for medical licenses.  The examination is designed to screen out unqualified

11    individuals.  Consequently, it tests minimum knowledge and skills; an examinee can

12    pass the test by answering correctly about 60-70% of the questions.

13         4.      The USMLE is an integral component of each state's effort to ensure

14    that only competent and qualified individuals are licensed to practice medicine.  All

15    fifty states rely on the USMLE to identify those who are qualified to enter the

16    profession and those who are not qualified to become physicians.  The NBME takes

17    its role as the testing organization for medical licensure seriously.  Maintaining the

18    integrity of the testing process is a critical part of the NBME's obligation to protect

19    the public safety.

20         5.      There are three phases of the USMLE, known as "Steps."  Step 1

21    assesses whether an applicant can understand and apply important concepts of the

22    sciences basic to the practice of medicine, with special emphasis on the principles and

23    mechanisms underlying health, disease and modes of therapy.  Step 2 consists of

24    separate clinical knowledge ("CK") and clinical skills ("CS") components.  Step 3 is

25    often taken after receipt of a medical degree, usually during or after the first year of

26

1031051v3

1   residency training.  A medical residency must be completed before one is licensed to

2   practice medicine.  Passage of all three Steps is accepted by all U.S. medical licensing

3   authorities to satisfy the examination requirements for licensure as a physician.

4          6.      I am told that Dr. Ralph E. Krolik is a graduate of the American

5   University of the Caribbean Medical School.  As a graduate of a foreign (non-U.S.

6   and non-Canadian) medical school, Dr. Krolik must take and pass Steps 1 and 2 of the

7   USLME in order to become eligible to be certified by the Educational Commission of

8   Foreign Medical Graduates ("ECFMG") to obtain a medical residency.

9          7.      Steps 1 and 2 are offered year-round at Test Centers operated around the

10  world by Thomson Prometric ("Prometric"), the NBME's test-delivery vendor.

11  Eligible registrants must select a three-month period during which they wish to take

12  the exam.  Upon completion of the registration process and a confirmation of the

13  individual's eligibility to take the exam, NBME sends to each registrant a Scheduling

14  Permit, which specifies the three-month eligibility period during which the registrant

15  must complete the examination.  It is then the registrant's responsibility to contact

16  Prometric to schedule a test date at his or her preferred Prometric center during that

17  three-month period.  If a registrant is unable to take the examination within his or her

18  eligibility period, extensions are available to take the test during the contiguous three-

19  month eligibility period.

20         8.      The NBME is responsible for ensuring that Steps are administered

21  under standard conditions in order to ensure the integrity and meaning of the scores

22  and in order to protect the public's interest in the medical licensure process.  For this

23  reason, the NBME is responsible for ensuring that no examinee or group of examinees

24  receives unfair advantage over another.

25

26

1031051v3

9.      With respect to Steps 1 and 2, it is also the responsibility of the NBME to ensure that persons with disabilities as defined by the Americans with Disabilities Act ("ADA") receive reasonable accommodations when they take the test. The purpose of providing reasonable and appropriate accommodations is to afford registrants with disabilities equal, not preferential, access to the examination process. The public thus should have the benefit of the skills of qualified physicians who may be disabled, but should not be subject to treatment by unqualified physicians.

10.      The NBME website provides detailed instructions and guidelines for registrants to follow when applying for accommodations. Registrants for the Steps who believe they are disabled and seek reasonable accommodations are required to complete an "Examinee's Request for Accommodation" ("Request") regarding the nature of their disability, the type of accommodation sought and history of prior accommodations. In addition, they are required to provide to NBME documentation from qualified experts describing the disability and explaining the appropriateness of the type of accommodations requested.

11.      The Disability Services Office of the NBME reviews requests for test accommodation for the USMLE. A staff of seven employees of the NBME processes requests in a timely manner and responds to telephone inquiries.

12.      Upon receipt of the required information from the registrant for test accommodations for Step 1 or Step 2, NBME consults with outside experts with expertise in the diagnosis and treatment of the disability described by the registrant, to assist it in determining whether the registrant's submission supports the diagnosis of a disability as defined by the ADA and the accommodations requested. Once completed, a request from a registrant claiming multiple disabilities will be forwarded to an expert in each of the appropriate fields. For example, if a registrant requests test

4

1031051v3

1   accommodations claiming both a Learning Disorder and adult Attention

2   Deficit/Hyperactivity Disorder ("ADHD"), the registrant's materials usually would be

3   referred to a consultant with expertise in Learning Disorders and to one with expertise

4   in diagnosing and treating ADHD.

