Pete V. Domenici, Jr., Esq.
Domenici Law Firm, P.C.
320 Gold Avenue SW, Suite 1000
Albuquerque, New Mexico 87102
(505) 883-6250
Attorney for Plaintiff Krolik, M.D.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| RALPH E. KROLIK, M.D., | ) | CASE NO. CV-05-0315 PHX FJM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **RESPONSE IN OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| | ) | **Oral Argument Requested** |
| NATIONAL BOARD OF | ) | |
| MEDICAL EXAMINERS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**COMES NOW** the Plaintiff, Dr. Ralph E. Krolik, by and through his attorneys,

Domenici Law Firm, P.C. (Pete V. Domenici, Jr., Esq.) and for his Response in

Opposition to Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56;

supported by the Memorandum of Points and Authorities; the separate Statement of

Disputed Facts and Statement of Additional Undisputed Facts pursuant to Local Rule

56.1(a); the file in this matter; and such argument as the Court permits; states as follows:

### <u>INTRODUCTION</u>

Plaintiff Dr. Ralph Krolik is a 62-year-old man who was diagnosed in 1998 as

suffering from Attention Deficit/Hyperactivity Disorder ("ADHD").  Dr. Krolik is

seeking testing accommodations from the National Board of Medical Examiners

("NBME") for a standardized test administered by NBME. As will be explained in more detail, the diagnosis of ADHD is based on utilization of the requirements of the Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IV").  Based on discovery in this case, it has been discovered that the NBME recognizes that a diagnosis of ADHD is an appropriate basis for recommending testing accommodations by affiliated entities to persons taking the standardized tests administered by the NBME.

According to both Defendant's expert witness, Dr. Michael Gordon, Ph.D., and J. Abram Doane, MA, JD, Manager of Disability Services for NBME, who reviews Dr. Gordon's recommendations on applicants for an ADHD accommodation, the diagnostic criteria of DSM-IV requires demonstration of a history of impairment in activities that are comparable to major life activities identified in the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.  Based on the 40 Random Sample Applicants of the NBME that were disclosed by Defendant to Plaintiff, NBME has granted approximately 50% of requests for accommodations based on the diagnosis of ADHD. Further, because the NBME administers a National test, it attempts to apply an identical standard to ADHD requests.  NBME does not rely upon specific case law from various Federal District Courts or Federal Court of Appeals for its position on similar ADA requests based on ADHD.  Its determination is not based on location of the applicant or other circumstances.

As will be demonstrated herein, when the NBME concurs with the ADHD diagnosis of the applicant's psychologist/psychiatrist, NBME considers the applicant to be disabled under the ADA definition of disability.  The evidence will show that there is a factual dispute as to whether or not the NBME has established a course of conduct, with

respect to recognizing ADHD as a basis for disability under the ADA, that it is refusing to follow in this case.  There is a factual dispute as to whether or not the NBME practice and conduct demonstrates that it recognizes that a person having a valid diagnosis of ADHD satisfies the requirement of either 42 U.S.C. §12102(2)(A): "Physical or mental impairment that substantially limits one or more of the major life activities of such individual," or 42 U.S.C. § 12102(2)(C):  "Being regarded [by the NBME] as having such an impairment."  The NBME concedes in its instructions for applicants and its practices that ADHD diagnosed applicants are entitled to testing accommodations pursuant to 42 U.S.C. § 12102(2).

Based on the testimony of Dr. Butterbaugh, confirmed by the diagnosis of Dr. Wurzlow, and substantiated by the facts and circumstances of Dr. Krolik's life history, there is a factual issue as to whether Dr. Krolik is disabled under the ADA and should thus be entitled to an accommodation under 42 U.S.C. 12102(2) to allow more time and other accommodations in taking the NBME Step 1 and Step 2 exams, just as hundreds of other applicants to the NBME have been accommodated.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