5       13.   The expert reviews each assigned case and writes a detailed report with

6   recommendations to the NBME as to whether the documentation meets the diagnostic

7   criteria and whether the requested accommodations are appropriate.  Based on the

8   review and recommendation of its experts, and on internal review, NBME either

9   grants or denies the request for accommodations or requests additional information.

10      14.   The NBME has created an open and flexible process whereby an

11  individual may submit additional material for consideration.  As a result, registrants

12  are encouraged to submit their requests for accommodations early so that there is time

13  for submission and review of additional information if needed.  Registrants whose

14  requests lack sufficient data are informed that the NBME will accept additional

15  information and will re-review the file for a subsequent test administration.

16      15.   From September 1995 through Fall 2004, Dr. Krolik unsuccessfully

17  took Step 1 of the USMLE seven times (September 27, 1995; October 15, 1996; June

18  10, 1997; October 14, 1997; June 9, 1998; October 20, 1998; and July 29, 1999).

19  During this same time period, he unsuccessfully took Step 2 (CK) of the USMLE six

20  times (August 27, 1996; March 4, 1997; March 3, 1998; August 25, 1998; March 2,

21  1999; and October 31, 2000).

22      16.   Dr. Krolik first requested testing accommodations in connection with

23  the USMLE in September 1998.  At that time, the ECFMG  reviewed and determined

24  the outcome of applications for accommodations filed by students and graduates of

25  foreign medical schools, such as Dr. Krolik.  Since 1999, the NBME, on behalf of

26

5

1  USMLE, has assumed responsibility for reviewing and determining accommodation

2  applications filed by students and graduates of foreign medical schools.

3       17.    A true and correct copy of the application that Dr. Krolik sent to the

4  ECFMG, dated September 10, 1998, is attached hereto as Exhibit A.  I understand

5  from the file that Dr. Krolik withdrew that application before it was acted upon.

6       18.    According to file materials, Dr. Krolik shortly thereafter renewed his

7  application for accommodations under the ADA.  Over the next few months,

8  documentation submitted in support of Dr. Krolik's application consisted of two

9  letters from a psychiatrist, Dr. Gayle Wurzlow, dated September 11, 1998, and

10  December 16, 1998, and a handwritten letter from Dr. Krolik dated September 10,

11  1998.  The ECFMG requested that Dr. Krolik's documentation be reviewed by two

12  separate psychologists, Michael Gordon, Ph.D., and Kevin Murphy, Ph.D.  Dr.

13  Gordon and Dr. Murphy each concluded that Dr. Krolik's  documentation failed to

14  adequately support a diagnosis of ADHD and that the documentation did not evidence

15  significant functional impairment.  Each therefore recommended that Dr. Krolik's

16  request be declined.  By letter dated February 23, 1999, the ECFMG declined to grant

17  Dr. Krolik's request for testing accommodations.  A true and correct copy of the

18  February 23, 1999 letter is attached hereto as Exhibit B.

19       19.    According to the file, on or about March 10, 1999, the ECFMG received

20  a letter dated March 9, 1999, from Dr. Krolik's current counsel, Pete V. Domenici, Jr.

21  A true and correct copy of Mr. Domenici's letter is attached hereto as Exhibit C.  In

22  his letter, Mr. Domenici asserted that Dr. Krolik's rights had been violated and that

23  the ECFMG might be liable for actual and consequential damages for declining Dr.

24  Krolik's request.  He further requested that the ECFMG "rectify" its decision to deny

25  Dr. Krolik's request for accommodations.

26

1031051v3

20.     According to the file, Dr. Krolik early in 1999 also submitted a request under the ADA to take Step 1 of the USMLE using paper and pencil, instead of the standard administration by computer.  The NBME on behalf of USMLE responded to Dr. Krolik by asking for more information.  In response to the request by the NBME on behalf of USMLE for more information, Dr. Krolik sent by facsimile a handwritten letter dated April 9, 1999, in which he said there was "no other documentation that will or can be furnished" with respect to his accommodation request.  A true and correct copy of Dr. Krolik's April 9, 1999 letter is attached hereto as Exhibit D.  Dr. Krolik closed his letter by saying he did not want to postpone taking Step 1 of the USMLE, and that he would proceed with his examination as previously scheduled.  Referring to his claimed attention deficit disorder, he said he would "let the legal system decide the outcome of my ADD."  In response to Dr. Krolik's April 9, 1999 letter, the USMLE sent him a letter dated April 13, 1999, acknowledging Dr. Krolik's statement that he would not be providing any additional information.  A true and correct copy of the NBME's April 13, 1999 letter on behalf of the USMLE is attached here to as Exhibit E.