Dr. Ralph Krolik, born November 22, 1944, is a 62-year-old medical school graduate of American University of the Caribbean.  Dr. Krolik graduated from medical school in 1996 at the age of 52.   The United States Medical Licensing Examination ("USMLE") is a professional medical licensing exam administered to all medical school graduates for medical licensing to practice medicine in the United States.  The USMLE is a joint program of the Federation of State Medical Boards of the U.S., Inc. and The

National Board of Medical Examiners ("NBME") (Exhibit "G", Letter of Doane, USMLE and NBME).  Dr. Krolik's first attempt at taking the USMLE Step 1 exam was in 1995.  Since then, he has taken the Step 1 exam six (6) times and the Step 2 exam eight (8) times, and each time he has been unable to successfully complete and pass the sections of the exam.   Each test attempt showed that Dr. Krolik was not able to complete 34% of the questions on the exam.  (See Exhibit "A", Affidavit of Dr. Krolik).

In December 1998, based on DSM-4 criteria, Dr. Gayle F. Wurzlow, M.D. gave Dr. Krolik the medical diagnosis of hyperactive impulsive type disorder with a subtype of symptoms with over focus; attention deficit disorder plus cognitive inflexibility, trouble shifting attention, many negative thoughts and behavior with compulsive worrying. (Exhibit "B", report of Dr. Gayle Wurzlow, M.D.)

In 2003 Dr. Grant Butterbaugh conducted testing and determined that Dr. Krolik has childhood and adult symptoms of ADHD, Reading Disorder, and chronic Motor Coordination.  Dr. Butterbaugh identified Dr. Krolik's weaknesses in his verbal and perceptual motor intelligences, perceptual motor skills, complex auditory-verbal and visual-nonverbal design memory/recall skills, reading comprehension skills, and self-control of daily organizational, impulse control, activity level and learning skills.  Dr. Butterbaugh's recommendation was to classify Dr. Krolik as a worker/student with ADHD and Reading Comprehension Disorders, offer appropriate educational and work accommodations for pre-license and post-license tests in a quiet room with printed and orally presented test questions in a multiple choice format, consideration of medicine treatment of ADHD and emotional distress, and consideration of remedial reading and professional content review instructional programs. (Exhibit C, D - (2) reports of Dr.

Grant Butterbaugh, Ph.D.).  Dr. Butterbaugh's review of Krolik's available grade school and high school report cards revealed "a history consistent with expected childhood underachievement associated with intermittent teacher-reported attention, reading, handwriting, and study skills problems."

Dr. Pamela Hoblit also evaluated Dr. Krolik and found that while she was unsure of an ADHD diagnosis, she recommended that Dr. Krolik be seen by a psychiatrist with expertise in Adult ADHD. (Exhibit E, Dr. Pamela R. Hoblit, Ph.D. report).

Dr. Vicki A. Alberts, M.D., a psychiatrist, saw Dr. Krolik for medication management for ADHD. (Exhibit F, Report of Dr. Vicki Alberts, M.D.)

In 2004, Dr. Krolik petitioned the USMLE, Office of Test Accommodations, for reasonable accommodations to take Step 1 and Step 2 of the USMLE in accordance with the USMLE guidelines for examinees with disabilities and within the framework of the ADA.  Dr. Krolik requested the reasonable accommodation of double time to take the exam and he requested that the exam be a pencil and paper exam, rather than a computer exam.  This request to USMLE was supported with the diagnostic evaluation and supplemental school records. USMLE provides reasonable accommodations for more time and pencil/paper exams rather than computer tests for its test applicants. (Exhibit "A", Affidavit of Krolik)

USMLE denied Dr. Krolik's request for a reasonable accommodation to take Step 1 and Step 2 of the USMLE.  In its denial opinion addressing USMLE's position on ADHD as a disability USMLE stated:

> Attention Deficit/Hyperactivity is a developmental disability with a childhood onset that typically results in a chronic and pervasive pattern of functional impairment in academic, social, or vocational functioning, and often in daily adaptive functioning. However, the documentation with your request for accommodation does not

adequately support an ADHD diagnosis or the existence of a disability.  While it is true, as you suggest, that the diagnostic labels of ADHD and Learning Disabilities were not in use in the 1950s, the lives of impulsive or learning impaired children nonetheless showed the impact of their deficits; They failed classes, were retained in grade, required extensive tutoring, received referrals for evaluations by psychiatrists and psychologists, and/or dropped out because of academic frustration." (Exhibit G, letter from J. Abram Doane, MA, JD, Manager, Disability Services, USMLE)

The fundamental question of what constitutes a disability under the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual."  42 U.S.C. § 12102(2)(A).