21.     On or about May 14, 1999, as additional evidence in support of his ADHD diagnosis, Dr. Krolik submitted some of his early school report cards, which he said had recently been found among his deceased parents' papers.  His May 14, 1999 letter noting the report cards asked for "special testing" for an upcoming Step 1 examination based on "ADD."  In the same letter, Dr. Krolik said that he was filing a "vigorous official complaint" with the U.S. Department of Labor under the ADA.  A true and correct copy of Dr. Krolik's May 14, 1999 letter is attached hereto as Exhibit F.

7

1031051v3

1    22.    In response to Dr. Krolik's May 14, 1999 letter and its receipt of his

2  report cards, the NBME conducted a re-review of Dr. Krolik's request for

3  accommodations.  As part of this request, it sought and obtained a second report from

4  Dr. Gordon, who concluded that Dr. Krolik still had not provided evidence that

5  ADHD symptoms persist and were impairing.  By letter dated June 18, 1999, the

6  USMLE notified Dr. Krolik that after a thorough re-review of his request for test

7  accommodations, including the report cards, his request for accommodations was

8  denied.

9    23.    In April 2001, USMLE received a letter and report dated April 3, 2001,

10  by Grant Butterbaugh, Ph.D., in support of a request by Dr. Krolik for testing

11  accommodations.  Although the USMLE's procedures require that an applicant must

12  register for an examination in order to have his application for accommodations

13  reviewed, according to the file, Dr. Krolik asked that his request for accommodations

14  be ruled upon before he registered.  The USMLE responded by letter dated April 25,

15  2001, saying that it would begin review of his accommodation request once Dr.

16  Krolik registered for an examination.  According to the file, Dr. Krolik did not

17  provide additional information, and did not register for any USMLE Step during

18  2001.  Therefore, no action was taken by USMLE at that time with respect to Dr.

19  Krolik's documentation.

20    24.    In 2003, Dr. Krolik filed another Request for accommodations under the

21  ADA in connection with his application to take Steps 1 and 2 of the USMLE.  A true

22  and correct copy of his Request, dated November 3, 2003, is attached hereto as

23  Exhibit G.  Dr. Krolik also sent by facsimile a signed statement, which the NBME

24  received on November 5, 2003.  A true and correct copy of that statement is attached

25  hereto as Exhibit H.  Also in support of his Request, the NBME received a letter dated

26

1031051v3

1   September 18, 2003, from Dr. Wurzlow (along with another copy of her December

2   16, 1998 letter) and Dr. Butterbaugh's letter and report dated April 3, 2001.

3          25.     In response to Dr. Krolik's documentation, the NBME sent a letter to

4   Dr. Krolik dated November 10, 2003, in which it informed Dr. Krolik that the

5   information submitted on his behalf was incomplete.  A true and correct copy of the

6   NBME's November 10, 2003 letter is attached hereto as Exhibit I.  The NBME

7   subsequently received a revised letter dated December 19, 2003, and report from Dr.

8   Butterbaugh on behalf of Dr. Krolik's application.

9          26.     Dr. Krolik's documentation indicated that he sought special

10  accommodations under the ADA based on a claimed substantial impairment due to

11  ADHD and on a separate Learning Disability related to reading.  Therefore, NBME

12  referred Dr. Krolik's documentation to Dr. Gordon (for his recommendation as to the

13  claimed ADHD) and to Joseph E. Bernier, Ph.D (for his recommendation as to the

14  claimed Learning Disability).

15         27.     In a report dated January 15, 2004 (see Exhibit D to the Gordon Report),

16  Dr. Gordon concluded that Dr. Krolik's documentation failed to offer any convincing

17  evidence of either early or current impairment associated with ADHD, and

18  recommended that Dr. Krolik's request for accommodations based on ADHD be

19  denied.

20         28.     In a report dated January 12, 2004 (see Exhibit B to the Bernier

21  Declaration), Dr. Bernier concluded that based on the documentation provided by and

22  on behalf of Dr. Krolik, Dr. Krolik was not a functionally impaired reader, and that he

23  suffered no Learning Disability connected with reading.  Dr. Bernier recommended

24  that Dr. Krolik's request for accommodations based on a reading Learning Disability

25  be denied.

26

9

1031051v3

29.     By letter dated February 2, 2004, the NBME informed Dr. Krolik that it was unable to provide him with the testing accommodations he had requested.  Based on the recommendations of Drs. Gordon and Bernier, NBME concluded that the documentation provided by and on behalf of Dr. Krolik did not demonstrate significant impairment compared with the average person in the general population, as the ADA requires.  A true and correct copy of the NBME's February 2, 2004 letter is attached hereto as Exhibit J.