To survive summary judgment on the question of disability, Dr. Krolik is required to tender sufficient evidence to demonstrate that a genuine issue of material fact exists as to whether his learning and working disabilities significantly restrict the condition, manner or duration of his learning and working ability as compared to the average person in the general population.  To this end, Dr. Krolik tendered proof that:

1.  A review of his early grade and high school report cards revealed problems with inattention, concentration or effort (but no conduct problems), consistent with his current ADHD and reading comprehension impairments. (Exhibit H, Grade School records of Dr. Krolik)

2.  Teacher comments from the 1st through 6th grades (1950-1956) complained of unsatisfactory reading, concentration, attention or both reading and attention/concentration problems, which were all the more notable because of teachers' comments about his unrealized potential. (Exhibit H)

3.  In regard to his academic or literacy skills, he obtained a below average reading comprehensive score on the Nelson-Denny Reading Test, which

compared him to his peers in the general population and is a reading test

that meets the criteria for a disability under recent federal court rulings

relevant to the ADA. (Exhibit I, Report of Dr. Butterbaugh)

4.    Dr. Krolik was a very active person,…he simply could not sit down, that it

was very difficult for him.  He wanted to study by talking all the time

rather than reading and that he had a hard time sitting down and reading.

(Exhibit J, Dr. G. Butterbaugh Depo, 46: 17-24)

5.    Testing is reading…and (Dr. Krolik's) inattention, his ADHD-related

symptoms disrupt the act of reading, but…it is not an disorder by the

definition of comparing him to peers with 9th grade education or higher,

that it would be encountered by taking the Step exams and have been

encountered by taking the Step exams. (Exhibit J, Dr. G. Butterbaugh

Depo, 78:6-16)

6.    In reading, Dr. Krolik gets distracted, he feels like he's read it right but

makes careless mistakes, his college mates' confirmation of that he's a

careless reader on tests in college days, some of the spattered kind of

comments of his early teachers related to reading. He's an inconsistent

reader that did well on the Nelson-Denny because its' very more shortened

than what the certification test is called the steps. (Exhibit J, Dr. G.

Butterbaugh Depo, 79:20-25, 80:1-9)

7.    The objective limitations in Dr. Krolik's daily organizational deficits

are…he has high average or above academic skills, he is impulsive, speaks

his mind, gets himself in trouble, does not sit down and carry out a study

plan, does not sit down and get through the textbook or the exams without difficulty…He makes careless errors. (Exhibit J, Dr. G. Butterbaugh, Depo, 94:7-21)

8.      Dr. Krolik had substantial difficulties in social, family and also work-related difficulties. (Exhibit J, Dr. G. Butterbaugh Depo, 99:14-18)

9.      Regarding work, Dr. Krolik has trouble working for other people, …he is a gung-ho leader type, and it's hard for him to work on a team. (Exhibit J, Dr. G. Butterbaugh Depo, 110:6-8)

10.     Dr. Krolik was asked to leave the study group (in medical school) because he interrupted so much…he is an auditory learner…it took him a long time to read anything. (Exhibit K, Dr. M. Krolik Depo, 80:13-18).

11.     For his work history, from college to the present, Dr. Krolik had at least 22 different jobs and was fired from at least 7 of those jobs and quit at least 6 of the jobs. (Exhibit L, Supplemental Response to Interrogatory No. 6.)