30.     By letter dated March 3, 2004, Dr. Krolik told the USMLE that he was "appealing" the denial of his request for accommodation, and said he would within a few weeks have further documentation to submit in support of his request for accommodations.  A true and correct copy of Dr. Krolik's March 3, 2004 letter is attached as Exhibit K.  USMLE responded to Dr. Krolik by letter dated March 5, 2004.  In its letter, USMLE told Dr. Krolik that it would review his petition for reconsideration along with additional documentation he might submit.  A true and correct copy of USMLE's March 5, 2004 letter is attached hereto as Exhibit L.

31.     Since December 2003, Dr. Krolik has not provided to NBME any additional documentation in support of his self-described appeal.

32.     On November 16, 2004, Dr. Krolik wrote a letter to the ECFMG in which he requested "an extension of the time" to take an examination, and stated that he was seeking legal counsel in connection with the denial of his request for testing accommodations.

33.     By letter dated November 17, 2004, NBME notified Dr. Krolik that because he had not provided any additional materials, it was closing its file on his request for accommodations.  The letter added:  "This action is not a denial of your request for test accommodations and does not prohibit you from submitting future

10

1031051v3

1   requests for this or any other administration of the USMLE."  A true and correct copy

2   of NBME's November 17, 2004 letter is attached hereto as Exhibit M.

3        34.    I understand that Dr. Butterbaugh has asserted that NBME recently

4   "revised" its guidelines pertaining to analysis of psychoeducational tests submitted in

5   support of a registrant's application for testing accommodations.  To the contrary,

6   consistent with the recommendations from our expert consultants, so far as I am

7   aware, NBME has always required that such tests be "normed" based on age, and not

8   based on grade level.

9       I declare under penalty of perjury under the laws of the United States that the

10  foregoing is true and correct.

11      Executed this _15th_ day of August, 2005.

12

13                        Joseph Abram Doane

14

15

16

17

18

19

20

21

22

23

24

25

26

1031051v3

# EXHIBIT B

# EDUCATIONAL COMMISSION for FOREIGN MEDICAL GRADUATES

PHILADELPHIA OFFICE

3624 MARKET STREET, PHILADELPHIA, PENNSYLVANIA 19104-2685, U.S.A.

TELEPHONE: 215-386-5900 ● FAX: 215-386-6327 ● CABLE: EDCOUNCIL, PHA.

**BY FEDERAL EXPRESS**

February 23, 1999

USMLE / ECFMG Identification
Number: 0-546-768-3

(Please use on all correspondence)

Dr. Ralph Krolik
124 Coolidge Street
Jefferson, Louisiana 70121



Dear Doctor:

Your request for accommodations for the March 2-3, 1999 USMLE Step 2 and accompanying material have been carefully reviewed in accordance with USMLE guidelines for examinees with disabilities and within the framework of the Americans with Disabilities Act (ADA). We referred your documentation to experts in the field of Attention Deficit Disorder for an impartial professional review.

Since the ECFMG is a testing organization, we must maintain strict impartiality as to an individual's academic performance or outcome on a particular test. According to the regulations accompanying the Americans with Disabilities Act, we must make a determination as to whether or not an individual has demonstrated a substantial limitation that prohibits or significantly restricts the ability to perform major life activity. Therefore, your documentation must demonstrate whether or not your diagnosed condition significantly impairs a major life activity. A diagnostic label, in and of itself, does not establish coverage under the ADA.

The documentation presented does not substantiate a diagnosis of ADHD or the evidence of a disability and is therefore insufficient to warrant the requested accommodation. In the case of ADHD, documentation is required to show that an individual has consistently and pervasively been unable to manage routine situations requiring attention and self-control.

More specifically, the presented documentation fails on the following grounds:

1. ADHD is a disability with a childhood onset that typically results in a chronic and pervasive pattern of functional impairment in academic, social or vocational areas, and often in daily adaptive functioning. The presented information does not provide sufficient evidence that symptoms either in childhood or presently resulted in the degree of significant impairment required for a clinical diagnosis of ADHD. No objective data is presented to indicate that

*ECFMG is an organization committed to promoting excellence in international medical education.*

you had any significant difficulties with impulsivity, distractibility or concentration in the past. Retrospective recall of simply experiencing ADHD-like symptoms without documented impairment is not sufficient to substantiate a diagnosis of ADHD.

2. No documentation (other than self-reported symptoms) was provided to indicate any clinically significant impairment in childhood.