## II.  PROCEDURAL BACKGROUND

As indicated in the Defendant's Motion for Summary Judgment, Dr. Krolik presented his first request to the NBME for accommodations to take the Step 1 and Step 2 in 1998.  He submitted subsequent requests for subsequent examinations.  Ultimately, he filed his case based on the February 2, 2004 denial to his December 2003 request.  In the request he submitted, Dr. Krolik's application was supported by the neuropsychological and educational evaluation of Dr. Grant Butterbaugh and the psychiatric evaluation records of Dr. Gail Wurzlow resulting in a diagnosis and medication treatment of Dr.

Krolik's ADHD.  In his Complaint and Amended Complaint in this matter, Dr. Krolik

referenced the 2004 petition and the February 2004 denial as the basis for this Complaint.

Initially, Dr. Krolik alleged claims for age discrimination under the Rehabilitation Act.

In his Amended Complaint, Dr. Krolik eliminated the age discrimination Complaint and

subsequently agreed to dismissal of the Rehabilitation Act claim.  Accordingly, the claim

before the Court is based on the ADA.

On July 11, 2005, Dr. Krolik filed a Motion for Preliminary Injunction requesting

the Court grant a Preliminary Injunction requiring that he receive accommodations under

Title III of the ADA, 42 U.S.C. § 12189.  Substantial briefing and an evidentiary hearing

took place on that issue.  The Court issued an Order on the Request for Preliminary

Injunction on January 19, 2006.  In that Order, the Court stated that, "Dr. Butterbaugh

believed the Plaintiff has Attention Deficit Disorder and Attention Deficit Hyperactivity

Disorder (ADD/ADHD)."  He claims that, "this limits the Plaintiff's major life activities

of working and learning."  As part of its ruling, the Court indicated,

> There is a conflict in the evidence on whether the Plaintiff has ADD/
> ADHD.  But even if a fact finder concluded that he has it, there is no
> evidence the Plaintiff has been limited in the major life activities of
> working and learning.

Based on the discovery completed between the parties, Dr. Krolik withdraws his

request for damages under Title III of the ADA, 42 U.S.C. 12131.  Accordingly, Dr.

Krolik's remaining claim is a request for test taking accommodations under the specific

provisions of Title III of the ADA, 42 U.S.C. § 12189.  Further, since there is no claim

for damages, the basis for Dr. Krolik's request for a jury trial is also eliminated by his

decision based on discovery.

The federal system of notice pleading, under Fed. R. Civ. P. 8(a), requires that a "pleading which sets forth a claim for relief…shall contain…a short and plain statement of the claim showing that the pleader is entitled to relief."  Accordingly, the Court should consolidate the evidence from the Preliminary Injunction Hearing with the evidence of the final hearing on the merits in making its determination of Dr. Krolik's claim. "[Under] the liberal system of 'notice pleading' set up by the Federal Rules[,] Rule 8(a)(2)…do[es] not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lee v. City of Los Angeles,* 250F.3d 668 (9th Cir. 05/04/2001), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)." citing and *Swierkiewicz v. Sorema N. &NBSP; A*, 534 U.S. 506 (2002).

In their Motion for Summary Judgment, the Defendants improperly suggest that the basis for Dr. Krolik's claims should be limited to the major life activity of working.

In response, Dr. Krolik states that he first indicated in his January 27, 2005 Complaint that the basis for his NBME claim was that he was disabled.  Defendant requested in its October 20, 2005 First Set of Requests for Admissions, Interrogatories and Requests for Production of Documents No. 6; "Concerning the first claim of relief in the First Amended Complaint, identify each and every act that you contend constitutes a violation of the Americans With Disabilities Act, a detailed description of the alleged act, who made or took such act, the date of such act, and the duration of such act and identify others who were present."  Dr. Krolik's response was indicated on November 23, 2005 that Dr. Butterbaugh's second report supported his claim and that "Dr. Butterbaugh