3. Information presented by Gayle Wurzlow, M.D. did not adequately discuss or rule out other possible disorders that may result in ADHD-like symptoms.

4. No testing results were presented in support of any cognitive/attentional/learning weaknesses.

5. No objective data, such as school report cards, reports from past tutors or counselors, job evaluations or written documentation from the Rabbi who was mentioned, was provided to document a history of significant academic or behavior difficulties.

6. Insufficient documentation was presented to establish that you have a degree of current impairment that rises to the level of a disability. A sudden onset of difficulty in seeking to pass the USMLE™ is not consistent with a diagnosis of ADHD, which, by definition, has an onset in childhood.

After careful review of your file and based on the recommendation of the experts, I must advise that we are unable to grant the requested testing accommodations of extra testing time.

Sincerely,

Mary B. McAvinue
Manager, Test Center Management

# EXHIBIT C

RECEIVED

MAR 10 1999

E G F M G
T A S

**DOLAN & DOMENICI, P.C.**
ATTORNEYS AT LAW
6100 Seagull NE, Suite 205
Albuquerque, New Mexico 87109
(505) 883-6250

Fax: (505) 884-3424

DANIEL R. DOLAN, II[1,2,3]
PETER V. DOMENICI, JR.[2]
JEANNE CAMERON WASHBURN[2]
CHRISTOPHER D. SHAW[2]

Licensed in [1] KY; [2] NM; [3] TX.

March 9, 1999

**VIA FAX NO. (215) 386-6327**

Mary McAvinue
Manager
Test Center Management

    Re:    Notice of Claim of Dr. Ralph Krolik

Dear Ms. McAvinue:

    This letter is to inform you that Dr. Krolik has retained me to represent his interests against you and your association. This letter is to put you on notice that your association's conduct has violated Dr. Krolik's rights and that you will or may be held liable for actual and consequential damages. As you are aware, the damages related to these tests might be substantial. Dr. Krolik demands that you take prompt action to rectify your previous decisions denying him accommodation for his medical condition. In addition, Dr. Krolik will hold the organization responsible for all damages which he has sustained by their conduct and misconduct.

                Sincerely,

                DOLAN & DOMENICI, P.C.

                PETE V. DOMENICI, JR.

PVD/dmb
cc:    Ralph Krolik, via fax

j:\599\corres\mcavinue.let

# EXHIBIT D

4/09/99

To: Shelby Kaiser    FAX (215) 590-9422

From RALPH KROCK M.D.    Fax & phone
(504) 828-5208

Dear Ms Kaiser

Please be advised that there is no
other document ask that will or can be
furnished on my SDD except the letters
from a qualified M.D. expert in the field. By
denying me special testing you are violating
the americans for disabilities act & of my civil
rights.

Please also be advised that I do
NOT WANT to POSTPONE my part I exam
so the I will keep taking it. and let the
legal system decide the outcome of my SDD.
Please advise you acknowledge this note.
Thank you
Ralf Elliott Kroble. MD
n-186-768-3

# EXHIBIT E



# Office of Test Accommodations

3750 MARKET STREET, PHILADELPHIA, PA 19104-3190
Tel. (215) 590-9509 / Fax (215) 590-9422

**US·MLE**
United States
Medical
Licensing
Examination

## CONFIDENTIAL

Secretariat:
3750 Market Street
Philadelphia, PA 19104
(215) 590-9600
Fax: (215) 590-9470
www.usmle.org

Composite Committee

John E. Chapman, MD
Chair

L. Thompson Bowles, MD, PhD
D. Clifford Burross, MD
Anthony J. Cortese, DO
J. Lee Dockery, MD
William E. Drips, Jr., MD
Mary C. Falvey
Nancy E. Gary, MD
Donald E. Melnick, MD
Robert E. Porter, MD
Susan M. Spaulding
James E. West, MD
Alexander H. Williams, III
James R. Winn, MD

tes:

lliam R. Ayers, MD
Robert O. Kelley, PhD
Alan E. Shumacher, MD

April 13, 1999

Ralph Krolik, M.D.
124 Coolidge
Jefferson, LA 70121

Dear Dr. Krolik:                                    ID# 0-546-768-3

This is to acknowledge receipt of your April 9, 1999 letter which we received by facsimile. You advise us that you will not be providing any additional information to support your request for accommodations for 1999 USMLE Step 1. As I explained in my March 31 letter to you, we currently do not have sufficient information to make a determination as to whether or not you are a covered individual under the Americans with Disabilities Act.

Consequently, we will advise Registration to release your scheduling permit so that you can arrange to take Step 1 without accommodations.