demonstrated that Dr. Krolik's major life activities of working and learning are substantially limited.  Dr. Krolik's testing, study habits, not finishing exams, and not sitting and reading substantially limits his major life activity of working and learning." This interrogatory response was also attached to the Defendant's opposition to Preliminary Injunction.  The testimony of Dr. Gordon and Mr. Doane both confirmed that they considered Dr. Krolik's request, as supported by Dr. Butterbaugh and Dr. Wurzlow, to be typical of a request that they receive, which primarily involves learning and reading as major life activities.  The understanding that the ADA claims are based on disabilities involving major life activities of learning, reading and working is confirmed by Dr. Krolik's application for accommodations, the correspondence relating to the application, the review form by Dr. Gordon of the application, Dr. Gordon's expert testimony, Dr. Gordon's deposition, Dr. Gordon's testimony at the Preliminary Injunction Hearing, the written discovery directly on this issue answered by the Plaintiff, the issues that were tried at the Preliminary Junction Hearing and the Order of this Court resulting from the Preliminary Injunction Hearing.

In addition, based on the Court's Order on Dr. Krolik's Motion to Compel, which required that the Defendants provide a random sample of 40 ADHD accommodation requests, it is clear that in many cases the accommodations are granted without reference to any specific major life activity.  In fact, Mr. Doane and Dr. Gordon have testified that no specific criteria, other than the DSM-IV Diagnostic Criteria are typically applied to determine if an ADHD accommodation request provides evidence of impairment of a major life activity.  Thus, it appears NBME's practice, as Dr. Krolik contends for purposes of determining this Motion and trial on the merits, that NBME does not, in fact,

11

undertake a two-part test as they have argued in their legal pleadings.  NBME argued at the Preliminary Injunction Hearing that the Court should first look at the diagnosis and then determining whether the applicant demonstrates a major impairment to a major life activity.  However, contrary to its legal position, the actual position of the NBME is that the DSM-IV criteria itself address major life activities and a diagnosis of ADHD using that criteria is sufficient to establish a "disability" under the ADA and to support a grant of reasonable accommodations.  Thus, it appears that NBME's practice establishes that a diagnosis of ADHD that satisfies the DSM-IV criteria is substantial and sufficient evidence that the applicant has a disability and justifies an accommodation because a person with a valid diagnosis of ADHD is disabled by, "Being regarded by having such an impairment."  42 U.S.C. § 12102(s)(C).

## III.  ARGUMENT

The Ninth Circuit standard for summary judgment for an ADA claim is whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact., *McAlindin v. County of San Diego*, No. 97-56787 (9th Cir. 09/16/1999)  As the Defendant states in its Motion for Summary Judgment, "…most disability cases are rife with issues of fact created by opposing expert witnesses…"  A review of the applicable statutory authorities, combined with the NBME practice, demonstrate that this is precisely the type of case in which factual issues are presented that require a trier of fact to consider Plaintiff's request for a testing accommodation based on his alleged disability under the NBME and requires a trial on the merits.

      A.  <u>NBME accepts and recognizes that ADHD is a physical or mental impairment that substantially limits one or more of the major life activities of an individual; 42 U.S.C. § 12102(2)(A).</u>

Pursuant to 42 U.S. C. § 12102(2)(A), the ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  The NBME accepts that ADHD can constitute a physical or mental impairment that substantially limits one or more major life activities to such an individual or that ADHD applicant's condition and diagnosis of ADHD can result in the applicant "being regarding as having such an impairment."

      B.  <u>NBME accepts and recognizes that an individual with a ADHD diagnosis</u>
           <u>is being regarded as having such an impairment; 42 U.S.C. § 12102(2)(C).</u>

Based on Plaintiff's Motion to Compel in December 2005, the Court ordered Defendant to produce a random sampling of forty files from the total 900 who requested ADHD accommodation to take Step 1 and Step 3 of the medical licensing exam.  In March 2006 the forty random samples were produced and the files identified the evaluator, whether or not an accommodation was granted, and the rationale for the determination. In reviewing the discovery provided by NBME indicating the results for applications for accommodations based on ADHD, it is clear that continuing issues of material fact exist as to whether or not Dr. Krolik has a disability as defined by 42 U.S.C. 12102(2)(A) or 42 U.S.C. 12102(2)(C).  Attached to the Plaintiff's statement of additional facts are the forty random results.  As testified by Mr. Doane, many of these accommodation requests from applicants were denied because the application requests were incomplete or withdrawn.  Thus, the percentage of persons that complete and pursue applications to a decision is actually higher than the NBME indicated by the raw percentages.  In the circumstances in which Dr. Gordon reviewed applications, Dr.