Sincerely,

Shelby R. Keiser
Manager, Office of Test Accommodations

SK/caf

---

*A Joint Program of the Federation of State Medical Boards of the U.S., Inc. and the National Board of Medical Examiners*



Federation of State Medical Boards of the U.S., Inc.
400 Fuller Wiser Road, Suite 300
Euless, TX 76039-3855
(817) 868-4000
Fax: (817) 868-4098
www.fsmb.org



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9555
www.nbme.org

# EXHIBIT F

RECEIVED

MAY 2 1 1999

ECFMG
TAS

May 14, 1999
124 Coolidge St.
Jefferson, LA 70121

RECEIVED

MAY 2 4 1999

OFFICE OF
TEST ACCOMMODATIONS

Mary McAvinue
ECFMG
3624 Market St.
Philadelphia, PA 19104

Dear Mrs. McAvinue,

I sent report cards that my brother recently found in some things that he had from my
deceased parents estate, which is further documentation of the fact that I have ADD.
I reiterate that ADD is a clinical diagnosis made by a Psychiatrist which has already been
made and furnished to you. I wish to have special testing for the upcoming Part I exam,
July 29 at 9:00 A.M. I would also like hand grading provided by you of the previous
Part I (score of 71) and of the most recent Part II (score of 72) for further substantiation
of the condition.

I am also requesting that you respond in writing to the information just furnished to you
as you do not return my phone calls.

I am filing a vigorous official complaint with the U.S. Department of Labor (EEOC) for
violation of my rights under the Americans for Disabilities Act and for violation of my
civil rights and blatant discrimination.

Please respond promptly.

Sincerely,

Ralph E. Krolik, M.D.

# EXHIBIT G

RECEIVED

NOV 4 2003

RS

RECEIVED

NOV 0 5 2003

Disability Services

### UNITED STATES MEDICAL LICENSING EXAMINATION™ (USMLE™)
Office of Test Accommodations (215) 590-9509

**Questionnaire for USMLE Step 1 and 2 Applicants Requesting Test Accommodations**

You must provide supporting documentation verifying your disability. The documentation must be from a qualified professional. Mail your completed questionnaire and documentation to:

Students / Graduates of US & Canadian Medical Schools
Testing Coordinator, Office of Test Accommodations, National Board of Medical Examiners,
3750 Market Street, Philadelphia, PA 19104-3190.

Students / Graduates of Foreign Medical Schools
Test Accommodations Coordinator, Educational Commission for Foreign Medical Graduates
3624 Market Street, Philadelphia, PA 19104 USA.

Please type or print.

1. Accommodations are requested for the following Step examination:

   (Step 1)   (Step 2)   Year: 2004

2. Name: Krolik   Ralph   E.
   Last   First   Middle Initial

3. Gender: (Male) · Female   4. Date of Birth 11-22-44

5. SS# 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   6. USMLE # 0-596-268-3
   (if known)

7. Address 9421 W. Saddlehorn Rd
   Street
   Peoria Az   85383
   City   State/Province   Zip/Postal Code
   USA   (623) 878-5941
   Country   Daytime Telephone Number

8. Medical School American University of the Caribbean

9. Nature of the Disability:
   · Hearing Disability   · (Psychiatric Disability) Add'D
   · (Learning Disability) Reading   · Visual Disability
   · Physical Disability   · Other Add'D

10. In order to document your need for accommodation as completely as possible, please attach, in addition to professional documentation, a personal statement describing your disability and its impact on your daily life and educational functioning. Do not confine your comments to standardized test performance; rather discuss your overall functioning.

- CONTINUED -

5/2000

11. How long ago was your disability first professionally diagnosed?
- less than 1 year
- 1-2 years
- 2-4 years
- (5 or more years)

12. What accommodation(s) are you requesting? Accommodation(s) must be appropriate to the disability.

_Paper & pencil test and additional time._

13. If you are requesting additional testing or break time, please indicate below (select one):
- time and a half
- (double testing time)
- extra break time
- other _____

14. Do you require wheelchair access at the examination facility?
- Yes
- (No)

If you require an adjustable height table, please indicate the number of inches from the floor _____

15. Prior classroom or test accommodations that you have received:

A. Standardized Examinations
- Medical College Admission Test (MCAT)   Month/Year _____
  Accommodation received _not taken, not required for medical school_
  (If extra time, note amount given _____ )
- Other    Month/Year _____
  Accommodation received _____
  (If extra time, note amount given _____ )

B. Medical School    • Yes    • No
  Accommodation received _only timed tests were lab exposure_
  _anatomy and microbiology. these did not require_
  Date approved _reading long passages._
  If yes, have an appropriate official at your medical school complete the enclosed certification form.