Gordon also reviewed Dr. Krolik's application, Dr. Gordon granted 4 accommodations out of 14 requests. (See 40 Random Sample Applicants of NBME, Exhibit M)

Mr. Doane indicated that the summaries of the basis for the accommodations were adequately supported in discovery responses provided.  In reviewing those responses, it is clear that the primary consideration was reviewing and applying the DSM-IV criteria.  It is clear that the main difference in the determination of the diagnosis for Dr. Krolik by Dr. Butterbaugh and Dr. Gordon based on the nature of the documentation required to establish a diagnostic criteria.  However, neither Dr. Gordon nor Mr. Doane has evidence that the documentation that they require would or could in fact be available for Dr. Krolik given his age.  As explained by Dr. Butterbaugh in his deposition and according to his Affidavit, which is part of the record from the Preliminary Injunction, and his recent deposition testimony, which is attached, the type of documentation required showing impairment or difficulty beginning with early education and continuing through secondary, graduate and post graduate education would not necessarily be available because of the time when Dr. Krolik was educated.  The diagnosis of ADHD was not available when Dr. Krolik was in school in the early 1950s through the 1960s.  Special education programs were unavailable.  Thus, the type of documentation that NBME requests and requires to establish a diagnosis is not appropriate and the fact finder should determine whether the evidence that is available and the expert testimony on whether that evidence should be sufficient in light of Dr. Krolik's age and related circumstances requires a factual determination.

     C.  <u>There are issues of material fact as to whether Plaintiff is Entitled to Relief Because He is Disabled Under the ADA.</u>

The Ninth Circuit standard of review for consideration of whether a given condition constitutes a disability under 42 U.S.C. § 12102(2)(A) requires three inquiries: (1) whether Dr. Krolik's condition is a physical or mental impairment, (2) whether the life activity as to which Dr. Krolik alleges his is limited is a major life activity, and (3) whether the impairment substantially limits the identified major life activity.  *Wong v. Regents of the University of California*, 410 F.3d 1052 (9th Cir. 06/06/2005).  Continuing issues of material fact exist as to whether or not Dr. Krolik has a disability as defined by 42 U.S.C. § 12102(2)(A) or 42 U.S.C. § 12102(2)(C).  Issues of material fact exist as to whether or not Dr. Krolik has demonstrated that his condition of ADHD is a mental impairment, and that the life activities of learning, reading, and working are major life activities, and that ADHD substantially limits the major life activities of learning, reading, and working.

> D.   There are issues of material fact as to whether Dr. Krolik Has Proven That He Suffers From a Mental or Physical Impairment.

The NBME accepts that ADHD can constitute a physical or mental impairment that substantially limits one or more major life activities to such an individual or that an ADHD applicant's condition and diagnosis of ADHD can result in the applicant "being regarded as having such an impairment.  Two of the three ADHD evaluators of Dr. Krolik, Dr. Butterbaugh and Dr. Wurzlow, diagnosed Dr. Krolik with having ADHD. (Letters and consultant's reports of Dr. Gayle F. Wurzlow, M.D.)(Report of Dr. Grant Butterbaugh, Ph.D.) The third ADHD evaluator of Dr. Krolik, Dr. Pamela Hoblit, was unsure of the ADHD diagnosis and recommended that Dr. Krolik be seen by a psychiatrist with expertise in Adult ADHD.  "Given his life experiences of success and accomplishment and his personality style of maintaining a confident, self-determined and

decisive approach, he may have had a reluctance (possibly unconscious) to admit to the types of deficits associated with Attention Deficit Hyperactivity Disorder.  Therefore, it seems appropriate for him to pursue further evaluation". (Dr. Pamela R. Hoblit, Ph.D. report)  Dr. Krolik was also seen for medication management of attention deficit hyperactivity disorder with Dr. Vicki A. Alberts, M.D.  Dr. Alberts reported in her treatment plan for the assessment of ADHD for Dr. Krolik that "Dr. Krolik would likely benefit from a long standing stimulant medication to help with inattention and concentration and the risks, benefits, and side effects of Concerta were discussed. (Report of Dr. Vicki Alberts, M.D.)