C. College    • Yes    • (No)
  If yes, accommodations received: _Again tests _ did no regued_
  _reading long passages and were not timed._

D. Secondary or elementary school    • Yes    • (No)
  If yes, accommodations received: _Note I was not diagnosed then. Please_
  _note letter from Dr. Bitterbaugh and report cards especially_

16. Authorization _3rd grad that required a tooter a class room because_
  _I couldn't sit still (report cards forward of years)_

If clarification or further information regarding the documentation provided is needed, I authorize the NBME or ECFMG to contact the professional(s) who diagnosed the disability and/or those entities which have provided me test accommodations. I authorize such professional(s) and entities to communicate with the NBME or ECFMG in this regard to provide NBME or ECFMG with such clarification and/or further information.

Signature _____    Date _11/03/03_

# EXHIBIT H

FROM :                          PHONE NO. :                    Nov. 04 2003 10:27AM P3

RECEIVED

NOV 0 5 2003

Disability Services

I went to Public school 50 years ago and graduated high school 42 years ago. ADHD was not diagnosed then. If you look at my report cards that I have previously sent, they show the symptoms and behaviors of ADHD. Also if you look at my grades through out my academic life, I was just happy to pass and I did not know why I had to work so hard for what I got.

In my personal life it takes me longer to complete tasks and I recheck repeatedly the work I do. I learn better auditorially and "hands on" than I do with reading tasks. I have always found study groups to help with auditory learning experiences, but have been asked to leave more than once because I interrupt. I make lists and use visual reminders to complete tasks. I score higher on "hands on" exams such as Anatomy and Microbiology and in labs. My clinical rotation scores are higher also...in part because they require determination and I have had to develop that to over come my disability. I have been unable to complete the USMLE due to my slow reading time, leaving as many as 40 or more questions unanswered per exam when if was four tests given in 2 days because I ran out of time.

I wish I had been tested earlier in life as it would have made a difference then and I am reasonably sure my grades would have been higher. Please refer to Dr. Butterbaugh's letter.

# EXHIBIT I



**National Board of Medical Examiners®**
3750 Market Street
Philadelphia, PA 19104-3102
215.590.9500

-Confidential-

November 10, 2003

Ralph Elliott Krolik
9421 W. Saddlehorn Road
Peoria, AZ 85383

RE: USMLE STEP 2 - 2004

USMLE ID #: 0-546-768-3

Dear Mr. Krolik:

We have conducted a preliminary review of your request for test accommodations for the USMLE STEP 2 - 2004. However, the information you submitted is incomplete and we are therefore unable to make an informed decision about your request at this time.

In order for us to properly evaluate your request for accommodations, your documentation should include a current comprehensive psychoeducational battery containing *age-based standard and/or scaled scores* for all tests and subtests administered and a detailed explanation of how those test results, along with academic history and level of current functioning, support a diagnosis. A comprehensive evaluation should also assess *current achievement in academic skill areas.* Furthermore, your evaluator should identify your specific functional limitations and provide an explanation of how the recommended accommodations will reduce the impact of those identified functional limitations on the testing activity.

Further, since learning disorders are developmental disorders that usually emerge during childhood, it is important to provide objective historical documentation of substantial limitation in learning throughout your development including any evaluations that were conducted throughout your elementary and/or high school years. You should provide objective records validating your history of impairment such as previous evaluations, grade reports, reports from parents, teachers, tutors or other past treatment providers. Even if it is impossible to obtain such records from your elementary and high school education, it should be possible to obtain transcripts from college and medical school as well as feedback from college and medical school faculty. This information will assist us in determining whether you are a covered individual as defined by the Americans with Disabilities Act and if so, what accommodations would be appropriate.

I encourage you to read the USMLE Guidelines carefully for a comprehensive description of how to document a need for accommodation and to discuss this information with your evaluators to assist you in compiling complete and comprehensive documentation. The Guidelines may be accessed on the National Board of Medical Examiners website at www.nbme.org. Click on "The United States Medical Licensing Examination (USMLE)," then choose "USMLE Test Accommodations for NBME Step 1 & Step 2 Applicants."

We will place your accommodations on hold until we receive your additional documentation. Please send this information to:

USMLE Disability Services
3750 Market Street
Philadelphia, PA 19104

You may fax your material to 215-590-9422 and please call 215- 590-9869 to verify receipt.

If you do not plan to submit more information and would like your registration released, please fax a statement to that effect to 215-590-9422 and call 215-590-9869 to confirm receipt. If you have any other questions, please contact Disability Services at 215- 590-9869.