     E.   <u>There are issues of material fact as to whether Plaintiff Has Proven That His Alleged Impairment Limits a "Major Life Activity."</u>

The Defendant improperly suggests that the basis for Dr. Krolik's claims should be limited to the major life activity of working.  Throughout this entire claim, from the initial letter writing between Dr. Krolik and Mr. Doane requesting an ADA accommodation, to the ADHD evaluations done by ADHD experts and authorities, to ADHD testing, to the allegations in Plaintiff's Amended Complaint, and throughout the voluminous discovery, it has been stated, confirmed, and disclosed, that Dr. Krolik's impairment of ADHD limits the major life activities of learning, reading, and working. The issue is whether ADHD limits Dr. Krolik;s major life activities of learning, reading, and working.   Each of these activities qualifies as a "major life activity" for determining whether a person is disabled under the Act(s). *Wong v. Regents of the University of California*, 410 F.3d 1052 (9th Cir. 06/07/2005).

     F.   <u>There are issues of material fact as to whether Plaintiff Has Proven That He is Substantially Limited In a Major Life Activity</u>.

There are issues of material fact as to whether Dr. Krolik has shown that he is substantially limited in the major life activities of learning, reading, and working.  "To qualify as disabled, a claimant must…show that the limitation on the major life activity is 'substantial'… 'Major life activities' thus refers to those activities that are of central importance to daily life."  *Wong,* citing *Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002).  Defendant cites to dicta of the *Wong* Court that are individual opinions of a judge which do not embody the resolution or determination of the court, in arguing, "whether his impairment substantially limited his ability to [perform a major life activity] as a whole, for purposes of daily living, as compared to most people." *Wong II,* 410 F.3d at 1065.   In the evaluation of Dr. Krolik on the issue of whether ADHD has substantially limited a major life activity, Dr. Butterbaugh concludes:

"Dr. Krolik has relative neuropsychological strengths in his expressive/receptive oral language, oral phonics, single word reading, expressive written language, math, simple verbal/nonverbal memory, motor-free spatial-perceptual, simple sensory-motor, and reported adaptive living skills. He has unusual compensatory attention skills for brief periods during which he can attend or concentrate better than is typical for persons with ADHD.  However, this compensatory capacity does not eliminate his reading comprehension or daily organization and learning efficiency deficits.  Dr. Krolik has relative neuropsychological weakness in his reading comprehension, complex verbal/design memory/retrieval, handwriting, complex design copying, and consistent organization/attentional control skills.  Dr. Krolik's personal frustration reflects distress from his likely anger/embarrassment form not overcoming his disabilities through hard work, which had previously worked well for him.  Thus, the acquisition of professional information via reading will continue to be impractical or unlikely, especially for lengthy periods or tasks.  Likewise, day-to-day organizational and efficient completion of professional demands will continue to be difficult for him because of his poor self-control, especially in settings with rapidly changing or demanding reading comprehension and task organizational demands." (Exhibit I, Dr. Grant Butterbaugh, Affidavit, July 8, 2005)

## IV.  CONCLUSION

In conclusion, as the Court indicated in its Preliminary Injunction ruling, there is strongly disputed testimony regarding Dr. Krolik's ADHD diagnosis.

There are genuine issues of material fact as to whether or not a diagnosis of ADHD of Dr. Krolik is sufficient to entitle him to an accommodation.