Sincerely,

J. Abram Doane, MA, JD
Manager, Disability Services

JAD/ay

# EXHIBIT J



Secretariat:
3750 Market Street
Philadelphia, PA 19104
(215) 590-9600
Fax: (215) 590-9470
www.usmle.org

Composite Committee

Carol A. Aschenbrener, MD
Chair

L.D. Britt, MD
D. Clifford Burross, MD
N. Lynn Eckhert, MD, DrPH
William H. Fleming, III, MD
James A. Hallock, MD
Donald E. Melnick, MD
Stephen G. Post, PhD
Alan E. Shumacher, MD
Susan M. Spaulding
James N. Thompson, MD
James E. West, MD
Alexander H. Williams, III
William T. Williams, Jr., MD

Alternates:

Gerald J. Bechamps, MD
Bruce M. Koeppen, MD, PhD
Gerald P. Whelan, MD

Disability Services
215-590-9869
215-590-9422 (Fax)

**CONFIDENTIAL**

February 2, 2004

Ralph Elliott Krolik
9421 Saddlehorn Road
Peoria, AZ  85383

RE: USMLE Step 1                     USMLE ID#: 0-546-768-3

Dear Dr. Krolik:

We have carefully reviewed your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1 and accompanying material in accordance with USMLE guidelines for examinees with disabilities and within the framework of the Americans with Disabilities Act (ADA).  We consulted experts in the disorders of learning and Attention Deficit/Hyperactivity Disorder (ADHD) to assist us in reviewing the documentation.

According to your revised February 2001 Neuropsychological and Educational Evaluation, revised December 2003, your evaluator, Dr. Grant Butterbaugh, assigns you the diagnoses of Attention-Deficit Hyperactivity Disorder (chronic, probably combined type), Reading Disorder (chronic, with comprehension worse than phonics), and Motor Coordination Disorder (probably mild handwriting and drawing deficits).  Dr. Butterbaugh reports "Dr. Krolik has relative neuropsychological weaknesses in his reading comprehension, complex verbal/design memory/retrieval, handwriting, and complex design copying, and consistent organizational/attentional control skills."  He states in his report, "Given his revised reading scaled scores (based on revised NBME policies about the Nelson-Denny Reading test), we are revising our recommendations that his ADHD, but not Reading Disorder, should be the basis for his substantial limitation in the major life activity of learning" (p. 6).

Attention Deficit/Hyperactivity Disorder is a developmental disability with a childhood onset that typically results in a chronic and pervasive pattern of functional impairment in academic, social, or vocational functioning, and often in daily adaptive functioning.  However, the documentation submitted with your

*A Joint Program of the Federation of State Medical Boards of the U.S., Inc. and the National Board of Medical Examiners®*



Federation of State Medical Boards of the U.S., Inc.
400 Fuller Wiser Road, Suite 300
Euless, TX 76039-3855
(817) 868-4000
Fax: (817) 868-4098
www.fsmb.org



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9555
www.nbme.org

request for accommodation does not adequately support an ADHD diagnosis or the existence of a disability. While it is true, as you suggest, that the diagnostic labels of ADHD and Learning Disabilities were not in use in the 1950s, the lives of impulsive or learning impaired children nonetheless showed the impact of their deficits: They failed classes, were retained in grade, required extensive tutoring, received referrals for evaluations by psychiatrists and psychologists, and/or dropped out because of academic frustration.

The information provided by you does not reflect the manifestations of significant impairment. Your history of academic progress does not indicate that you experienced substantial difficulties in your ability to read and learn. It appears that despite what may well have been an active style, you completed elementary school, high school, college, pharmacy school, and medical school without the need for special accommodations. There is no indication that you ever sought evaluation or accommodations prior to taking the USMLE Step 1. Furthermore, no documentation was provided to indicate such current functional impairment such as faculty/supervisor comments, job performance evaluations, or through other sources of information to suggest that you have shown pervasive problems managing the many daily demands for organization and attention that are inherent to the life of a medical student, resident, or employee.

Regulatory decisions and case law have established that the ADA covers individuals who are "substantially limited" in a major life activity as the result of a disability. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment. Therefore, a diagnostic label, in and of itself, does not establish coverage under the Americans with Disabilities Act. Overall, the documentation that you have provided does not suggest that you are significantly impaired relative to the average person in the general population. Therefore, after a careful review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will request processing of your exam application without test accommodations. You may inquire at permits@ecfmg.org or call Applicant Information Services at (215) 386-5900 with any questions about your scheduling permit.

Sincerely,

J. Abram Doane, MA, JD
Manager, Disability Services

JAD/c