In his testimony, Mr. Doane indicated that the NBME attempts to level the playing field for persons with disabilities.  He indicated that they attempt to do this by applying a uniform standard to all applicants.  He indicated that for ADHD the method for applying this uniform standard is primarily to use the DSM-IV criteria.  This testimony is similar to that of Dr. Gordon's, NBME's ADHD expert and NBME evaluator for ADA accommodations requests.  In fact, Dr. Gordon indicated that he is not qualified to recommend or deny an ADA based accommodation based on ADHD or anything other than DSM-IV criteria.  Dr. Gordon specifically indicated that his determinations were not based on understanding of the ADA requirements for major life activities.  He indicated he was unfamiliar with the definition of major life activities.  Accordingly, Dr. Gordon's testimony indicates a factual issue as to whether or not an ADHD diagnosis application based on DSM-IV criteria is sufficient to establish if an applicant is disabled because the NBME considers persons diagnosed with ADHD as "being regarded as having such an impairment."

Although Mr. Doane indicated that he performed some level of summary review of Dr. Gordon's recommendation, he indicated that he has never set aside or reversed a recommendation for an accommodation and has granted accommodations in limited circumstances where Mr. Gordon did not recommend it.  In addition, as his testimony indicated, Mr. Doane relied heavily on Dr. Gordon's analysis, in fact, as the basis of Dr. Krolik's, Mr. Doane quoted directly from Dr. Gordon's report to him.

Because Dr. Gordon has recommended numerous accommodations based on ADHD for test taking accommodations presented to the NBME, all without any reference or understanding of 42 U.S.C. 12102(2)(A) and in reviewing the evidence in the light most favorable to the Plaintiff, as required in *McAlindin, supra*, we strongly suggest that Dr. Krolik's only showing should be to persuade the trier of fact that he is properly diagnosed as having ADHD pursuant to the DMS-IV criteria and having the trier of fact make such determination based on NBME's practice, Dr. Krolik is disabled pursuant to 42 U.S.C. 12102(2)(C).

The determination is whether a 62-year-old man, who has been self-employed and thus, able to control his working environment, for the majority of his life, has subsequently completed a foreign medical school program, which does not enforce timed test limits and does not have rigorous application requirements, both provide a factual basis to indicate that Dr. Krolik has not overcome impairments of his ADHD, but rather has avoided the circumstances in which such impairments would have been obvious and limiting.  However, Dr. Krolik is entitled to attempt to follow his long career as a self employed businessman, plus his foreign medical experience with an opportunity to take the National Board of Medical Examination on a level playing field with other applicants. The NBME requires that persons providing these types of tests provide accommodations to disabled parties.  The NBME recognizes requirements as set forth in procedures to provide such an opportunity under the ADA.  The NBME disability evaluators, such as Dr. Gordon, focus heavily, if not exclusively, on the DMS-IV criteria for diagnosing ADHD.  The NBME review process focuses on a case by case analysis that does not include any appropriate adjustment or consideration of the type of documentation that

would be available for persons like Dr. Krolik who went to grade school, high school,

and undergraduate at a time when the ADHD and ADA were non-existent.

The NBME has failed to demonstrate the absence of genuine issues of material fact

and that it is not entitled to judgment as a matter of law on the issues of whether Dr.

Krolik actually has a substantially limiting impairment, as covered by 42 U.S.C. §

12102(2)(A), and as to whether the NMBE regarded him as having such an impairment,

as covered by 42 U.S.C. § 12102(2)(C).

DATED this <u>25th</u> day of May 2006.

Respectfully submitted,

DOMENICI LAW FIRM, P.C.

<u>S/ Pete V. Domenici, Jr., Esq.</u>
PETE V. DOMENICI, JR., Esq.
Attorney for Plaintiff
320 Gold Avenue SW, Suite 1000
Albuquerque, New Mexico 87102
(505) 883-6250 office
(505) 884-3424 fax.

I hereby certify that a true and correct
Copy of the foregoing was electronically transmitted
To the Clerk's Office using the CM/ECF System for filing
On this 25th day of May 2006 and I certify that a true and correct
Copy of the foregoing was mailed by overnight mail

this 25th day of May 2006 to:

Diane M. Johnsen, Esq.
Attorneys for National Board of Medical Examiners
OSBORN MALEDON, P.A.
2929 North Central, Suite 2100
Phoenix, Arizona 85012-2794

S/ Pete V. Domenici, Jr., Esq.
PETE V. DOMENICI, JR., Esq.