DEC-19-2003  17:20      LSUHC PSYCHOLOGY      504.33.58261      P.17/17

medical and psychiatric disorders) were identified that could provide plausible, alternative explanations for his chronic learning, self-control, and reading comprehension impairments.

Dr. Krolik has excellent motivation with which to succeed if he is permitted modest test-taking accommodations. Accommodations should include extended test-taking time (e.g., 1.5-2 times the usual test-taking time per subtest), testing to be completed in a quiet room, and paper-and-pencil- rather than computer-administered testing (the latter so that he can complete test questions more slowly and carefully with extra time and with the use of highlighting key test words or phrases).  Further, given his past and currently well-documented below average reading comprehension skills, Dr. Krolik also may benefit from a proctor orally reading test questions while he simultaneously reads and answers the same test questions, during the typical computer-administered STEP exam. These accommodations are relevant in regard to his inattentive and distractible reading and learning challenges and are necessary to minimize any possible unfair evaluation of his professional competencies. Of course, given changes in your policies about the use of grade-based reading norms, his accommodations may need to be based on his ADHD-related learning disability rather than on his poor reading comprehension.

Please contact me if you have any concerns or questions about this motivated health professional. Certainly, I believe that it is legally unfair to require a student raised in the 1950s and 1960s to produce adequate documentation of diagnostic and treatment services for past and current learning or hyperactivity impairments for diagnoses that were not known or adequately identified or treated by many physicians, educators or parents at the time of his childhood. Again, no other plausible alternative explanations were found for others' (and our own) conclusions that he has attentional/inhibitory control- (and reading-) related disabilities that substantially limit his adult learning. We hope that this letter and related report will provide support for Dr. Krolik's request for what can only be described as reasonable test-taking accommodations.

Sincerely yours,

*[signature]*

Grant Butterbaugh, Ph.D.
Associate Clinical Professor
LSUHSC-Psychiatry, Room 235F
1542 Tulane Ave.
New Orleans, LA 70112-2822
504-568-3068 (o)
gbutte@lsuhsc.edu

Revised after phone conversation with Mr. Doane, NBME, on 12-19-03.

NBME00062

FROM :                         PHONE NO. :                    Dec. 11 2003 11:55AM P1

12/11/03

FRoM:

RALPH KROLIK MD.

CISOXE # 0-546-768-3

To whom it May Concern:

Dr Grant Butterbrugh Has
(of LSU)
Permission to speak on my behalf,
negotiate on my behalf, and to
represent me in any way he sees
if it. You will pleae assist him
on any way he deems necessary.

Thank you

Ralf Elrolik MD.

RECEIVED

DEC 1 1 2003

Disability Services

NBME00063



# Health Sciences Center

NEW ORLEANS

School of Medicine
School of Dentistry
School of Nursing
School of Allied Health Professions
School of Graduate Studies

School of Medicine
Department of Psychiatry

Mr. J. Abram Doane
Office of Test Accommodations
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3190

12-19-03

**RECEIVED**

DEC 3 0 2003

Dear Sir:

**Disability** Services

I am pleased to respond in writing to recommend that **Dr. Ralph Krolik (ECFMG# 0-546-768-3)** should be considered eligible for accommodations because he has current and chronic, past "substantial limitations in a major life activity such as learning" according to the Americans with Disabilities Act of 1990 (ADA). Thus, I believe that he is qualified to receive testing accommodations for the USMLE Step exams or other professional exams. I have attached my current educational and neuropsychological evaluation report that integrates conclusions from his medical and educational records.

In response to your letter to Dr. Krolik on 11-10-03, I have included age-based standard and / or scaled scores for the WAIS-III. However, I would like to register my strong objection about the relevance of these subtest scores as a required basis for the diagnosis of any or all learning disorders.

Further, the achievement scores in my report are current in that scores were obtained within the past 3 years. In addition, the standardized scores from the Nelson-Denny Reading Test were previously included in my original report, although you now require age-based standardized scores. Although previous NBME guidelines have listed the Nelson-Denny Reading Test among the examples of appropriate reading tests, the Nelson-Denny Reading Test has only provided grade-based norms and has never had age-based norms. After talking with you on 12-19-03, I have obtained my reported scaled scores on "Raw Score to Scale Score (SS) to Grade Equivalent (GE) Conversions" table for Form G on page 21 and on "Raw Score to Scale Score Conversions Reading Rate for Forms G and H" table on page 23 of the "Nelson-Denny Reading Test Manual for Scoring and Interpretation" (Brown et al 1993). There are no pooled norms listed in the Technical Manual in contrast to your recommendations. Of course, I hope that your revised recommendations is not retroactively applied to this and other cases after their evaluations have been completed.

Finally, Dr. Krolik went to elementary and high school before special education laws and services existed. Therefore, it is impossible to expect that he would have school-based evaluation and remediation documents. However, his report cards and school records do indicate symptoms commonly associated with ADHD, consistent with his symptoms during college and during our examination.

Louisiana State University Health Sciences Center • 1542 Tulane Avenue, Box T4-6 • New Orleans, Louisiana 70112-2825
phone (504) 568-6001  fax (504) 568-8647  www.lsuhsc.edu

NBME00029



To fulfill requirements, NBME guidelines appear to require documentation of my qualifications to diagnose Dr. Krolik's as having a previously undiagnosed (but clinically and educationally significant) ADHD and Reading Disorder. I was fortunate to train with one of the pioneers in neuropsychological research on childhood learning disorders, Dr. Byron Rourke, at the University of Windsor and, subsequently, with his colleagues in the Division of Neuropsychology at Henry Ford Hospital (Detroit), and in the Division of Neuropsychology at the University of Michigan (Ann Arbor). For over 17 years, I have taught physicians, psychologists, and educators about differential diagnosis, assessment, treatment, and neurological bases of ADHD and LD, as well as other neurologic and psychiatric disorders in adults and children. Please contact me if you require further information about my qualifications.

We utilized current, or recent pre-existing, test results from standardized, appropriately norm-referenced neuropsychological and educational tests, including the WAIS-III, Nelson-Denny Reading Test 3-E, as well as abbreviated Revised-Woodcock-Johnson Tests of Achievement (i.e., without Passage Comprehension and Word Identification subtests) and R-WJ Tests of Cognition (Spatial Relations and Listening Comprehension subtests). Naming and word fluency as well as design copying and design fluency test results were considered to clarify hemispheric motor-dependent processing skills upon which verbal and nonverbal recall/memory skills are based. Nonverbal (WAIS-III Matrix Reasoning) and verbal (WAIS-III Similarities and Comprehension) conceptual reasoning and rapid mental search/shifting or inhibition (Trail Making Tests) were assessed within the context of other more fundamental skills. Given this person's history of possible traumatic brain injury, standard sensory-perceptual (unilateral followed by bilateral simultaneous tactile, auditory, and visual stimulation) and fine motor (rapid unilateral manual pegboard placement) exams were utilized as well. Please contact me if you require further information about these and other related standard neuropsychological and psychological tests that I utilized. Briefly, Dr. Krolik exhibits learning/recall deficits as well as graphic design copying/handwriting eligibility problems, consistent with co-morbidities sometimes associated with ADHD and Reading Disorders.

As for considering prior history and differential psychiatric or developmental disorders, an extended interview was completed regarding his educational, psychosocial, work, medical, and mental status. In addition, patient-completed rating scales were used to evaluate the presence of any personality, mood, anxiety, thought/perceptual (e.g., mental status interview, Social Phobia & Anxiety Inventory, and MMPI-II tests) and attention deficit (e.g., Barkley & Murphy's Childhood and Current Symptoms Scales, as well as Brown's ADD Scale-Adult self-report version) disorders. Collateral rating scales (e.g., Barkley & Murphy's Current Symptoms Scale-Other Report Form, as well as Brown's ADD Scale-Collateral-report version) were administered to his spouse, an adult psychiatry resident at the time of this evaluation, as additional validity checks of his current self-ratings. Thus, verification was obtained for the seriousness of his clinically significant limitations in the major life activity of learning due to his past and current inhibitory control and distractibility impairments.

In regard to his academic or literacy skills, Dr. Krolik obtained a below average reading comprehension score on the Nelson-Denny Reading Test (based on grade norms), when compared to his peers. If age-based norms were available, then Dr. Krolik may not have obtained a below average standardized score as fewer adults of his age

NBME00030



would have 4 or more years of college education. However, his clinically significant reading and attentional disorders were validated by the independently obtained reports of his frequent pharmacy school "study buddy," Mr. Sona. Mr. Sona reported that Dr. Krolik could only learn via "conversational studying" rather than from reading text books. Early childhood comments by Dr. Krolik's teachers indicated problems with reading, inattention, concentration or effort (but they did not indicate that he had any conduct problems), consistent with his current ADHD and reading comprehension impairments. No clear individualized testing results from early grade school were available (or would be expected), given the absence of special education and pediatric health evaluations and treatment services for reading and hyperactivity disorders in the 1950s when Dr. Krolik was a child.

The results from this evaluation and review of available records and clinical measures were used to determine whether or not Dr. Krolik exhibited educationally significant impairments in these major life activities via clinical history, test results and decision making. Certainly, there is no professional consensus or "gold standard" that defines a "reasonable" evaluation or record review in regard to adult ADHD (Erhardt, Epstein, Connors, Parker, and Sitarenios 1999; Connors et al 1999), though we have used current NBME guidelines when possible. In Dr. Krolik's case, there was a well-known absence of professional knowledge of reading and hyperactivity disorders at the time of his childhood education in the early 1950s & 1960s. Further, federal laws concerning learning and behavioral disabilities did not exist until 1973-1975, in the decade after he started college. *Given the deficient professional and lay knowledge about these disorders and related treatments during his childhood and young adult years, the absence of diagnostic and treatment documentation in his available past childhood school and medical record would be expected, and, therefore, should not be used against him at this time.*

As stated in my report, Dr. Krolik's report, my own collateral interview results, and the ratings of his cousin and a close pharmacy school classmate, as well as educational record review confirmed, that he has had and currently has substantial limitations in reading/listening comprehension as well as attention and efficient/organized learning limitations throughout his childhood and adult years. His reading-related difficulties were apparent from an early age and from standardized college, graduate, and medical school entry exam scores.

Dr. Krolik also experienced difficulties in sustaining simple attention, impulse control, and learning efforts while learning as a primary and secondary student as well as in his post-secondary education. Certainly, he fell in the clinically significant range for ADHD (combined type) on current and retrospective self-report scales, with some confirmatory collateral reports or documentation by others (i.e., his spouse, pharmacy school "study buddy," older cousin, and in his available childhood educational records). *Given the changes in NBME guidelines (discussed above) regarding the previously recommended Nelson-Denny Reading Test, Dr. Krolik's eligibility for test-taking accommodations should be based on his ADHD- rather than his reading-related learning disability.*

There is little doubt about the functional significance of his learning impairments in reading/listening comprehension, attention, and impulse control skills, despite his compensatory attempts to overcome these impairments. No other relevant psychiatric, psychosocial, motivational, or medical disorders (including traumatic brain injury or other



duplicate page

NBME00032



would have 4 or more years of college education.  However, his clinically significant reading and attentional disorders were validated by the independently obtained reports of his frequent pharmacy school "study buddy," Mr. Sona.  Mr. Sona reported that Dr. Krolik could only learn via "conversational studying" rather than from reading text books. Early childhood comments by Dr. Krolik's teachers indicated problems with reading, inattention, concentration or effort (but they did not indicate that he had any conduct problems), consistent with his current ADHD and reading comprehension impairments. No clear individualized testing results from early grade school were available (or would be expected), given the absence of special education and pediatric health evaluations and treatment services for reading and hyperactivity disorders in the 1950s when Dr. Krolik was a child.

    The results from this evaluation and review of available records and clinical measures were used to determine whether or not Dr. Krolik exhibited educationally significant impairments in these major life activities via clinical history, test results and decision making.  Certainly, there is no professional consensus or "gold standard" that defines a "reasonable" evaluation or record review in regard to adult ADHD (Erhardt, Epstein, Connors, Parker, and Sitarenios 1999; Connors et al 1999), though we have used current NBME guidelines when possible. In Dr. Krolik's case, there was a well-known absence of professional knowledge of reading and hyperactivity disorders at the time of his childhood education in the early 1950s & 1960s.  Further, federal laws concerning learning and behavioral disabilities did not exist until 1973-1975, in the decade after he started college. *Given the deficient professional and lay knowledge about these disorders and related treatments during his childhood and young adult years, the absence of diagnostic and treatment documentation in his available past childhood school and medical record would be expected, and, therefore, should not be used against him at this time.*

    As stated in my report, Dr. Krolik's report, my own collateral interview results, and the ratings of his cousin and a close pharmacy school classmate, as well as educational record review confirmed, that he has had and currently has substantial limitations in reading/listening comprehension as well as attention and efficient/organized learning limitations throughout his childhood and adult years.  His reading-related difficulties were apparent from an early age and from standardized college, graduate, and medical school entry exam scores.

    Dr. Krolik also experienced difficulties in sustaining simple attention, impulse control, and learning efforts while learning as a primary and secondary student as well as in his post-secondary education.  Certainly, he fell in the clinically significant range for ADHD (combined type) on current and retrospective self-report scales, with some confirmatory collateral reports or documentation by others (i.e., his spouse, pharmacy school "study buddy," older cousin, and in his available childhood educational records). *Given the changes in NBME guidelines (discussed above) regarding the previously recommended Nelson-Denny Reading Test, Dr. Krolik's eligibility for test-taking accommodations should be based on his ADHD- rather than his reading-related learning disability.*

    There is little doubt about the functional significance of his learning impairments in reading/listening comprehension, attention, and impulse control skills, despite his compensatory attempts to overcome these impairments. No other relevant psychiatric, psychosocial, motivational, or medical disorders (including traumatic brain injury or other

NBME00033



medical and psychiatric disorders) were identified that could provide plausible, alternative explanations for his chronic learning, self-control, and reading comprehension impairments.

Dr. Krolik has excellent motivation with which to succeed if he is permitted modest test-taking accommodations. Accommodations should include extended test-taking time (e.g., 1.5-2 times the usual test-taking time per subtest), testing to be completed in a quiet room, and paper-and-pencil- rather than computer-administered testing (the latter so that he can complete test questions more slowly and carefully with extra time and with the use of highlighting key test words or phrases). Further, given his past and currently well-documented below average reading comprehension skills, Dr. Krolik also may benefit from a proctor orally reading test questions while he simultaneously reads and answers the same test questions, during the typical computer-administered STEP exam. These accommodations are relevant in regard to his inattentive and distractible reading and learning challenges and are necessary to minimize any possible unfair evaluation of his professional competencies. Of course, given changes in your policies about the use of grade-based reading norms, his accommodations may need to be based on his ADHD-related learning disability rather than on his poor reading comprehension.

Please contact me if you have any concerns or questions about this motivated health professional. Certainly, I believe that it is legally unfair to require a student raised in the 1950s and 1960s to produce adequate documentation of diagnostic and treatment services for past and current learning or hyperactivity impairments for diagnoses that were not known or adequately identified or treated by many physicians, educators or parents at the time of his childhood. Again, no other plausible alternative explanations were found for others' (and our own) conclusions that he has attentional/inhibitory control- (and reading-) related disabilities that substantially limit his adult learning. We hope that this letter and related report will provide support for Dr. Krolik's request for what can only be described as reasonable test-taking accommodations.

Sincerely yours,

Grant Butterbaugh, Ph.D.
Associate Clinical Professor
LSUHSC-Psychiatry, Room 235F
1542 Tulane Ave.
New Orleans, LA 70112-2822
504-568-3068 (o)
gbutte@lsuhsc.edu

Revised after phone conversation with Mr. Doane, NBME, on 12-19-03.



NBME00034



# Health Sciences Center

NEW ORLEANS

School of Medicine
Department of Psychiatry

School of Medicine
School of Dentistry
School of Nursing
School of Allied Health Professions
School of Graduate Studies

**RECEIVED**

**DEC 3 0** 2003

**Disability Services**

## NEUROPSYCHOLOGICAL AND EDUCATIONAL EVALUATION

| | | | |
|---|---|---|---|
| Name: **Dr. Ralph Krolik** | Gender: | Male |
| Age: 56 years old | DOB: | 11-22-44 |
| DOT: 2-23-01 | Education: | Medical school graduate |
| **ECFMG# 0-546-768-3** | | |

Dr. Krolik is a 56-year-old male who was referred for neuropsychological assessment of his diagnostic and treatment needs, related to whether or not he has lifelong learning difficulties and related to the exact nature of his disabilities, if any exist. Previous and relatively recent psychiatric evaluation by G. Wurzlow MD at Ochsner Foundation Hospital in New Orleans resulted in diagnosis and medication treatment of his ADHD.    However, a subsequent psychological evaluation by P. Hoblet PhD did not indicate a "high probability" of ADHD from Dr. Krolik's self-reported symptoms (despite the collateral report of clinically significant ADHD symptoms from his spouse, who was an adult psychiatry resident at the time). It is important to emphasize that Dr. Hoblet did not conclusively rule out ADHD. Curiously, Dr. Hoblet did not administer a reading comprehension test, despite Dr. Krolik's presenting complaints of slow and inaccurate reading problems. The ECFMG previously denied Dr. Krolik's past request for previous test accommodations, in spite of Dr. Wurzlow's diagnosis of ADHD and recommendation for disability-related test-taking accommodations. *( A recent letter from the NBME requested that subtest scores (e.g., WAIS-III) and age-based standard scores should be added to this report. In response as noted in my letter on this matter, I would like to repeat here my strong objection to the relevance of WAIS-III subtest scores in the diagnosis of any or all learning disabilities, the retrospective application of new NBME recommendations about the Nelson-Denny Reading Test (with its grade-based norms), and the retrospective application of current ADHD and Reading Disorder diagnostic methods to the presence or absence of evidence of childhood ADHD in educational records dating back to the 1950's and 1960's when special education laws and services did not yet exist.* )

Dr. Krolik's childhood report cards, letters to/from ECFMG, Dr. Wurzlow's letter to ECFMG, Dr. Hoblet's report and raw data from a 1998 evaluation were reviewed. Further, both an older cousin (Gerald Krolik) who knew Dr. Krolik's behavior as a child as well as a pharmacy school classmate (Jack Sona) who knew his behavior as an adult were interviewed about their recollections of Dr. Krolik's behavior. As Dr. Krolik's parents are no longer living, their retrospective behavioral ratings of his childhood behavior cannot be obtained to assess his early childhood behavioral characteristics at home. His childhood educational records were reviewed, as mentioned.



Louisiana State University Health Sciences Center • 1542 Tulane Avenue, Box T4-6 • New Orleans, Louisiana 70112-2825
phone (504) 568-6001  fax (504) 568-8647  www.lsuhsc.edu

NBME00035

**Developmental and Medical History:**
Dr. Krolik has a reported history of spina bifida occulta (without known neurological impairments), two previous knee surgeries from sports injuries, and successful treatment for leukemia that is currently in remission. Dr. Krolik has a history of possible mild concussive injury without clear neurological consequences (e.g., loss of consciousness) from a grenade explosion when he served in the military.

**Family and Social History:**
Dr. Krolik lives with his spouse. He has been previously married and has two adult children. He works as a pharmacist and his spouse is a resident in adult psychiatry. He is experiencing emotional distress related to his frustration from not passing his medical board exams. Additional family information is on file for clinical purposes.

**Educational History:**
Dr. Krolik graduated in 1996 from the School of Medicine at the American University of the Caribbean in Plymouth, Monserrat, B.W.I., and from the University of New Mexico in Pharmacy in 1969 (the latter with a 2.34 GPA). He has taken the USMLE 5 or 6 times, reportedly without ever completing all test questions. He has failed to pass the USMLE to date.

Review of his available grade and high school report cards revealed a history consistent with expected childhood underachievement associated with intermittent teacher-reported attention, reading, handwriting, and study skills problems. For instance, teacher comments from the 1st through 6th grades (1950-1956) complained of unsatisfactory reading, concentration, and/or attention problems, which were all the more notable because of teachers' comments about his unrealized potential. His teachers also mentioned his concurrent courteousness and earnest effort during this same period, which reduces the likelihood of severe conduct or emotional disturbances providing an alternative explanation for his attention/concentration and reading problems.

During the 1950's, educators' knowledge of evaluation and treatment of ADHD and reading disorders was limited. Given the well known lack of professional and parental knowledge about ADHD and the absence of special education laws or services at that time, it would be surprising if there were any childhood appraisal, diagnostic or treatment data in educational or health records concerning ADHD or Reading Disorders.

**Test Observations:**
During the assessment, Dr. Krolik was casually dressed and did not have any obvious atypical physical characteristics. He was cooperative and well motivated during testing, but he showed obvious and consistent high levels of inattention, impulsivity, and overanxiousness. He frequently started tasks before instructions were completed, became distressed and apologized when he made mistakes, and frequently failed to self-monitor and self-correct his performance on his own. His restlessness resembled the disinhibited behavior of a hyperactive school-aged child, with obvious impulsive and overactive behavior. He also frequently interrupted the examiners' comments or instructions, not from deliberate discourtesy, but rather from his own impulsiveness. Given his obvious cooperation, these results validly represent his current neuropsychological status; indeed, these results may overestimate his ability to use his skills in settings in which he does not receive consistent one-on-one instructions, encouragement, and redirection from others.

NBME00036



As Dr. Krolik was evaluated recently (11-12-98) and he has had no subsequent medical or psychiatric disorders prior to this current evaluation, his prior results from WAIS-III IQ and MMPI-II personality testing, as well as from his prior self- and spouse-reported ADHD rating scales will be considered, in addition to these current test results that are reported below.

**Test Results (standard deviations based on normative standardized scores):**

| Note: | | |
|---|---|---|
| | Average: | within ± 1 standard deviation |
| | Above Average: | ≥ 1 standard deviation above average |
| | Well Above Average: | ≥ 2 standard deviations above average |
| | Superior: | ≥ 3 standard deviations above average |
| | Below Average: | ≥ 1 standard deviation below average |
| | Moderate Deficit: | ≥ 2 standard deviations below average |
| | Severe Deficit: | ≥ 3 standard deviations below average |

As previously reported by Dr. Hoblet in November 1998, Dr. Krolik's WAIS-III results revealed obtained above average to average standard scores (within a 95% confidence interval) for Verbal (111-120), Performance (102-115), and Full Scale (109-117), with some interskill scatter. His working memory abilities appeared to be better developed than were his general verbal and perceptual-motor-related thinking abilities and knowledge. As Dr. Hoblet noted, this pattern is inconsistent with the typical "group" ADHD profile reported for the WAIS-III. However, the "typical" WAIS-III profile is not a requirement for meeting the diagnostic criteria for ADHD in DSM-IV. Further, it is well known that using all tests that some members of a subpopulation such as ADHD will not obtain an abnormal score despite having a diagnosis (i.e., reflecting a "false negative" decision error). Furthermore, his having lower verbal and perceptual-motor skills than working memory skills may reflect co-morbid motor coordination and subtle learning/language impairments that sometimes accompany ADHD (as are noted below in Dr. Krolik's current test performances). For what it is worth, this gentleman's WAIS-III subtest scores are reported below:

| | | | |
|---|---|---|---|
| Vocabulary | 12 | Picture Completion | 10 |
| Similarities | 9 | Digit Symbol-Coding | 11 |
| Arithmetic | 14 | Block Design | 10 |
| Information | 11 | Matrix Reasoning | 13 |
| Compreh'n | 11 | Picture Arrangement | 13 |
| Digit Span | 19 | | |

Dr. Krolik's language-related abilities in his receptive auditory verbal skills in comprehension of verbal passages were above average on the Revised-Woodcock-Johnson Listening Comprehension subtest. His expressive verbal abilities in picture naming and controlled verbal fluency were average to nearly above average, respectively. His verbal performances were remarkable because of the absence of obvious word finding/recall deficits. His above average listening comprehension is noteworthy, in contrast to his relatively poor reading comprehension skills, as will be discussed below.

Dr. Krolik's reading pooled scaled scores (mean = 200; sd = 25), as determined on the Nelson-Denny Reading Test, Form G, were average to well above average on the Vocabulary (252), Comprehension (213), and Reading Rate (218) subtests. His other academic skills, as reflected by age-based standard (mean = 100, sd = 15) and percentile scores on an abbreviated Revised-



Woodcock-Johnson Tests of Achievement, were well above average to average on the Word Attack (124; 95%), Dictation (105; 62%), Writing Samples (111; 78%), Calculation (132; 98%), and Applied Problems (121; 92%) subtests. Recall that his past psychological evaluation in 1998 did not assess reading comprehension, as only the WRAT-III, an academic screening measure but not a measure of functional literacy, was used to assess his oral reading of single words at that time. His reading comprehension and handwriting fell somewhat below his oral phonics, expressive writing, and math skills. Qualitative evidence was noted of excellent phonics knowledge, which is necessary in reading "phonetically regular" words, in spite of his slightly lower reading comprehension skills. Dr. Krolik's handwriting was not consistently legible, consistent with his self-reported lengthy history of graphic-motor difficulties. However, no calculation disability was noted.

Thus, graphic-motor and reading comprehension disorders were noted, consistent with his self-reported or documented childhood and current history of learning difficulties. Such reading comprehension impairments often result in affected persons learning more easily by listening rather than by reading new material to be learned in school, on the job, or at home. Certainly, this learning pattern was evident in Dr. Krolik's and others' observations of his better listening comprehension than reading comprehension. Initial and continuing professional testing requirements also require reading that can result in unfair measurement of affected persons' true professional knowledge as well. To minimize the latter possibility, disability-related test taking accommodations are granted to minimize the likelihood of underestimating his professional knowledge and skills. Thus, both his past and future learning via continuing professional training as well as on-the-job literacy requirements could be affected to some degree via reading (as well as based on poor attention, as will be reported on below).

Dr. Krolik's visual-perceptual-related abilities appeared to be nearly above average on a motor-free spatial perception test. His ability to rapidly generate or create novel designs was above average, though he repeatedly re-drew many previously created designs (thus revealing some perseverative tendencies). His graphic drawing ability was severely impaired, with indications that he used both part- and global-oriented organizational strategies in perceiving and copying a complex geometric design. Thus, his obvious graphic-motor impairments were noted on both handwriting and complex design copying tasks, despite his nearly above average motor-free spatial-perceptual skills. The latter pattern of performances is consistent with a Motor Coordination Disorder.

Dr. Krolik's performances on learning and memory tests were above average to below average on auditory-verbal story and word list memory tests. However, greater retrieval deficits were noted on the word list learning and memory task. His performances were above average to moderately impaired on visual-nonverbal spatial location, design, and picture memory tests. The pattern of performances suggests that he has better simple auditory-verbal (story) and nonverbal (organized pictorial) learning and memory abilities than he has complex verbal retrieval and visual-nonverbal learning and memory abilities for complex designs. These results are associated with greater difficulties in his acquiring and/or retrieving new complex verbal and nonverbal information than in his acquiring and/or retrieving new relatively simple verbal and nonverbal information that is already organized for him. Certainly, no anterograde amnesia was identified; rather, he has clinically significant learning and retrieval deficits, especially when learning new information that he must actively organize in order to memorize.

NBME00038

Executive-related exams revealed that Dr. Krolik had below average rapid mental flexibility, despite receiving continuous corrective and encouraging feedback on the accuracy of his visual search and shifting performances. In contrast, his simple rapid visual search for serial numbers on a related, but less demanding, task was average. No evidence of visual-spatial neglect or inattention was observed on either of these psychomotor shifting or on other perceptual-related tasks.

Manual motor and simple sensory-perceptual exams revealed that Dr. Krolik made no right- or left-sided auditory, visual, or tactile extinction errors. He had average right- and left-sided eye-hand coordination speed using only one hand at a time on manual pegboard tasks that measure lateralized motor functioning. No atypical or lateralized simple sensory or manual motor difficulties would be indicated based on these results.

Socioemotional assessment utilized clinical observations and interviews, as well as self-administered rating scales and personality inventories, from both Dr. Hoblet's 1998 evaluation and this current evaluation. Dr. Hoblet's evaluation did not identify the presence of any obvious mood or anxiety disorders, though Dr. Krolik was reported to have shown possible conscious or unconscious reluctance to admit to having psychological shortcomings, which was associated with his somewhat high self-confidence. Some mild socially distrustful tendencies, as well as compulsive and independent-minded personality tendencies were noted as well on the MMPI-II and MCMI-II personality tests, consistent with some non-specific traits of personality disorder. The latter traits cannot account for his attentional, reading, and motor coordination disorders.

Ratings from Dr. Krolik and his spouse were obtained on current symptom rating scales of ADHD and associated symptoms or disorders (CAARS Self-Report and Observer versions (Connors et al 1998) and Current Symptoms Scales—Self-Report and Other-Report Forms (Barkley & Murphy 1998). Dr. Krolik also completed the Childhood Symptoms Scales—Self-Report Form (Barkley & Murphy 1998). As was evident in Dr. Hoblet's 1998 results and report, Dr. Krolik's spouse (an adult psychiatry resident at the time) reported currently significant symptoms of ADHD (combined type). For example, on the CAARS Observer version, her responses produced significantly elevated t-scores (mean = 50; sd = 10) on the ADHD Index (84), Hyperactivity-Restless (89), DSM-IV Hyperactivity-Impulsive Symptoms, Impulsive-Emotional Lability (85), DSM-IV ADHD Symptoms Total (84), and DSM-IV Inattentive Symptoms (75) scales. She also reported clinically significant reports that he "Often" or "Very Often" exhibits at least 12 of 18 symptoms of ADHD on the Current Symptoms Scale-Other Report Form (Barkley & Murphy 1998) and that he exhibits behaviors consistent with overall total raw and t-scores (72; 76t) on the Brown ADD Scale indicating that ADD is highly probable. By contrast, Dr. Krolik appeared to minimize the severity and presence of these same symptoms based on his retrospective childhood and current self-reported rating scale results on parallel versions of the latter scales. His self-ratings also were discrepant from his behavior as commented on by his childhood teachers (based on their comments in his available childhood educational records), as well as were discrepant from his current behavior as reported by his spouse, and our own clinical observations during this evaluation. Based on our current clinical interview and recent history, we suspect that Dr. Krolik is also experiencing at least mild, though fluctuating, mood disorder.

As Dr. Krolik's parents are both dead, Gerald Krolik (who is his cousin and who is now seriously ill)

was interviewed by phone by this examiner to obtain the only possible recollections of Dr. Krolik's behavior as a school-aged child. Although Gerald Krolik (who is older than Dr. Krolik) rarely visited with Dr. Krolik when they were school-aged children, Gerald Krolik reported that Dr. Krolik was physically "wild...as I remember Ralph often running around or jumping up and down on the couch."

This examiner interviewed Mr. Jack Sona, a University of New Mexico pharmacy school "study buddy". Mr. Sona reported that Dr. Krolik "couldn't sit still and concentrate"...[and] "couldn't sit and do homework without learning by talking in a conversation." Further he said: "he was always on the go, restless, up and down...making careless mistakes on tests." These latter reports are certainly based on less than desirable familiarity but do represent behavioral data that are consistent with ADHD and reading-related learning disorders.

**Summary and Recommendations:**

This cooperative gentleman exhibited several neuropsychological and socioemotional strengths and weaknesses. Such results are consistent with childhood and adult symptoms of Attention-deficit/Hyperactivity and Reading Disorders as well as with probable chronic Motor Coordination as well as non-specific Mood and Personality Disorders. Given the limitations of professional and parental knowledge about hyperactivity and reading disorders in the 1950s when Dr. Krolik went to elementary and high school, it would be expected that if he would not have documentation of childhood diagnostic and treatment services for ADHD and Reading Disorders. Indeed, these disorders were little known by professionals and parents at the time. Indeed, the Rehabilitation Act of 1973, Special Education Act of 1975, and the ADA of 1990, did not even exist when Dr. Krolik graduated from college in 1969. Given his revised reading scaled scores (based on revised NBME policies about the Nelson-Denny Reading Test), we are revising our recommendations that his ADHD, but not Reading Disorder, should be the basis for his substantial limitation in the major life activity of learning.

This report is consistent with Dr. Wurzlow's previous diagnosis of ADHD and goes beyond Dr. Hoblet's subsequent qualified conclusion that Dr. Krolik could have ADHD. Further, Dr. Hoblet did not assess reading comprehension and, therefore, did not administer appropriate measures to comprehensively evaluate his functional reading comprehension and expressive written language as required under disability laws. Thus, Dr. Krolik's chronic complaints of learning problems at the time of his evaluation were not adequately evaluated. Further, using IQ subtest patterns as the basis of whether or not to diagnosis ADHD is a questionable practice because some false negative errors in detecting ADHD occur using this approach and because other retrospective and current rating scale results are considered more crucial in diagnostic practice. Indeed, symptoms of ADHD were present to a reasonable degree of professional certainty in Dr. Krolik's educational records and the collateral reports or rating scale results from a surviving cousin as well as his college classmate and spouse (an adult psychiatric resident). No credible alternative motivational, cultural, ESL, instructional, sensory, psychiatric, personality, or acute medical explanations for Dr. Krolik's childhood and current symptoms could be identified, although he probably would be considered to have a Reading Disorder (although not be considered reading disabled under ADA according to his scaled scores based on pooled norms). While some potential contribution of his spina bifida occulta or possible mild traumatic brain injury could exist, these medical conditions would merely serve to increase (not decrease) his risk of substantial limitations in the major life activity of learning as a domain of disability. The pattern of his

NBME00040

functional strengths and weaknesses as well as some recommendations will be discussed below.

Dr. Krolik has relative neuropsychological strengths in his expressive/receptive oral language, oral phonics, single word reading, expressive written language, math, simple verbal/nonverbal memory, motor-free spatial-perceptual, simple sensory-motor, and reported adaptive living skills. He has unusual compensatory attention skills for brief periods during which he can attend or concentrate better than is typical for persons with ADHD. However, this compensatory capacity is clearly unreliable and does not eliminate his objective limitations in his daily organizational and learning and/or reading comprehension deficits.

Dr. Krolik has relative neuropsychological weaknesses in his reading comprehension, complex verbal/design memory/retrieval, handwriting, complex design copying, and consistent organizational/attentional control skills. Dr. Krolik's personal frustration reflects distress from his likely anger/embarrassment from not overcoming his disabilities through hard work, which had previously worked well for him. Thus, the acquisition of professional information via reading will continue to be impractical and understandably frustrating, especially for lengthy periods or tasks. Likewise, day-to-day organizational and efficient completion of professional demands will continue to be difficult for him because of his poor self-control, especially in settings when he is faced with rapidly changing or demanding reading comprehension and related learning/retrieval demands.

In this context, professional exams are but one occasion during which reasonable accommodations are mandated for eligible students or employees with "substantial limitations" in a major life activity such as learning. Therefore, Dr. Krolik is eligible and would benefit from the availability of a "quiet, distraction-free" testing room and extra test-taking time (1.5-2 times the usual time). These accommodations are directly related to his attention deficit disorders; such accommodations would be helpful in both current and lifelong professional settings. For example, extra reading and memory recall test-taking time would allow him to compensate to some degree for his inefficient and/or inaccurate attention-related reading and memory retrieval limitations. Finally, given the level of his distractibility during reading comprehension, he would probably benefit from a proctor orally reading test questions while he simultaneously reads printed multiple choice test questions as a reasonable reading disability test-taking accommodation as well. Certainly, his true professional potential and knowledge cannot be realized without test-taking accommodations given his apparently lifelong learning or in-service challenges related to his ADHD and, to a lesser degree, Reading Disorders.

Thank you for referring this interesting gentleman. If I can be of assistance, please contact me.

**Diagnoses:**

> Axis I   Attention-deficit Hyperactivity Disorder (chronic, probably combined type)
>            Reading Disorder (chronic, with comprehension worse than phonics)
>            Motor Coordination Disorder (probably mild handwriting and drawing deficits)
> Axis II  Personality Disorder, Not Otherwise Specified (distrustful, compulsive features)
> Axis III Spina bifida, leukemia (in remission), knee surgeries, possible concussive injury
> Axis IV Educational/learning problems
> Axis V  GAF = 70 (current)



NBME00041

**Relative Strengths:**

Working memory greater than verbal/perceptual motor intellectual skills
Expressive and receptive language skills
Motor-free perceptual skills
Simple auditory-verbal (story) and visual-nonverbal (social-pictorial) memory/recall skills
Oral reading, written language, calculation, and applied math skills
Simple sensory-perceptual and manual motor skills
Adaptive communication, self-care, and socialization skills (by history)

**Relative Weaknesses:**

Verbal and perceptual-motor intelligences (related to visual-motor & learning deficits)
Reading comprehension skills (and related learning/retrieval and language skills)
Perceptual-motor (design copying and handwriting accuracy) skills
Complex auditory-verbal and visual-nonverbal design memory/recall skills
Self-control of daily organizational, impulse control, activity level, and learning skills

**Recommendations:**

Classification as Worker/Student with ADHD
Appropriate learning disability-related accommodations (i.e., providing 1.5-2 times standard test-taking completion time in quiet room with *printed and orally presented* multiple choice test questions via assistance by a proctor)
Consideration of medication treatment of ADHD and, possibly, mild emotional distress (which, even if effective, will not resolve his reading deficits)
Consideration of remedial reading and professional content review instructional programs
Re-evaluation, if medically or professionally necessary

Grant Butterbaugh, Ph.D.
Associate Clinical Professor of Psychiatry
La. Licensed Psychologist/Neuropsychologist #681
504-568-3068

Revised, 12-03 (WAIS-III subtest scores included as per NBME instructions/policy over this professionals objections about the lack of relevance of such information in the diagnosis of ADHD or any or all LD).

## OCHSNER CLINIC
### 1514 JEFFERSON HIGHWAY
### NEW ORLEANS, LA 70121
### CABLE ADDRESS: OCHSCLINIC
### (504) 842-4000



## PSYCHOLOGICAL EVALUATION

| | | | |
|---|---|---|---|
| **NAME:** | Ralph Krolik, M.D. | **REFERRED BY:** | Gayle Wurzlow, M.D. |
| **OC#:** | 1591339 | **EVALUATED BY:** | Pamela R. Hoblit, Ph.D. |
| **DOB:** | 11/22/44 | **EVALUATION:** | 10/2 and 11/12/98 |

Dr. Krolik, a 53 year old white male, came for further evaluation of Attention Deficit Hyperactivity Disorder; the initial diagnosis was made by Dr. Wurzlow, a psychiatrist with expertise in adult ADHD.

Dr. Krolik graduated from the University of New Mexico with a GPA of 2.34 earning a pharmacy degree. He then attended the American University of the Caribbean School of Medicine where he never failed a course. His difficulties began when he began taking the National Board Exam; he has failed different parts repeatedly and sought the evaluation with Dr. Wurzlow to determine the cause of his difficulty.

Dr. Krolik was married for 30 years and then divorced; he has subsequently remarried.

Dr. Krolik was seen for an initial interview; in the second appointment a structured clinical interview was done using the Brown ADD Scales, a set of procedures for diagnosis of ADD; psychological testing was also done.

During his sessions with me, Dr. Krolik was alert and cooperative. During his session with the testing technician, Mrs. Morrison, he was cooperative and worked well on the test. She noted that he was attentive; his concentration was excellent and he had no obvious trouble focusing. However, she did notice that he seemed anxious and flustered on occasions when he knew he was being timed. His hands trembled and he tried to write too quickly at times.

Tests administered were Wechsler Adult Intelligence Scale-Third Edition, Bender Visual Motor Gestalt, Wide Range Achievement Test-Third Revision, Brown ADD Scales-Ready Score, Attention Deficit Scales for Adult (ADSA), Incomplete Sentences, MMPI-2, MCMI-III, and Conners' Continuous Performance Test.



NOV. 23. 2005  8:55PM   DOMENICI-LAW-FIRM                          NO. 8440   P. 16

KINKO'S RIVERSIDE                                                        ☑003

Psychological Evaluation
Ralph Krolik (OC# 1591339)
Page 2

CONFIDENTIAL

Test Findings and Interpretations.    The clinical interview and the clinical history protocol explored a wide-range of functioning.

Dr. Krolik's chief complaint is that he has repeatedly failed medical board exams due to inability to complete the test in the time allotted.  He indicated that he first noted the problems with ADHD type symptoms with this experience.  His work in the past involved owning his own business; he ran a multimillion dollar chemical company.  He indicated that he worked on business matters and phone calls during the day, and then took paperwork home at night.  He felt that he did fine with the paperwork and "stayed on top of things."  He did not complain about organizational skills, procrastination, or distractibility.

Early school history indicated that he was an "average B/C student, never outstanding." He was actively involved in athletics.  He did not recall a history of teacher complaints in grade school of inability to concentrate, attention problems, distractibility, overactivity, impulsivity or disruptive behavior.  He was never considered a behavior problem and was never suspended or expelled.  He never failed a grade.  He did note, "I am a slow reader and a slow processor."

Family history indicated a nephew with learning disability and a cousin with Schizophrenia.  He knew of no family members diagnosed with ADHD.  He reported no other family history of mood disorder or anxiety disorder.  His paternal grandfather was alcoholic.  Dr. Krolik reported that his health has been fine.  He has a diagnosis of spina bifida, but has not experienced significant problems.  He is currently taking Prozac and Ritalin prescribed by Dr. Wurzlow.  He denied problems with alcohol use, stating that he rarely drinks.  He denied any history of drug use.

Sleep and appetite are reportedly within normal limits.

He has had no previous psychotherapy.

When asked to describe his usual mood, he responded, "Very easy going." He then went on to describe himself as "scrutinous" which he elaborated as meaning "I wonder about people's motives; I am easily pissed off a lot." He denied any problem controlling his temper and added, "Unless I was threatened, I wouldn't hurt anyone."

ADHD Measures.    He was questioned on DSM-IV criteria for diagnosis of ADHD. He reported 0 out of 9 symptoms of inattentiveness, 4 out of 9 symptoms of hyperactivity and impulsivity.    The items were answered concerning both childhood and current behaviors.

NOV. 23. 2005  8:56PM   DOMENICI-LAW-FIRM                    NO. 8440   P. 17
KINKO'S RIVERSIDE
☐004

Psychological Evaluation
Ralph Krolik, M.D.  (OC# 1591339)
Page 3



On the Attention Deficit Scales for Adults (a self-report questionnaire), the profile was within normal limits. The ADSA total score was at the 6.7 percentile, extremely low, A percentile rank of 97.7 is considered to be a highly probable indicator of ADHD. Obviously, he scored in the opposite direction. The same finding occurred on another self-report questionnaire, the Brown ADD Scales-Ready Score, Adult Form. His total score was average with a total score of 51. He did show a borderline significant score on the attention cluster. The Threshold Interpretation Scale of total score was ADD possible but not likely. His wife also completed the Brown ADD Scales-Ready Score, Adult Form to provide collateral information. On her report of his behavior, he scored within the significant range, with a total score at T=76.   Clusters within the significant range were memory (T=88) and attention (T=82). His wife clearly reported a number of features in his behavior which are often associated with ADHD and the Threshold Interpretation Scale of total score was ADHD highly probable. 

For further objective information, the Conners' Continuous Performance Test was administered. He had no difficulty with this task and the computer printout noted overall Ralph Krolik performed well on the Conners' CPT. The results of this test do not suggest attention difficulty. Overall, Index = 0.00.

<u>Other Assessment Measures.</u>   Administration of the WAIS-III indicated a Verbal IQ of 116 (high average), a Performance IQ of 109 (average), and a Full Scale IQ of 113 (high average).

Index Score Summary indicated a Verbal Comprehension Index Score of 103, a Perceptual Organization Index Score of 105, and a Working Memory Index Score of 150.

Individual age standard scores were as follows where 10 is average:

| VERBAL TESTS | | PERFORMANCE TEST | |
|---|---|---|---|
| VOCABULARY | 12 | PICTURE COMPLETION | 10 |
| SIMILARITIES | 9 | DIGIT SYMBOL-CODING | 11 |
| ARITHMETIC | 14 | BLOCK DESIGN | 10 |
| DIGIT SPAN | 19 | MATRIX REASONING | 13 |
| INFORMATION | 11 | PICTURE ARRANGEMENT | 13 |
| COMPREHENSION | 11 | | |
| LETTER NUMBER SEQUENCING | 19 | | |



Psychological Evaluation
Ralph Krolik, M.D.  (OC# 1591339)
Page 4

There was a statistically significant (.05) level indicating a weakness in Similarities and Information and a strength in Digit Span and Letter Number Sequencing.

Findings from the academic screening measure, WRAT-III, indicated Reading (Word Recognition) standard score 107, Spelling standard score 111, and Arithmetic standard score 110.

Findings from cognitive assessment are noteworthy in several respects.  A rather dramatic finding is his exceptionally high score on the Working Memory Index where he had a percentile rank of greater than 99; it is typically (but not always) found that people with ADHD have a relatively low score on this Index; his score was not only in the opposite direction, but exceptionally strong.

There were no obvious indicators of a learning disability, but he may have some learning dysfunction as suggested by a definite pattern of strengths and weakness.  Finally, the Verbal Comprehension Index of 103 may be significantly lower than is typical for people taking the medical boards; he may have some difficulty with processing information, particularly as he noted that he is also slow in processing such material.

Personality and Emotional Factors.  Findings from objective self-report personality questionnaires did not indicate the presence of a mood disorder or anxiety disorder; this finding was consistent with information reported during the clinical interview.  The MMPI findings were within normal limits with some indication of reluctance to admit to problems.  Responses suggested that he is likely to be somewhat reclusive and cynical.  His interests seem to involve primarily stereotypic male oriented activities and he seemed to lack the cultural interest that are characteristic of individuals with his educational level.

Findings from the MCMI noted his emphasis on self-reliance and self-determination; he may focus on his competitive values and autonomy.  His style involves a high degree of self-confidence combined with mistrust of others.  He is likely to emphasize his hard-boiled strength.

Recommendations and Conclusions.  Dr. Krolik told of many life accomplishments and successes.  He played professional football in a Canadian league and also hockey.  He has a pilot's license and in the past used to enjoy flying airplanes; he also had a collection of cars including Porsche's and Mercedes  He was in the military and earned a purple heart.  He enjoyed owning and running his multimillion dollar business.

He has encountered a high degree of frustration associated with this unaccustomed experience of failure as he has attempted to pass his Boards.  He indicated that he has been feeling a great deal of stress and anger about the situation.

NOV. 23. 2005  8:57PM   DOMENICI-LAW-FIRM                 NO. 8440   P. 19
                        5048~~~~~         KINKO'S RIVERSIDE                    ☑006



CONFIDENTIAL

Psychological Evaluation
Ralph Krolik, M.D. (OC# 1591339)
Page 5

Given his life experiences of success and accomplishment and his personality style of maintaining a confident, self-determined and decisive approach, he may have had a reluctance (possibly unconscious) to admit to the types of deficits associated with Attention Deficit Hyperactivity Disorder. Therefore, it seems appropriate for him to pursue further evaluation. He indicated that he has an appointment to see Dr. Mark Zielinski, a psychiatrist with expertise in Adult Attention Deficit Hyperactivity Disorder. Even though the standard procedures for diagnosis of ADHD used in the current evaluation did not indicate a high probability of the presence of ADHD, there is no definitive test for Attention Deficit Hyperactivity Disorder. As there is the possibility that he has ADHD, further evaluation and another opinion may be helpful.

Pamela R. Hoblit, Ph.D.
Clinical Psychologist

jk

# OCHSNER CLINIC

1514 JEFFERSON HIGHWAY
NEW ORLEANS, LA. 70121
CABLE ADDRESS: OCHSCLINIC
(504) 842-4025
FAX (504) 842-3236

DEPARTMENT OF PSYCHIATRY
CHAIRMAN
Alvin M. Rouchell, M.D.

GENERAL PSYCHIATRY
Rudolph H. Ehrensing, M.D.
Gerald C. Heintz, M.D.
Dean A. Hickman, M.D.
Cecile L. Many, M.D.
Richard F. Mestayer, III, M.D.
Mary C. W. Olmsted, M.D
Judith M. Roheim, M.D.
Alvin M. Rouchell, M.D.
Gayle F. Wurzlow, M.D.

CHILD PSYCHIATRY
Cecile L. Many, M.D.
Judith M. Roheim, M.D.

CLINICAL PSYCHOLOGY
R. John Wakeman, Ph.D., head
Robert P. Baker, Ph.D.
Patricia Brockman, Ph.D.
Aden A. Burka, Ph.D.
Morris E. Burka, III, Ph.D.
Eileen I. Correa, Ph.D.
Pamela R. Hobut, Ph.D.

CLINICAL SOCIAL WORK
Leonard G. Hudzinski, Ph.D., head
Marvin W. Clifford, B.C.S.W., D.S.W
Jon Glover, B.C.S.W.
Leonard Grubstein, B.C.S.W.
Susan G. Kroll-Smith, B.C.S.W.
Phyllis Shnaider, B.C.S.W.
Helen Stavros, B.C.S.W.
Eileen M. Wynne, B.C.S.W.

December 16, 1998

Mr. Steven S. Seeling, J.D.
Vice President for Operations
Educational Commission for Foreign
  Medical Graduates
3624 Market Street
Philadelphia, PA 19104-2685

Re:    Dr. Ralph Krolik

Dear Mr. Seeling:

I am writing in regard to Dr. Ralph Krolik.  His identification number is 0546768-3.  During the past year, I have been evaluating Dr. Krolik for attention deficit disorder.  It is my conclusion based on DSM-4 criteria, that he has the hyperactive impulsive type of this disorder with a subtype of symptoms with over focus.  This is subtype 3 in Dr. Ameus literature which is a guide for primary care physicians which I am enclosing for your information. Dr. Krolik has a life long history of hyperactivity and impulsivity.  This was documented by a rabbi who knew the family well.  In exploring his early childhood history and his developmental and educational history, he was always hyperactive and impulsive in the classroom.  He did not do homework but got by on auditory memory.  He has a life long history of inattention.  He has marked difficulty focusing.  Although often at times as in the case with many ADD people, he can over focus or hyper focus.  He uses repetitive tasks and tenacity to complete his work which requires a great deal of energy. However, its reported by his family and friends that throughout his life he has difficulty maintaining attention.  He frequently is not listening to conversation or reading clues from the environment.  As a result of this, he may miss interpret instructions and has difficulty with home work chores and duties. Frequently forgetting things and having to repeat the task many times over before it is completed.  He has difficulty with organizational skills and activities.  Tasks need to be rigidly performed in order for him to get the job done.  He is easily distracted by external stimuli in the environment.  His mind wonders frequently in general conversation.

Throughout his life he has been hyperactive and fidgety.  He has difficulty at present even sitting through a movie without frequent interruptions and movement.  He has difficulty in study group situations with interrupting frequently with impatience and with body movements.  He has a hx of being left-handed.  He was forced to use his right hand.  Presently uses his right hand for writing.  He is still impulsive.  He frequently blurts out answers in group conversations which his peers find distressing.  He has difficulty waiting and taking turns, and frequently interrupts when he intrudes on others.





December 16, 1998
Page 2

     These behaviors have impaired him in group situations and functioning both academically and socially. I would rate the severity of this disorder as moderately severe with a severe handicap in test situations. In terms of time, again, I think his perseverative qualities which tend to handicap him. (Not paying attention to time and has difficulty moving on to the next questions.) In conclusion, I have further documented that Dr. Krolik does have attention deficit disorder. He has the subtype 3 which is the ADD symptoms plus cognitive inflexibility, trouble shifting attention, many negative thoughts and behavior with worrying which tend to make him compulsive in nature.

     I am enclosing Dr. Ameus' ADD guide. I feel that Dr. Krolik certainly meets all criteria for ADD. He has a life long history of this disorder, also a school history of this disorder and I hope you can give him the needed attention he's asked for taking this test.

Sincerely,

Gayle F. Wurzlow, M.D.

GFW:amb
Enclosures



OCHSNER CLINIC

RECEIVED

1514 JEFFERSON HIGHWAY
NEW ORLEANS, LA. 70121
CABLE ADDRESS: OCHSCLINIC
(504) 842-4025
FAX (504) 842-3236

JUN - 1 1999

OFFICE OF
TEST ACCOMMODATIONS

May 17, 1999

DEPARTMENT OF PSYCHIATRY
CHAIRMAN
   ALVIN M. ROUCHELL, M.D.

GENERAL PSYCHIATRY
   RUDOLPH H. EHRENSING, M.D.
   GERALD C. HEINTZ, M.D.
   DEAN A. HICKMAN, M.D.
   CECILE L. MANY, M.D.
   RICHARD F. MESTAYER, III, M.D.
   MARY C. W. OLMSTED, M.D.
   JUDITH M. ROHEIM, M.D.
   ALVIN M. ROUCHELL, M.D.
   GAYLE F. WURZLOW, M.D.

CHILD PSYCHIATRY
   CECILE L. MANY, M.D.
   JUDITH M. ROHEIM, M.D.

CLINICAL PSYCHOLOGY
   R. JOHN WAKEMAN, PH.D., HEAD
   ROBERT P. BAKER, PH.D.
   PATRICIA BROCKMAN, PH.D.
   ADEN A. BURKA, PH.D.
   MORRIS E. BURKA, III, PH.D.
   EILEEN I. CORREA, PH.D.
   PAMELA R. HOBLIT, PH.D.

CLINICAL SOCIAL WORK
   LEONARD G. HUDZINSKI, PH.D., HEAD
   MARVIN W. CLIFFORD, B.C.S.W., D.S.W.
   JON GLOVER, B.C.S.W.
   LEONARD GRUBSTEIN, B.C.S.W.
   SUSAN G. KROLL-SMITH, B.C.S.W.
   PHYLLIS SHNAIDER, B.C.S.W.
   HELEN STAVROS, B.C.S.W.
   EILEEN M. WYNNE, B.C.S.W.

U. S. Medical Licensing Examination
3624 Market Street
Philadelphia, PA 19104-2685

Attn:   Mary McAvinue
        3626 Marke Street
        Philadelphia, PA 19104

Re:   Ralph Elliot Krolick
      124 Coolidge Street
      Jefferson, LA 70121
      USMLE ID: 0-546-768-3

Dear Ms. McAvinue:

Enclosed are some early childhood records from Dr. Krolick's school history. These were found subsequent to his mother's death, and are enclosed to validate the previous letter supporting the diagnosis of attention deficit disorder, hyperactive impulsive type. In reviewing these report cards which go back to approximately 3rd grade, the teachers notes clear show difficulty with concentration, the patient rushing through work, and quite explicitly lack of attention during lessons, particularly on the 11/15/54 comment by his teacher. In your previous letter, you requested further documentation that this difficulty was pervasive about his learning experiences. I hope that these report cards will serve as some documentation for your request.

Sincerely,

Gayle F. Wurzlow, M.D.

GFW:amb



NBME00138

07  19  00     07:35     ☎87  3833          5TH FLOOR                    ☑008

Pupil's Name ........................

## INTERPRETATION OF LETTERS

A—means that the quality and quantity of work done have been Excellent.

B—means that the quality and quantity of work done have been, Above the Average.

C—means that the quality and quantity of work done have been Average.

### DANGER LINE

D—means that the quality and quantity of work done have been Below the Average.

E—means that the quality and quantity of work done have Not Been Acceptable.

If any item is not marked, it indicates that the teacher is not ready to report.

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **LANGUAGE** | | | | |
| 1. Reading with understanding. | | C | C | |
| 2. Interest in reading. | | C | C | |
| 3. Expression of thoughts orally. | | C | C | |
| 4. Expression of thoughts in writing. | | C | A | |
| 5. Learning to spell words needed. | | C | A | |
| 6. Handwriting. | | C | B | |

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **ARITHMETIC** | | | | |
| 1. Working with accuracy and reasonable speed. | | C | B | |
| 2. Obtaining information and materials in dependably. | | C | B | |

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **NATURAL SCIENCE** | | | | |
| 1. Learning to observe. | | | | |
| 2. Developing an understanding of nature. | | | ✓ | |

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **SOCIAL STUDIES** | | | | |
| 1. Developing interest in and understanding of their own and other communities. | | | | |
| 2. Obtaining information and materials in dependably. | | | | |

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **MUSIC** (Check one) | | | | |
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | | ✓ | ✓ | |
| 3. Shows little interest. | | | | |

## ART (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | ✓ | | ✓ | |
| 3. Shows little interest. | | | | |

## PHYSICAL EDUCATION (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | ✓ | ✓ | ✓ | |
| 3. Shows little interest. | | | | |

## HABITS AND ATTITUDES

Interpretation of Letters

S—satisfactory.

U—unsatisfactory.

I—shows improvement.

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Follows directions. | | S | S | |
| 2. Completes work promptly. | | S | S | |
| 3. Observes school regulations. | | S | S | |
| 4. Respects the rights of others. | | S | S | |
| 5. Is courteous. | | S | S | |
| 6. Is dependable. | | S | S | |
| 7. Makes an effort. | | S | S | |
| 8. Shows initiative. | | S | S | |
| 9. | | | | |

## ATTENDANCE

After having been absent, a pupil must present a dated note from a parent or guardian giving the reason for the absence.

| | Sept. | Oct. | Nov. | Dec. | Jan. | Feb. | Mar. | April | May | June |
|---|---|---|---|---|---|---|---|---|---|---|
| Days present. | | 19 | 22 | | | 19 | 23 | 21 | 22 | |
| Days absent. | | | | | | | | | | |
| or late | | | | | | | | | | |

## TEACHER'S COMMENTS

DATE ........................ 195_ _

*[handwritten teacher comments]*

Teacher's signature ........................

## PARENT'S COMMENTS

Parent's signature ........................

07 19 00    07:36    ☎8    9833        5TH FLOOR                        ☑009

## INTERPRETATION OF LETTERS

A—Excellent.
B—Very good.
C—Normal progress for the grade.
D—Below average.
E—Seriously below grade standard.

| HABITS AND ATTITUDES | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Follows directions. | C | C | C | |
| 2. Completes work promptly. | B | B | B | |
| 3. Observes school regulations. | C | B | C | |
| 4. Respects the rights of others. | C | C | C | |
| 5. Is courteous. | C | D | C | |
| 6. Is dependable. | C | C | C | |
| 7. Makes an earnest effort. | C | C | C | |
| 8. Show initiative. | B | C | B | |

### Progress in LANGUAGE ARTS

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In reading with understanding. | A | A | B | |
| 2. It, interest in reading. | A | A | B | |
| 3. In expression of thoughts orally. | A | B | B | |
| 4. In expression of thoughts in writing. | B | B | B+ | |
| 5. In learning to spell words needed. | A | B | A | |
| 6. In handwriting. | A | B | A | |

### Progress in SOCIAL STUDIES

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In developing interest in and understanding of own and other communities. | C | A | B | |
| 2. In obtaining information and materials independently. | C | C | C | |

### Progress in ARITHMETIC

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In working with accuracy and reasonable speed. | B | A | B | |
| 2. In ability to reason. | B | B | B | |

### Progress in NATURAL SCIENCE

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In ability to observe closely and to form conclusions. | C | C | B | |
| 2. In developing interest in and understanding of natural science. | C | C | C | |

### HEALTH

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Is developing an understanding of healthful living. | D | D+ | D | |

Name: Ralph Carroll

### MUSIC (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | ✓ | ✓ | ✓ | |
| 3. Shows little interest. | | | | |

### ART (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | ✓ | ✓ | ✓ | |
| 3. Shows little interest. | | | | |

### PHYSICAL EDUCATION (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | ✓ | ✓ | ✓ | |
| 3. Shows little interest. | | | | |

### OTHER ACTIVITIES

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |

### ATTENDANCE

| | Sept. | Oct. | Nov. | Dec. | Jan. | Feb. | Mar. | Apr. | May | June |
|---|---|---|---|---|---|---|---|---|---|---|
| Days present. | 19 | 22 | 17 | 18 | 19 | 19 | 15 | 21 | | |
| Days absent. | 0 | 0 | 0 | 3 | 2 | 0 | 4 | 0 | | |
| Times late. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | |

### TO PARENTS:

This report is sent home four times a year to inform you of the progress your child is making. If special help is needed to progress with the class you will be invited to confer with the teacher.

You are welcome to arrange to visit the school for a conference with the teacher or principal for further information about your child.

Principal

## TEACHER'S COMMENTS    DATE ...Nov... 195 5

Ralph is eager to learn but usually wants more than his share of attention. Finding non-adjusting in gym.

### PARENT'S COMMENTS

Parent's Signature: Nelson Carroll

### PARENT'S COMMENTS    DATE ...Feb... 1956

### TEACHER'S COMMENTS

Is soon satisfactory. Reading improved. Working arithmetic. Elementary. Has ability to earn more than D's.

### PARENT'S COMMENTS

Parent's Signature: N. Carroll

07 19 00    07:37   ☎8   ]833          5TH FLOOR                                      ☒010

Where, rating is shown by letters:
A — 90 to 100
B — 70 to 79
C — 60 to 69
D — 50 to 59
E — Under 50
(Passing mark is 50)

| SUBJECT | | FIRST REPORT | | | SECOND REPORT | | | THIRD REPORT | | | FINAL REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Pupil's Marks | School Medians | Attitude and Effort Ex–Excellent VG–Very Good G–Good F–Fair P–Poor | Pupil's Marks | School Medians | Attitude and Effort Ex–Excellent VG–Very Good G–Good F–Fair P–Poor | Pupil's Marks | School Medians | Attitude and Effort Ex–Excellent VG–Very Good G–Good F–Fair P–Poor | Pupil's Marks |
| ENGLISH | Literature | 46 | | G | 60 | 58 | | 66 | 61 | | 59 |
| | Composition | 60 | | G | 64 | 64 | | 62 | 59 | | 64 |
| SOCIAL STUDIES | History | | | | | | | | | | |
| | Geography | 45 | | F | 57 | 58 | | 61 | 66 | | 66 |
| MATHEMATICS | Arithmetic | 60 | | C | 50 | 61 | | 39 | 67 | | 50 |
| | General Science | 71 | | C | 54 | 54 | | 59 | 67 | | |
| SCIENCE | Chemistry | | Exam. | | 51 | 68 | | 59 | 75 | | 56 |
| | Physics | | | | | | | | | | |
| | Biology | | | | | | | | | | |
| LANGUAGES | Latin | | | | | | | | | | |
| | French | 74 | | G | 60 | 59 | | 58 | 63 | | 60 |
| | German | | | | | | | | | | |
| ART | | | | | | | | | | | |
| MUSIC | | | | | | | | | | | |
| HOME ECONOMICS | | | | | | | | | | | |
| INDUSTRIAL ARTS | | | | | | | | | | | |
| COMMERCIAL | Bookkeeping | | | | | | | | | | |
| | Business Practice | | | | | | | | | | |
| | Business Arithmetic | | | | | | | | | | |
| | Record Keeping | | | | | | | | | | |
| | Typewriting-W.P.M. | 39 | | P | 45 | 51 | | 48 | 52 | | 58 |
| | Typewriting-Exam | | | | | | | | | 27 | |
| | Shorthand-Exam | | | | | | | | | | |
| | Shorthand-W.P.M. | | | | | | | | | | |
| | Retail English | | | | | | | | | | |
| | Retail Merchandising | | | | | | | | | | |
| PHYSICAL EDUCATION | | 600 | | | 80 | 85 | | P 65 600 | | | P 8 |
| HEALTH | | | | | | | | | | | |

TEACHER'S COMMENTS

FIRST REPORT: Ralph is working well. We are looking for better progress.

SECOND REPORT: Ralph may be a little over confident in his ability to do Grade X work. Too many of his marks are borderline. These concentrated effort on his studies should better his standing.

THIRD REPORT: Ralph is much in doubt the possibility of repetition late in Algebra, and typing depending upon the result of the final examinations.

FINAL REPORT:

JUNE 19__

_Teacher or Principal_

medical and psychiatric disorders) were identified that could provide plausible, alternative explanations for his chronic learning, self-control, and reading comprehension impairments.

Dr. Krolik has excellent motivation with which to succeed if he is permitted modest test-taking accommodations. Accommodations should include extended test-taking time (e.g., 1.5-2 times the usual test-taking time per subtest), testing to be completed in a quiet room, and paper-and-pencil- rather than computer-administered testing (the latter so that he can complete test questions more slowly and carefully with extra time and with the use of highlighting key test words or phrases).   Further, given his past and currently well-documented below average reading comprehension skills, Dr. Krolik also may benefit from a proctor orally reading test questions while he simultaneously reads and answers the same test questions, during the typical computer-administered STEP exam. These accommodations are relevant in regard to his inattentive and distractible reading and learning challenges and are necessary to minimize any possible unfair evaluation of his professional competencies. Of course, given changes in your policies about the use of grade-based reading norms, his accommodations may need to be based on his ADHD-related learning disability rather than on his poor reading comprehension.

Please contact me if you have any concerns or questions about this motivated health professional. Certainly, I believe that it is legally unfair to require a student raised in the 1950s and 1960s to produce adequate documentation of diagnostic and treatment services for past and current learning or hyperactivity impairments for diagnoses that were not known or adequately identified or treated by many physicians, educators or parents at the time of his childhood. Again, no other plausible alternative explanations were found for others' (and our own) conclusions that he has attentional/inhibitory control- (and reading-) related disabilities that substantially limit his adult learning. We hope that this letter and related report will provide support for Dr. Krolik's request for what can only be described as reasonable test-taking accommodations.

Sincerely yours,

Grant Butterbaugh, Ph.D.
Associate Clinical Professor
LSUHSC-Psychiatry, Room 235F
1542 Tulane Ave.
New Orleans, LA 70112-2822
504-568-3068 (o)
gbutte@lsuhsc.edu

Revised after phone conversation with Mr. Doane, NBME, on 12-19-03.

NBME00062

FROM :                    PHONE NO. :              Dec. 11 2003 11:55AM P1

12/11/03

RECEIVED

DEC 1 1 2003

FROM:

Disability Services

RALPH KROLIK MD.

CUSOLE # 0-546-768-3

To whom it May Concern:

Dr Grant Butterbugh Has
(of LSU)
permission to speak on my behalf,
negotiate on my behalf, and to
represent me in any way he sees
if it. you will please assist him
in any way he deems necessary

Thank you

Ralph Elbrolik MD.

NBME00063



**Health Sciences Center**

NEW ORLEANS

School of Medicine
School of Dentistry
School of Nursing
School of Allied Health Professions
School of Graduate Studies

School of Medicine
Department of Psychiatry

Mr. J. Abram Doane
Office of Test Accommodations                                    12-19-03
National Board of Medical Examiners                                              **RECEIVED**
3750 Market Street
Philadelphia, PA 19104-3190                                                      **DEC 3 0** 2003

Dear Sir:                                                                        **Disability** Services

    I am pleased to respond in writing to recommend that **Dr. Ralph Krolik (ECFMG# 0-546-768-3)** should be considered eligible for accommodations because he has current and chronic, past "substantial limitations in a major life activity such as learning" according to the Americans with Disabilities Act of 1990 (ADA). Thus, I believe that he is qualified to receive testing accommodations for the USMLE Step exams or other professional exams. I have attached my current educational and neuropsychological evaluation report that integrates conclusions from his medical and educational records.

    In response to your letter to Dr. Krolik on 11-10-03, I have included age-based standard and / or scaled scores for the WAIS-III. However, I would like to register my strong objection about the relevance of these subtest scores as a required basis for the diagnosis of any or all learning disorders.

    Further, the achievement scores in my report are current in that scores were obtained within the past 3 years. In addition, the standardized scores from the Nelson-Denny Reading Test were previously included in my original report, although you now require age-based standardized scores. Although previous NBME guidelines have listed the Nelson-Denny Reading Test among the examples of appropriate reading tests, the Nelson-Denny Reading Test has only provided grade-based norms and has never had age-based norms. After talking with you on 12-19-03, I have obtained my reported scaled scores on "Raw Score to Scale Score (SS) to Grade Equivalent (GE) Conversions" table for Form G on page 21 and on "Raw Score to Scale Score Conversions Reading Rate for Forms G and H" table on page 23 of the "Nelson-Denny Reading Test Manual for Scoring and Interpretation" (Brown et al 1993). There are no pooled norms listed in the Technical Manual in contrast to your recommendations. Of course, I hope that your revised recommendations is not retroactively applied to this and other cases after their evaluations have been completed.

    Finally, Dr. Krolik went to elementary and high school before special education laws and services existed. Therefore, it is impossible to expect that he would have school-based evaluation and remediation documents. However, his report cards and school records do indicate symptoms commonly associated with ADHD, consistent with his symptoms during college and during our examination.

Louisiana State University Health Sciences Center • 1542 Tulane Avenue, Box T4-6 • New Orleans, Louisiana 70112-2825
phone (504) 568-6001  fax (504) 568-8647  www.lsuhsc.edu

NBME00029



To fulfill requirements, NBME guidelines appear to require documentation of my qualifications to diagnose Dr. Krolik's as having a previously undiagnosed (but clinically and educationally significant) ADHD and Reading Disorder. I was fortunate to train with one of the pioneers in neuropsychological research on childhood learning disorders, Dr. Byron Rourke, at the University of Windsor and, subsequently, with his colleagues in the Division of Neuropsychology at Henry Ford Hospital (Detroit), and in the Division of Neuropsychology at the University of Michigan (Ann Arbor). For over 17 years, I have taught physicians, psychologists, and educators about differential diagnosis, assessment, treatment, and neurological bases of ADHD and LD, as well as other neurologic and psychiatric disorders in adults and children. Please contact me if you require further information about my qualifications.

We utilized current, or recent pre-existing, test results from standardized, appropriately norm-referenced neuropsychological and educational tests, including the WAIS-III, Nelson-Denny Reading Test 3-E, as well as abbreviated Revised-Woodcock-Johnson Tests of Achievement (i.e., without Passage Comprehension and Word Identification subtests) and R-WJ Tests of Cognition (Spatial Relations and Listening Comprehension subtests). Naming and word fluency as well as design copying and design fluency test results were considered to clarify hemispheric motor-dependent processing skills upon which verbal and nonverbal recall/memory skills are based. Nonverbal (WAIS-III Matrix Reasoning) and verbal (WAIS-III Similarities and Comprehension) conceptual reasoning and rapid mental search/shifting or inhibition (Trail Making Tests) were assessed within the context of other more fundamental skills. Given this person's history of possible traumatic brain injury, standard sensory-perceptual (unilateral followed by bilateral simultaneous tactile, auditory, and visual stimulation) and fine motor (rapid unilateral manual pegboard placement) exams were utilized as well. Please contact me if you require further information about these and other related standard neuropsychological and psychological tests that I utilized. Briefly, Dr. Krolik exhibits learning/recall deficits as well as graphic design copying/handwriting eligibility problems, consistent with co-morbidities sometimes associated with ADHD and Reading Disorders.

As for considering prior history and differential psychiatric or developmental disorders, an extended interview was completed regarding his educational, psychosocial, work, medical, and mental status. In addition, patient-completed rating scales were used to evaluate the presence of any personality, mood, anxiety, thought/perceptual (e.g., mental status interview, Social Phobia & Anxiety Inventory, and MMPI-II tests) and attention deficit (e.g., Barkley & Murphy's Childhood and Current Symptoms Scales, as well as Brown's ADD Scale-Adult self-report version) disorders. Collateral rating scales (e.g., Barkley & Murphy's Current Symptoms Scale-Other Report Form, as well as Brown's ADD Scale-Collateral-report version) were administered to his spouse, an adult psychiatry resident at the time of this evaluation, as additional validity checks of his current self-ratings. Thus, verification was obtained for the seriousness of his clinically significant limitations in the major life activity of learning due to his past and current inhibitory control and distractibility impairments.

In regard to his academic or literacy skills, Dr. Krolik obtained a below average reading comprehension score on the Nelson-Denny Reading Test (based on grade norms), when compared to his peers. If age-based norms were available, then Dr. Krolik may not have obtained a below average standardized score as fewer adults of his age



would have 4 or more years of college education. However, his clinically significant reading and attentional disorders were validated by the independently obtained reports of his frequent pharmacy school "study buddy," Mr. Sona. Mr. Sona reported that Dr. Krolik could only learn via "conversational studying" rather than from reading text books. Early childhood comments by Dr. Krolik's teachers indicated problems with reading, inattention, concentration or effort (but they did not indicate that he had any conduct problems), consistent with his current ADHD and reading comprehension impairments. No clear individualized testing results from early grade school were available (or would be expected), given the absence of special education and pediatric health evaluations and treatment services for reading and hyperactivity disorders in the 1950s when Dr. Krolik was a child.

The results from this evaluation and review of available records and clinical measures were used to determine whether or not Dr. Krolik exhibited educationally significant impairments in these major life activities via clinical history, test results and decision making. Certainly, there is no professional consensus or "gold standard" that defines a "reasonable" evaluation or record review in regard to adult ADHD (Erhardt, Epstein, Connors, Parker, and Sitarenios 1999; Connors et al 1999), though we have used current NBME guidelines when possible. In Dr. Krolik's case, there was a well-known absence of professional knowledge of reading and hyperactivity disorders at the time of his childhood education in the early 1950s & 1960s. Further, federal laws concerning learning and behavioral disabilities did not exist until 1973-1975, in the decade after he started college. *Given the deficient professional and lay knowledge about these disorders and related treatments during his childhood and young adult years, the absence of diagnostic and treatment documentation in his available past childhood school and medical record would be expected, and, therefore, should not be used against him at this time.*



As stated in my report, Dr. Krolik's report, my own collateral interview results, and the ratings of his cousin and a close pharmacy school classmate, as well as educational record review confirmed, that he has had and currently has substantial limitations in reading/listening comprehension as well as attention and efficient/organized learning limitations throughout his childhood and adult years. His reading-related difficulties were apparent from an early age and from standardized college, graduate, and medical school entry exam scores.

Dr. Krolik also experienced difficulties in sustaining simple attention, impulse control, and learning efforts while learning as a primary and secondary student as well as in his post-secondary education. Certainly, he fell in the clinically significant range for ADHD (combined type) on current and retrospective self-report scales, with some confirmatory collateral reports or documentation by others (i.e., his spouse, pharmacy school "study buddy," older cousin, and in his available childhood educational records). *Given the changes in NBME guidelines (discussed above) regarding the previously recommended Nelson-Denny Reading Test, Dr. Krolik's eligibility for test-taking accommodations should be based on his ADHD- rather than his reading-related learning disability.*

There is little doubt about the functional significance of his learning impairments in reading/listening comprehension, attention, and impulse control skills, despite his compensatory attempts to overcome these impairments. No other relevant psychiatric, psychosocial, motivational, or medical disorders (including traumatic brain injury or other

duplicate page

NBME00032



would have 4 or more years of college education. However, his clinically significant reading and attentional disorders were validated by the independently obtained reports of his frequent pharmacy school "study buddy," Mr. Sona. Mr. Sona reported that Dr. Krolik could only learn via "conversational studying" rather than from reading text books. Early childhood comments by Dr. Krolik's teachers indicated problems with reading, inattention, concentration or effort (but they did not indicate that he had any conduct problems), consistent with his current ADHD and reading comprehension impairments. No clear individualized testing results from early grade school were available (or would be expected), given the absence of special education and pediatric health evaluations and treatment services for reading and hyperactivity disorders in the 1950s when Dr. Krolik was a child.

The results from this evaluation and review of available records and clinical measures were used to determine whether or not Dr. Krolik exhibited educationally significant impairments in these major life activities via clinical history, test results and decision making. Certainly, there is no professional consensus or "gold standard" that defines a "reasonable" evaluation or record review in regard to adult ADHD (Erhardt, Epstein, Connors, Parker, and Sitarenios 1999; Connors et al 1999), though we have used current NBME guidelines when possible. In Dr. Krolik's case, there was a well-known absence of professional knowledge of reading and hyperactivity disorders at the time of his childhood education in the early 1950s & 1960s. Further, federal laws concerning learning and behavioral disabilities did not exist until 1973-1975, in the decade after he started college. *Given the deficient professional and lay knowledge about these disorders and related treatments during his childhood and young adult years, the absence of diagnostic and treatment documentation in his available past childhood school and medical record would be expected, and, therefore, should not be used against him at this time.*

As stated in my report, Dr. Krolik's report, my own collateral interview results, and the ratings of his cousin and a close pharmacy school classmate, as well as educational record review confirmed, that he has had and currently has substantial limitations in reading/listening comprehension as well as attention and efficient/organized learning limitations throughout his childhood and adult years. His reading-related difficulties were apparent from an early age and from standardized college, graduate, and medical school entry exam scores.

Dr. Krolik also experienced difficulties in sustaining simple attention, impulse control, and learning efforts while learning as a primary and secondary student as well as in his post-secondary education. Certainly, he fell in the clinically significant range for ADHD (combined type) on current and retrospective self-report scales, with some confirmatory collateral reports or documentation by others (i.e., his spouse, pharmacy school "study buddy", older cousin, and in his available childhood educational records). *Given the changes in NBME guidelines (discussed above) regarding the previously recommended Nelson-Denny Reading Test, Dr. Krolik's eligibility for test-taking accommodations should be based on his ADHD- rather than his reading-related learning disability.*

There is little doubt about the functional significance of his learning impairments in reading/listening comprehension, attention, and impulse control skills, despite his compensatory attempts to overcome these impairments. No other relevant psychiatric, psychosocial, motivational, or medical disorders (including traumatic brain injury or other

NBME00033



medical and psychiatric disorders) were identified that could provide plausible, alternative explanations for his chronic learning, self-control, and reading comprehension impairments.

Dr. Krolik has excellent motivation with which to succeed if he is permitted modest test-taking accommodations. Accommodations should include extended test-taking time (e.g., 1.5-2 times the usual test-taking time per subtest), testing to be completed in a quiet room, and paper-and-pencil- rather than computer-administered testing (the latter so that he can complete test questions more slowly and carefully with extra time and with the use of highlighting key test words or phrases). Further, given his past and currently well-documented below average reading comprehension skills, Dr. Krolik also may benefit from a proctor orally reading test questions while he simultaneously reads and answers the same test questions, during the typical computer-administered STEP exam. These accommodations are relevant in regard to his inattentive and distractible reading and learning challenges and are necessary to minimize any possible unfair evaluation of his professional competencies. Of course, given changes in your policies about the use of grade-based reading norms, his accommodations may need to be based on his ADHD-related learning disability rather than on his poor reading comprehension.

Please contact me if you have any concerns or questions about this motivated health professional. Certainly, I believe that it is legally unfair to require a student raised in the 1950s and 1960s to produce adequate documentation of diagnostic and treatment services for past and current learning or hyperactivity impairments for diagnoses that were not known or adequately identified or treated by many physicians, educators or parents at the time of his childhood. Again, no other plausible alternative explanations were found for others' (and our own) conclusions that he has attentional/inhibitory control- (and reading-) related disabilities that substantially limit his adult learning. We hope that this letter and related report will provide support for Dr. Krolik's request for what can only be described as reasonable test-taking accommodations.

Sincerely yours,

Grant Butterbaugh, Ph.D.
Associate Clinical Professor
LSUHSC-Psychiatry, Room 235F
1542 Tulane Ave.
New Orleans, LA 70112-2822
504-568-3068 (o)
gbutte@lsuhsc.edu

Revised after phone conversation with Mr. Doane, NBME, on 12-19-03.





# Health Sciences Center
NEW ORLEANS

School of Medicine
Department of Psychiatry

School of Medicine
School of Dentistry
School of Nursing
School of Allied Health Professions
School of Graduate Studies

RECEIVED

DEC 3 0 2003

Disability Services

## NEUROPSYCHOLOGICAL AND EDUCATIONAL EVALUATION

Name: **Dr. Ralph Krolik**      Gender:      Male
Age:   56 years old             DOB:         11-22-44
DOT:   2-23-01                  Education:   Medical school graduate
**ECFMG# 0-546-768-3**

Dr. Krolik is a 56-year-old male who was referred for neuropsychological assessment of his diagnostic and treatment needs, related to whether or not he has lifelong learning difficulties and related to the exact nature of his disabilities, if any exist. Previous and relatively recent psychiatric evaluation by G. Wurzlow MD at Ochsner Foundation Hospital in New Orleans resulted in diagnosis and medication treatment of his ADHD.    However, a subsequent psychological evaluation by P. Hoblet PhD did not indicate a "high probability" of ADHD from Dr. Krolik's self-reported symptoms (despite the collateral report of clinically significant ADHD symptoms from his spouse, who was an adult psychiatry resident at the time). It is important to emphasize that Dr. Hoblet did not conclusively rule out ADHD. Curiously, Dr. Hoblet did not administer a reading comprehension test, despite Dr. Krolik's presenting complaints of slow and inaccurate reading problems. The ECFMG previously denied Dr. Krolik's past request for previous test accommodations, in spite of Dr. Wurzlow's diagnosis of ADHD and recommendation for disability-related test-taking accommodations. *( A recent letter from the NBME requested that subtest scores (e.g., WAIS-III) and age-based standard scores should be added to this report. In response as noted in my letter on this matter, I would like to repeat here my strong objection to the relevance of WAIS-III subtest scores in the diagnosis of any or all learning disabilities, the retrospective application of new NBME recommendations about the Nelson-Denny Reading Test (with its grade-based norms), and the retrospective application of current ADHD and Reading Disorder diagnostic methods to the presence or absence of evidence of childhood ADHD in educational records dating back to the 1950's and 1960's when special education laws and services did not yet exist.*

Dr. Krolik's childhood report cards, letters to/from ECFMG, Dr. Wurzlow's letter to ECFMG, Dr. Hoblet's report and raw data from a 1998 evaluation were reviewed. Further, both an older cousin (Gerald Krolik) who knew Dr. Krolik's behavior as a child as well as a pharmacy school classmate (Jack Sona) who knew his behavior as an adult were interviewed about their recollections of Dr. Krolik's behavior. As Dr. Krolik's parents are no longer living, their retrospective behavioral ratings of his childhood behavior cannot be obtained to assess his early childhood behavioral characteristics at home. His childhood educational records were reviewed, as mentioned.

Louisiana State University Health Sciences Center • 1542 Tulane Avenue, Box T4-6 • New Orleans, Louisiana 70112-2825
phone (504) 568-6001  fax (504) 568-8647  www.lsuhsc.edu

NBME00035

**Developmental and Medical History:**

Dr. Krolik has a reported history of spina bifida occulta (without known neurological impairments), two previous knee surgeries from sports injuries, and successful treatment for leukemia that is currently in remission. Dr. Krolik has a history of possible mild concussive injury without clear neurological consequences (e.g., loss of consciousness) from a grenade explosion when he served in the military.

**Family and Social History:**

Dr. Krolik lives with his spouse. He has been previously married and has two adult children. He works as a pharmacist and his spouse is a resident in adult psychiatry. He is experiencing emotional distress related to his frustration from not passing his medical board exams. Additional family information is on file for clinical purposes.

**Educational History:**

Dr. Krolik graduated in 1996 from the School of Medicine at the American University of the Caribbean in Plymouth, Monserrat, B.W.I., and from the University of New Mexico in Pharmacy in 1969 (the latter with a 2.34 GPA). He has taken the USMLE 5 or 6 times, reportedly without ever completing all test questions. He has failed to pass the USMLE to date.

Review of his available grade and high school report cards revealed a history consistent with expected childhood underachievement associated with intermittent teacher-reported attention, reading, handwriting, and study skills problems. For instance, teacher comments from the 1st through 6th grades (1950-1956) complained of unsatisfactory reading, concentration, and/or attention problems, which were all the more notable because of teachers' comments about his unrealized potential. His teachers also mentioned his concurrent courteousness and earnest effort during this same period, which reduces the likelihood of severe conduct or emotional disturbances providing an alternative explanation for his attention/concentration and reading problems.

During the 1950's, educators' knowledge of evaluation and treatment of ADHD and reading disorders was limited. Given the well known lack of professional and parental knowledge about ADHD and the absence of special education laws or services at that time, it would be surprising if there were any childhood appraisal, diagnostic or treatment data in educational or health records concerning ADHD or Reading Disorders.

**Test Observations:**

During the assessment, Dr. Krolik was casually dressed and did not have any obvious atypical physical characteristics. He was cooperative and well motivated during testing, but he showed obvious and consistent high levels of inattention, impulsivity, and overanxiousness. He frequently started tasks before instructions were completed, became distressed and apologized when he made mistakes, and frequently failed to self-monitor and self-correct his performance on his own. His restlessness resembled the disinhibited behavior of a hyperactive school-aged child, with obvious impulsive and overactive behavior. He also frequently interrupted the examiners' comments or instructions, not from deliberate discourtesy, but rather from his own impulsiveness. Given his obvious cooperation, these results validly represent his current neuropsychological status; indeed, these results may overestimate his ability to use his skills in settings in which he does not receive consistent one-on-one instructions, encouragement, and redirection from others.

NBME00036



As Dr. Krolik was evaluated recently (11-12-98) and he has had no subsequent medical or psychiatric disorders prior to this current evaluation, his prior results from WAIS-III IQ and MMPI-II personality testing, as well as from his prior self- and spouse-reported ADHD rating scales will be considered, in addition to these current test results that are reported below.

**Test Results (standard deviations based on normative standardized scores):**

| Note: | | |
|---|---|---|
| | Average: | within ± 1 standard deviation |
| | Above Average: | ≥ 1 standard deviation above average |
| | Well Above Average: | ≥ 2 standard deviations above average |
| | Superior: | ≥ 3 standard deviations above average |
| | Below Average: | ≥ 1 standard deviation below average |
| | Moderate Deficit: | ≥ 2 standard deviations below average |
| | Severe Deficit: | ≥ 3 standard deviations below average |

As previously reported by Dr. Hoblet in November 1998, Dr. Krolik's WAIS-III results revealed obtained above average to average standard scores (within a 95% confidence interval) for Verbal (111-120), Performance (102-115), and Full Scale (109-117), with some interskill scatter. His working memory abilities appeared to be better developed than were his general verbal and perceptual-motor-related thinking abilities and knowledge. As Dr. Hoblet noted, this pattern is inconsistent with the typical "group" ADHD profile reported for the WAIS-III. However, the "typical" WAIS-III profile is not a requirement for meeting the diagnostic criteria for ADHD in DSM-IV. Further, it is well known that using all tests that some members of a subpopulation such as ADHD will not obtain an abnormal score despite having a diagnosis (i.e., reflecting a "false negative" decision error). Furthermore, his having lower verbal and perceptual-motor skills than working memory skills may reflect co-morbid motor coordination and subtle learning/language impairments that sometimes accompany ADHD (as are noted below in Dr. Krolik's current test performances). For what it is worth, this gentleman's WAIS-III subtest scores are reported below:

| | | | |
|---|---|---|---|
| Vocabulary | 12 | Picture Completion | 10 |
| Similarities | 9 | Digit Symbol-Coding | 11 |
| Arithmetic | 14 | Block Design | 10 |
| Information | 11 | Matrix Reasoning | 13 |
| Compreh'n | 11 | Picture Arrangement | 13 |
| Digit Span | 19 | | |

Dr. Krolik's language-related abilities in his receptive auditory verbal skills in comprehension of verbal passages were above average on the Revised-Woodcock-Johnson Listening Comprehension subtest. His expressive verbal abilities in picture naming and controlled verbal fluency were average to nearly above average, respectively. His verbal performances were remarkable because of the absence of obvious word finding/recall deficits. His above average listening comprehension is noteworthy, in contrast to his relatively poor reading comprehension skills, as will be discussed below.

Dr. Krolik's reading pooled scaled scores (mean = 200; sd = 25), as determined on the Nelson-Denny Reading Test, Form G, were average to well above average on the Vocabulary (252), Comprehension (213), and Reading Rate (218) subtests. His other academic skills, as reflected by age-based standard (mean = 100, sd = 15) and percentile scores on an abbreviated Revised-



Woodcock-Johnson Tests of Achievement, were well above average to average on the Word Attack (124; 95%), Dictation (105; 62%), Writing Samples (111; 78%), Calculation (132; 98%), and Applied Problems (121; 92%) subtests. Recall that his past psychological evaluation in 1998 did not assess reading comprehension, as only the WRAT-III, an academic screening measure but not a measure of functional literacy, was used to assess his oral reading of single words at that time. His reading comprehension and handwriting fell somewhat below his oral phonics, expressive writing, and math skills. Qualitative evidence was noted of excellent phonics knowledge, which is necessary in reading "phonetically regular" words, in spite of his slightly lower reading comprehension skills. Dr. Krolik's handwriting was not consistently legible, consistent with his self-reported lengthy history of graphic-motor difficulties. However, no calculation disability was noted.

Thus, graphic-motor and reading comprehension disorders were noted, consistent with his self-reported or documented childhood and current history of learning difficulties. Such reading comprehension impairments often result in affected persons learning more easily by listening rather than by reading new material to be learned in school, on the job, or at home. Certainly, this learning pattern was evident in Dr. Krolik's and others' observations of his better listening comprehension than reading comprehension. Initial and continuing professional testing requirements also require reading that can result in unfair measurement of affected persons' true professional knowledge as well. To minimize the latter possibility, disability-related test taking accommodations are granted to minimize the likelihood of underestimating his professional knowledge and skills. Thus, both his past and future learning via continuing professional training as well as on-the-job literacy requirements could be affected to some degree via reading (as well as based on poor attention, as will be reported on below).

Dr. Krolik's visual-perceptual-related abilities appeared to be nearly above average on a motor-free spatial perception test. His ability to rapidly generate or create novel designs was above average, though he repeatedly re-drew many previously created designs (thus revealing some perseverative tendencies). His graphic drawing ability was severely impaired, with indications that he used both part- and global-oriented organizational strategies in perceiving and copying a complex geometric design. Thus, his obvious graphic-motor impairments were noted on both handwriting and complex design copying tasks, despite his nearly above average motor-free spatial-perceptual skills. The latter pattern of performances is consistent with a Motor Coordination Disorder.

Dr. Krolik's performances on learning and memory tests were above average to below average on auditory-verbal story and word list memory tests. However, greater retrieval deficits were noted on the word list learning and memory task. His performances were above average to moderately impaired on visual-nonverbal spatial location, design, and picture memory tests. The pattern of performances suggests that he has better simple auditory-verbal (story) and nonverbal (organized pictorial) learning and memory abilities than he has complex verbal retrieval and visual-nonverbal learning and memory abilities for complex designs. These results are associated with greater difficulties in his acquiring and/or retrieving new complex verbal and nonverbal information than in his acquiring and/or retrieving new relatively simple verbal and nonverbal information that is already organized for him. Certainly, no anterograde amnesia was identified; rather, he has clinically significant learning and retrieval deficits, especially when learning new information that he must actively organize in order to memorize.

Executive-related exams revealed that Dr. Krolik had below average rapid mental flexibility, despite receiving continuous corrective and encouraging feedback on the accuracy of his visual search and shifting performances. In contrast, his simple rapid visual search for serial numbers on a related, but less demanding, task was average. No evidence of visual-spatial neglect or inattention was observed on either of these psychomotor shifting or on other perceptual-related tasks.

Manual motor and simple sensory-perceptual exams revealed that Dr. Krolik made no right- or left-sided auditory, visual, or tactile extinction errors. He had average right- and left-sided eye-hand coordination speed using only one hand at a time on manual pegboard tasks that measure lateralized motor functioning. No atypical or lateralized simple sensory or manual motor difficulties would be indicated based on these results.

Socioemotional assessment utilized clinical observations and interviews, as well as self-administered rating scales and personality inventories, from both Dr. Hoblet's 1998 evaluation and this current evaluation. Dr. Hoblet's evaluation did not identify the presence of any obvious mood or anxiety disorders, though Dr. Krolik was reported to have shown possible conscious or unconscious reluctance to admit to having psychological shortcomings, which was associated with his somewhat high self-confidence. Some mild socially distrustful tendencies, as well as compulsive and independent-minded personality tendencies were noted as well on the MMPI-II and MCMI-II personality tests, consistent with some non-specific traits of personality disorder. The latter traits cannot account for his attentional, reading, and motor coordination disorders.

Ratings from Dr. Krolik and his spouse were obtained on current symptom rating scales of ADHD and associated symptoms or disorders (CAARS Self-Report and Observer versions (Connors et al 1998) and Current Symptoms Scales—Self-Report and Other-Report Forms (Barkley & Murphy 1998). Dr. Krolik also completed the Childhood Symptoms Scales—Self-Report Form (Barkley & Murphy 1998). As was evident in Dr. Hoblet's 1998 results and report, Dr. Krolik's spouse (an adult psychiatry resident at the time) reported currently significant symptoms of ADHD (combined type). For example, on the CAARS Observer version, her responses produced significantly elevated t-scores (mean = 50; sd = 10) on the ADHD Index (84), Hyperactivity-Restless (89), DSM-IV Hyperactivity-Impulsive Symptoms, Impulsive-Emotional Lability (85), DSM-IV ADHD Symptoms Total (84), and DSM-IV Inattentive Symptoms (75) scales. She also reported clinically significant reports that he "Often" or "Very Often" exhibits at least 12 of 18 symptoms of ADHD on the Current Symptoms Scale-Other Report Form (Barkley & Murphy 1998) and that he exhibits behaviors consistent with overall total raw and t-scores (72; 76t) on the Brown ADD Scale indicating that ADD is highly probable. By contrast, Dr. Krolik appeared to minimize the severity and presence of these same symptoms based on his retrospective childhood and current self-reported rating scale results on parallel versions of the latter scales. His self-ratings also were discrepant from his behavior as commented on by his childhood teachers (based on their comments in his available childhood educational records), as well as were discrepant from his current behavior as reported by his spouse, and our own clinical observations during this evaluation. Based on our current clinical interview and recent history, we suspect that Dr. Krolik is also experiencing at least mild, though fluctuating, mood disorder.

As Dr. Krolik's parents are both dead, Gerald Krolik (who is his cousin and who is now seriously ill)

NBME00039

was interviewed by phone by this examiner to obtain the only possible recollections of Dr. Krolik's behavior as a school-aged child. Although Gerald Krolik (who is older than Dr. Krolik) rarely visited with Dr. Krolik when they were school-aged children, Gerald Krolik reported that Dr. Krolik was physically "wild...as I remember Ralph often running around or jumping up and down on the couch."

This examiner interviewed Mr. Jack Sona, a University of New Mexico pharmacy school "study buddy". Mr. Sona reported that Dr. Krolik "couldn't sit still and concentrate"...[and] "couldn't sit and do homework without learning by talking in a conversation." Further he said: "he was always on the go, restless, up and down...making careless mistakes on tests." These latter reports are certainly based on less than desirable familiarity but do represent behavioral data that are consistent with ADHD and reading-related learning disorders.

**Summary and Recommendations:**
This cooperative gentleman exhibited several neuropsychological and socioemotional strengths and weaknesses. Such results are consistent with childhood and adult symptoms of Attention-deficit/Hyperactivity and Reading Disorders as well as with probable chronic Motor Coordination as well as non-specific Mood and Personality Disorders. Given the limitations of professional and parental knowledge about hyperactivity and reading disorders in the 1950s when Dr. Krolik went to elementary and high school, it would be expected that if he would not have documentation of childhood diagnostic and treatment services for ADHD and Reading Disorders. Indeed, these disorders were little known by professionals and parents at the time. Indeed, the Rehabilitation Act of 1973, Special Education Act of 1975, and the ADA of 1990, did not even exist when Dr. Krolik graduated from college in 1969. Given his revised reading scaled scores (based on revised NBME policies about the Nelson-Denny Reading Test), we are revising our recommendations that his ADHD, but not Reading Disorder, should be the basis for his substantial limitation in the major life activity of learning.

This report is consistent with Dr. Wurzlow's previous diagnosis of ADHD and goes beyond Dr. Hoblet's subsequent qualified conclusion that Dr. Krolik could have ADHD. Further, Dr. Hoblet did not assess reading comprehension and, therefore, did not administer appropriate measures to comprehensively evaluate his functional reading comprehension and expressive written language as required under disability laws. Thus, Dr. Krolik's chronic complaints of learning problems at the time of his evaluation were not adequately evaluated. Further, using IQ subtest patterns as the basis of whether or not to diagnosis ADHD is a questionable practice because some false negative errors in detecting ADHD occur using this approach and because other retrospective and current rating scale results are considered more crucial in diagnostic practice. Indeed, symptoms of ADHD were present to a reasonable degree of professional certainty in Dr. Krolik's educational records and the collateral reports or rating scale results from a surviving cousin as well as his college classmate and spouse (an adult psychiatric resident). No credible alternative motivational, cultural, ESL, instructional, sensory, psychiatric, personality, or acute medical explanations for Dr. Krolik's childhood and current symptoms could be identified, although he probably would be considered to have a Reading Disorder (although not be considered reading disabled under ADA according to his scaled scores based on pooled norms). While some potential contribution of his spina bifida occulta or possible mild traumatic brain injury could exist, these medical conditions would merely serve to increase (not decrease) his risk of substantial limitations in the major life activity of learning as a domain of disability. The pattern of his



functional strengths and weaknesses as well as some recommendations will be discussed below.

Dr. Krolik has relative neuropsychological strengths in his expressive/receptive oral language, oral phonics, single word reading, expressive written language, math, simple verbal/nonverbal memory, motor-free spatial-perceptual, simple sensory-motor, and reported adaptive living skills. He has unusual compensatory attention skills for brief periods during which he can attend or concentrate better than is typical for persons with ADHD. However, this compensatory capacity is clearly unreliable and does not eliminate his objective limitations in his daily organizational and learning and/or reading comprehension deficits.

Dr. Krolik has relative neuropsychological weaknesses in his reading comprehension, complex verbal/design memory/retrieval, handwriting, complex design copying, and consistent organizational/attentional control skills. Dr. Krolik's personal frustration reflects distress from his likely anger/embarrassment from not overcoming his disabilities through hard work, which had previously worked well for him. Thus, the acquisition of professional information via reading will continue to be impractical and understandably frustrating, especially for lengthy periods or tasks. Likewise, day-to-day organizational and efficient completion of professional demands will continue to be difficult for him because of his poor self-control, especially in settings when he is faced with rapidly changing or demanding reading comprehension and related learning/retrieval demands.

In this context, professional exams are but one occasion during which reasonable accommodations are mandated for eligible students or employees with "substantial limitations" in a major life activity such as learning. Therefore, Dr. Krolik is eligible and would benefit from the availability of a "quiet, distraction-free" testing room and extra test-taking time (1.5-2 times the usual time). These accommodations are directly related to his attention deficit disorders; such accommodations would be helpful in both current and lifelong professional settings. For example, extra reading and memory recall test-taking time would allow him to compensate to some degree for his inefficient and/or inaccurate attention-related reading and memory retrieval limitations. Finally, given the level of his distractibility during reading comprehension, he would probably benefit from a proctor orally reading test questions while he simultaneously reads printed multiple choice test questions as a reasonable reading disability test-taking accommodation as well. Certainly, his true professional potential and knowledge cannot be realized without test-taking accommodations given his apparently lifelong learning or in-service challenges related to his ADHD and, to a lesser degree, Reading Disorders.

Thank you for referring this interesting gentleman. If I can be of assistance, please contact me.

**Diagnoses:**

Axis I  Attention-deficit Hyperactivity Disorder (chronic, probably combined type)
      Reading Disorder (chronic, with comprehension worse than phonics)
      Motor Coordination Disorder (probably mild handwriting and drawing deficits)
Axis II Personality Disorder, Not Otherwise Specified (distrustful, compulsive features)
Axis III Spina bifida, leukemia (in remission), knee surgeries, possible concussive injury
Axis IV Educational/learning problems
Axis V GAF = 70 (current)



NBME00041



**Relative Strengths:**

Working memory greater than verbal/perceptual motor intellectual skills
Expressive and receptive language skills
Motor-free perceptual skills
Simple auditory-verbal (story) and visual-nonverbal (social-pictorial) memory/recall skills
Oral reading, written language, calculation, and applied math skills
Simple sensory-perceptual and manual motor skills
Adaptive communication, self-care, and socialization skills (by history)

**Relative Weaknesses:**

Verbal and perceptual-motor intelligences (related to visual-motor & learning deficits)
Reading comprehension skills (and related learning/retrieval and language skills)
Perceptual-motor (design copying and handwriting accuracy) skills
Complex auditory-verbal and visual-nonverbal design memory/recall skills
Self-control of daily organizational, impulse control, activity level, and learning skills

**Recommendations:**

Classification as Worker/Student with ADHD
Appropriate learning disability-related accommodations (i.e., providing 1.5-2 times
    standard test-taking completion time in quiet room with *printed and orally presented*
    multiple choice test questions via assistance by a proctor)
Consideration of medication treatment of ADHD and, possibly, mild emotional distress
    (which, even if effective, will not resolve his reading deficits)
Consideration of remedial reading and professional content review instructional programs
Re-evaluation, if medically or professionally necessary



Grant Butterbaugh, Ph.D.
Associate Clinical Professor of Psychiatry
La. Licensed Psychologist/Neuropsychologist #681
504-568-3068

Revised, 12-03 (WAIS-III subtest scores included as per NBME instructions/policy over this
professionals objections about the lack of relevance of such information in the diagnosis of ADHD
or any or all LD).



NBME00042

NOV. 23. 2005  8:55PM   DOMENICI-LAW-FIRM                          NO. 8440   P. 15
11/22/05  16:41 FAX 5048999217          KINKO'S RIVERSIDE                        @002

OCHSNER CLINIC
1514 JEFFERSON HIGHWAY
NEW ORLEANS, LA 70121
CABLE ADDRESS: OCHSCLINIC
(504) 842-4000



## PSYCHOLOGICAL EVALUATION

**NAME:**      Ralph Krolik, M.D.    **REFERRED BY:**   Gayle Wurzlow, M.D.
**OC#:**       1591339               **EVALUATED BY:**  Pamela R. Hoblit, Ph.D.
**DOB:**       11/22/44              **EVALUATION:**    10/2 and 11/12/98

Dr. Krolik, a 53 year old white male, came for further evaluation of Attention Deficit Hyperactivity Disorder; the initial diagnosis was made by Dr. Wurzlow, a psychiatrist with expertise in adult ADHD.

Dr. Krolik graduated from the University of New Mexico with a GPA of 2.34 earning a pharmacy degree. He then attended the American University of the Caribbean School of Medicine where he never failed a course. His difficulties began when he began taking the National Board Exam; he has failed different parts repeatedly and sought the evaluation with Dr. Wurzlow to determine the cause of his difficulty.

Dr. Krolik was married for 30 years and then divorced; he has subsequently remarried.

Dr. Krolik was seen for an initial interview; in the second appointment a structured clinical interview was done using the Brown ADD Scales, a set of procedures for diagnosis of ADD; psychological testing was also done.

During his sessions with me, Dr. Krolik was alert and cooperative. During his session with the testing technician, Mrs. Morrison, he was cooperative and worked well on the test. She noted that he was attentive; his concentration was excellent and he had no obvious trouble focusing. However, she did notice that he seemed anxious and flustered on occasions when he knew he was being timed. His hands trembled and he tried to write too quickly at times.

Tests administered were Wechsler Adult Intelligence Scale-Third Edition, Bender Visual Motor Gestalt, Wide Range Achievement Test-Third Revision, Brown ADD Scales-Ready Score, Attention Deficit Scales for Adult (ADSA), Incomplete Sentences, MMPI-2, MCMI-III, and Conners' Continuous Performance Test.



NOV. 23. 2005  8:55PM    DOMENICI-LAW-FIRM                                      NO. 8440    P. 16

FAX 504899217          KINKO'S RIVERSIDE                                                   ✉003

Psychological Evaluation
Ralph Krolik (OC# 1591339)
Page 2

CONFIDENTIAL

<u>Test Findings and Interpretations.</u>   The clinical interview and the clinical history protocol explored a wide-range of functioning.

Dr. Krolik's chief complaint is that he has repeatedly failed medical board exams due to inability to complete the test in the time allotted. He indicated that he first noted the problems with ADHD type symptoms with this experience. His work in the past involved owning his own business; he ran a multimillion dollar chemical company. He indicated that he worked on business matters and phone calls during the day, and then took paperwork home at night. He felt that he did fine with the paperwork and "stayed on top of things." He did not complain about organizational skills, procrastination, or distractibility.

Early school history indicated that he was an "average B/C student, never outstanding." He was actively involved in athletics. He did not recall a history of teacher complaints in grade school of inability to concentrate, attention problems, distractibility, overactivity, impulsivity or disruptive behavior. He was never considered a behavior problem and was never suspended or expelled. He never failed a grade. He did note, "I am a slow reader and a slow processor."

Family history indicated a nephew with learning disability and a cousin with Schizophrenia. He knew of no family members diagnosed with ADHD. He reported no other family history of mood disorder or anxiety disorder. His paternal grandfather was alcoholic. Dr. Krolik reported that his health has been fine. He has a diagnosis of spina bifida, but has not experienced significant problems. He is currently taking Prozac and Ritalin prescribed by Dr. Wurzlow. He denied problems with alcohol use, stating that he rarely drinks. He denied any history of drug use.

Sleep and appetite are reportedly within normal limits.

He has had no previous psychotherapy.

When asked to describe his usual mood, he responded, "Very easy going." He then went on to describe himself as "scrutinous" which he elaborated as meaning "I wonder about people's motives; I am easily pissed off a lot." He denied any problem controlling his temper and added, "Unless I was threatened, I wouldn't hurt anyone."

<u>ADHD Measures.</u>   He was questioned on DSM-IV criteria for diagnosis of ADHD. He reported 0 out of 9 symptoms of inattentiveness, 4 out of 9 symptoms of hyperactivity and impulsivity. The items were answered concerning both childhood and current behaviors.

NOV. 23. 2005   8:56PM   DOMENICI-LAW-FIRM                    NO. 8440   P. 17

KINKO'S RIVERSIDE                                           @004



Psychological Evaluation
Ralph Krolik, M.D. (OC# 1591339)
Page 3

On the Attention Deficit Scales for Adults (a self-report questionnaire), the profile was within normal limits. The ADSA total score was at the 6.7 percentile, extremely low. A percentile rank of 97.7 is considered to be a highly probable indicator of ADHD. Obviously, he scored in the opposite direction. The same finding occurred on another self-report questionnaire, the Brown ADD Scales-Ready Score, Adult Form. His total score was average with a total score of 51. He did show a borderline significant score on the attention cluster. The Threshold Interpretation Scale of total score was ADD possible but not likely. His wife also completed the Brown ADD Scales-Ready Score, Adult Form  to provide collateral information. On her report of his behavior, he scored within the significant range, with a total score at T=76.    Clusters within the significant range were memory (T=88) and attention (T=82). His wife clearly reported a number of features in his behavior which are often associated with ADHD and the Threshold Interpretation Scale of total score was ADHD highly probable.

For further objective information, the Conners' Continuous Performance Test was administered. He had no difficulty with this task and the computer printout noted overall Ralph Krolik performed well on the Conners' CPT. The results of this test do not suggest attention difficulty. Overall, Index = 0.00.

Other Assessment Measures.    Administration of the WAIS-III indicated a Verbal IQ of 116 (high average), a Performance IQ of 109 (average), and a Full Scale IQ of 113 (high average).

Index Score Summary indicated a Verbal Comprehension Index Score of 103, a Perceptual Organization Index Score of 105, and a Working Memory Index Score of 150.

Individual age standard scores were as follows where 10 is average:

| VERBAL TESTS | | PERFORMANCE TEST | |
|---|---|---|---|
| VOCABULARY | 12 | PICTURE COMPLETION | 10 |
| SIMILARITIES | 9 | DIGIT SYMBOL-CODING | 11 |
| ARITHMETIC | 14 | BLOCK DESIGN | 10 |
| DIGIT SPAN | 19 | MATRIX REASONING | 13 |
| INFORMATION | 11 | PICTURE ARRANGEMENT | 13 |
| COMPREHENSION | 11 | | |
| LETTER NUMBER SEQUENCING | 19 | | |

NOV. 23. 2005. 8:56PM   DOMENICI-LAW-FIRM   50489    KINKO'S RIVERSIDE   NO. 8440   P. 18
@ 005

CONFIDENTIAL

Psychological Evaluation
Ralph Krolik, M.D.  (OC# 1591339)
Page 4

There was a statistically significant (.05) level indicating a weakness in Similarities and Information and a strength in Digit Span and Letter Number Sequencing.

Findings from the academic screening measure, WRAT-III, indicated Reading (Word Recognition) standard score 107, Spelling standard score 111, and Arithmetic standard score 110.

Findings from cognitive assessment are noteworthy in several respects. A rather dramatic finding is his exceptionally high score on the Working Memory Index where he had a percentile rank of greater than 99; it is typically (but not always) found that people with ADHD have a relatively low score on this Index; his score was not only in the opposite direction, but exceptionally strong.

There were no obvious indicators of a learning disability, but he may have some learning dysfunction as suggested by a definite pattern of strengths and weakness. Finally, the Verbal Comprehension Index of 103 may be significantly lower than is typical for people taking the medical boards; he may have some difficulty with processing information, particularly as he noted that he is also slow in processing such material.

Personality and Emotional Factors. Findings from objective self-report personality questionnaires did not indicate the presence of a mood disorder or anxiety disorder; this finding was consistent with information reported during the clinical interview. The MMPI findings were within normal limits with some indication of reluctance to admit to problems. Responses suggested that he is likely to be somewhat reclusive and cynical. His interests seem to involve primarily stereotypic male oriented activities and he seemed to lack the cultural interest that are characteristic of individuals with his educational level.

Findings from the MCMI noted his emphasis on self-reliance and self-determination; he may focus on his competitive values and autonomy. His style involves a high degree of self-confidence combined with mistrust of others. He is likely to emphasize his hard-boiled strength.

Recommendations and Conclusions. Dr. Krolik told of many life accomplishments and successes. He played professional football in a Canadian league and also hockey. He has a pilot's license and in the past used to enjoy flying airplanes; he also had a collection of cars including Porsche's and Mercedes He was in the military and earned a purple heart. He enjoyed owning and running his multimillion dollar business.

He has encountered a high degree of frustration associated with this unaccustomed experience of failure as he has attempted to pass his Boards. He indicated that he has been feeling a great deal of stress and anger about the situation.

NOV. 23. 2005. 8:57PM   DOMENICI-LAW-FIRM                          NO. 8440   P. 19
                        5048~~~~~           KINKO'S RIUERSIDE                    005

CONFIDENTIAL

Psychological Evaluation
Ralph Krolik, M.D. (OC# 1591339)
Page 5

Given his life experiences of success and accomplishment and his personality style of maintaining a confident, self-determined and decisive approach, he may have had a reluctance (possibly unconscious) to admit to the types of deficits associated with Attention Deficit Hyperactivity Disorder. Therefore, it seems appropriate for him to pursue further evaluation. He indicated that he has an appointment to see Dr. Mark Zielinski, a psychiatrist with expertise in Adult Attention Deficit Hyperactivity Disorder. Even though the standard procedures for diagnosis of ADHD used in the current evaluation did not indicate a high probability of the presence of ADHD, there is no definitive test for Attention Deficit Hyperactivity Disorder. As there is the possibility that he has ADHD, further evaluation and another opinion may be helpful.

*Pamela R. Hoblit*
Pamela R. Hoblit, Ph.D.
Clinical Psychologist

jk

OCHSNER CLINIC

1514 JEFFERSON HIGHWAY
NEW ORLEANS, LA. 70121
CABLE ADDRESS: OCHSCLINIC
(504) 842-4025
FAX (504) 842-3236

December 16, 1998

DEPARTMENT OF PSYCHIATRY
CHAIRMAN
  ALVIN M. ROUCHELL, M.D.

GENERAL PSYCHIATRY
  RUDOLPH H. EHRENSING, M.D.
  GERALD C. HEINTZ, M.D.
  DEAN A. HICKMAN, M.D.
  CECILE L. MANY, M.D.
  RICHARD F. MESTAYER, III, M.D.
  MARY C. W. OLMSTED, M.D
  JUDITH M. ROHEIM, M.D.
  ALVIN M. ROUCHELL, M.D.
  GAYLE F. WURZLOW, M.D.

CHILD PSYCHIATRY
  CECILE L. MANY, M.D.
  JUDITH M. ROHEIM, M.D.

CLINICAL PSYCHOLOGY
  R. JOHN WAKEMAN, PH.D., HEAD
  ROBERT P. BAKER, PH.D.
  PATRICIA BROCKMAN, PH.D.
  ADEN A. BURKA, PH.D.
  MORRIS E. BURKA, III, PH.D.
  EILEEN I. CORREA, PH.D.
  PAMELA R. HOBUT, PH.D.

CLINICAL SOCIAL WORK
  LEONARD G. HUDZINSKI, PH.D., HEAD
  MARVIN W. CLIFFORD, B.C.S.W., D.S.W
  JON GLOVER, B.C.S.W.
  LEONARD GRUBSTEIN, B.C.S.W.
  SUSAN G. KROLL-SMITH, B.C.S.W.
  PHYLLIS SHNAIDER, B.C.S.W.
  HELEN STAVROS, B.C.S.W.
  EILEEN M. WYNNE, B.C.S.W.

Mr. Steven S. Seeling, J.D.
Vice President for Operations
Educational Commission for Foreign
 Medical Graduates
3624 Market Street
Philadelphia, PA 19104-2685

Re:   Dr. Ralph Krolik

Dear Mr. Seeling:

I am writing in regard to Dr. Ralph Krolik. His identification number is 0546768-3. During the past year, I have been evaluating Dr. Krolik for attention deficit disorder. It is my conclusion based on DSM-4 criteria, that he has the hyperactive impulsive type of this disorder with a subtype of symptoms with over focus. This is subtype 3 in Dr. Ameus literature which is a guide for primary care physicians which I am enclosing for your information. Dr. Krolik has a life long history of hyperactivity and impulsivity. This was documented by a rabbi who knew the family well. In exploring his early childhood history and his developmental and educational history, he was always hyperactive and impulsive in the classroom. He did not do homework but got by on auditory memory. He has a life long history of inattention. He has marked difficulty focusing. Although often at times as in the case with many ADD people, he can over focus or hyper focus. He uses repetitive tasks and tenacity to complete his work which requires a great deal of energy. However, its reported by his family and friends that throughout his life he has difficulty maintaining attention. He frequently is not listening to conversation or reading clues from the environment. As a result of this, he may miss interpret instructions and has difficulty with home work chores and duties. Frequently forgetting things and having to repeat the task many times over before it is completed. He has difficulty with organizational skills and activities. Tasks need to be rigidly performed in order for him to get the job done. He is easily distracted by external stimuli in the environment. His mind wonders frequently in general conversation.

Throughout his life he has been hyperactive and fidgety. He has difficulty at present even sitting through a movie without frequent interruptions and movement. He has difficulty in study group situations with interrupting frequently with impatience and with body movements. He has a hx of being left-handed. He was forced to use his right hand. Presently uses his right hand for writing. He is still impulsive. He frequently blurts out answers in group conversations which his peers find distressing. He has difficulty waiting and taking turns, and frequently interrupts when he intrudes on others.





December 16, 1998
Page 2


These behaviors have impaired him in group situations and functioning both academically and socially. I would rate the severity of this disorder as moderately severe with a severe handicap in test situations. In terms of time, again, I think his perseverative qualities which tend to handicap him. (Not paying attention to time and has difficulty moving on to the next questions.) In conclusion, I have further documented that Dr. Krolik does have attention deficit disorder. He has the subtype 3 which is the ADD symptoms plus cognitive inflexibility, trouble shifting attention, many negative thoughts and behavior with worrying which tend to make him compulsive in nature.

I am enclosing Dr. Ameus' ADD guide. I feel that Dr. Krolik certainly meets all criteria for ADD. He has a life long history of this disorder, also a school history of this disorder and I hope you can give him the needed attention he's asked for taking this test.


Sincerely,

Gayle F. Wurzlow, M.D.


GFW:amb
Enclosures



OCHSNER CLINIC

1514 JEFFERSON HIGHWAY
NEW ORLEANS, LA. 70121
CABLE ADDRESS: OCHSCLINIC
(504) 842-4025
FAX (504) 842-3236

RECEIVED

JUN - 1 1999

OFFICE OF
TEST ACCOMMODATIONS

May 17, 1999

DEPARTMENT OF PSYCHIATRY
CHAIRMAN
   ALVIN M. ROUCHELL, M.D.

GENERAL PSYCHIATRY
   RUDOLPH H. EHRENSING, M.D.
   GERALD C. HEINTZ, M.D.
   DEAN A. HICKMAN, M.D.
   CECILE L. MANY, M.D.
   RICHARD F. MESTAYER, III, M.D.
   MARY C. W. OLMSTED, M.D.
   JUDITH M. ROHEIM, M.D.
   ALVIN M. ROUCHELL, M.D.
   GAYLE F. WURZLOW, M.D.

CHILD PSYCHIATRY
   CECILE L. MANY, M.D.
   JUDITH M. ROHEIM, M.D.

CLINICAL PSYCHOLOGY
   R. JOHN WAKEMAN, PH.D., HEAD
   ROBERT P. BAKER, PH.D.
   PATRICIA BROCKMAN, PH.D.
   ADEN A. BURKA, PH.D.
   MORRIS E. BURKA, III, PH.D.
   EILEEN I. CORREA, PH.D.
   PAMELA R. HOBLIT, PH.D.

CLINICAL SOCIAL WORK
   LEONARD G. HUDZINSKI, PH.D., HEAD
   MARVIN W. CLIFFORD, B.C.S.W., D.S.W
   JON GLOVER, B.C.S.W.
   LEONARD GRUBSTEIN, B.C.S.W.
   SUSAN G. KROLL-SMITH, B.C.S.W.
   PHYLLIS SHNAIDER, B.C.S.W.
   HELEN STAVROS, B.C.S.W.
   EILEEN M. WYNNE, B.C.S.W.

U. S. Medical Licensing Examination
3624 Market Street
Philadelphia, PA 19104-2685

Attn:   Mary McAvinue
        3626 Marke Street
        Philadelphia, PA 19104

Re:   Ralph Elliot Krolick
      124 Coolidge Street
      Jefferson, LA 70121
      USMLE ID: 0-546-768-3

Dear Ms. McAvinue:

Enclosed are some early childhood records from Dr. Krolick's school history. These were found subsequent to his mother's death, and are enclosed to validate the previous letter supporting the diagnosis of attention deficit disorder, hyperactive impulsive type. In reviewing these report cards which go back to approximately 3rd grade, the teachers notes clear show difficulty with concentration, the patient rushing through work, and quite explicitly lack of attention during lessons, particularly on the 11/15/54 comment by his teacher. In your previous letter, you requested further documentation that this difficulty was pervasive about his learning experiences. I hope that these report cards will serve as some documentation for your request.

Sincerely,

Gayle F. Wurzlow, M.D.

GFW:amb



NBME00138

07 19 00   07:35   ☎87 9833     5TH FLOOR     ☒008

Pupil's Name: _____

## INTERPRETATION OF LETTERS

A—means that the quality and quantity of work have been Excellent.

B—means that the quality and quantity of work done have been, Above the Average.

C—means that the quality and quantity of work done have been Average.

**DANGER LINE**

D—means that the quality and quantity of work done have been Below the Average.

E—means that the quality and quantity of work done have Not Been Acceptable.

If any item is not marked, it indicates that the teacher is not ready to report.

| LANGUAGE | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Reading with understanding | | C | C | |
| 2. Interest in reading | | C | C | |
| 3. Expression of thoughts orally | | C | C | |
| 4. Expression of thoughts in writing | | C | C | |
| 5. Learning to spell words needed | | C | B | A |
| 6. Handwriting | | C | B | A |

| ARITHMETIC | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Working with accuracy and reasonable speed | | C | B | C |
| 2. Ability to reason | | C | B | C |

| NATURAL SCIENCE | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Learning to observe | | | | |
| 2. Developing an understanding of nature | | | | ✓ |

| SOCIAL STUDIES | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Developing interest in and understanding of their own and other communities | | | B | |
| 2. Obtaining information and materials independently | | | B | |

| MUSIC (Check one) | |
|---|---|
| 1. Outstanding achievement | |
| 2. Satisfactory participation | ✓ |
| 3. Shows little interest | |

## ART (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement | | | | |
| 2. Satisfactory participation | ✓ | | | ✓ |
| 3. Shows little interest | | | | |

## PHYSICAL EDUCATION (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement | | | | |
| 2. Satisfactory participation | ✓ | | | ✓ |
| 3. Shows little interest | | | | |

## HABITS AND ATTITUDES

Interpretation of Letters

S—satisfactory.

U—unsatisfactory.

I—shows improvement.

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Follows directions | | S | S | S |
| 2. Completes work promptly | | S | S | S |
| 3. Observes school regulations | | S | S | S |
| 4. Respects the rights of others | | S | S | S |
| 5. Is courteous | | S | S | S |
| 6. Is dependable | | S | S | S |
| 7. Makes an effort | | S | S | S |
| 8. Shows initiative | | S | S | S |
| 9. | | | | |

## ATTENDANCE

After having been absent, a pupil must present a dated note from a parent or guardian giving the reason for the absence.

| | Sept. | Oct. | Nov. | Dec. | Jan. | Feb. | Mar. | April | May | June |
|---|---|---|---|---|---|---|---|---|---|---|
| Days present | | 9 | | | | 19 | 23 | 19 | | |
| Days absent | 1 | 22 | | | | 1 | | 1 | 22 | |
| e tie | | | | | | | | | | |

## TEACHER'S COMMENTS

DATE _____ 19 _____

_handwritten comments_

Teacher's signature: _____

## PARENT'S COMMENTS

Parent's signature: _____

07  19  00     07:36     ☎8    9833          5TH FLOOR                              ☑009

## INTERPRETATION OF LETTERS

A—Excellent.
B—Very good.
C—Normal progress for the grade.
D—Below average.
E—Seriously below grade standard.

### HABITS AND ATTITUDES

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Follows directions. | | C | C | C |
| 2. Completes work promptly. | | B | B | B |
| 3. Observes school regulations. | | C | B | C |
| 4. Respects the rights of others. | | C | D | C |
| 5. Is courteous. | | C | C | C |
| 6. Is dependable. | | C | C | C |
| 7. Makes an earnest effort. | | C | C | C |
| 8. Show initiative. | | C | C | C |

### Progress in LANGUAGE ARTS

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In reading with understanding. | | A | B | B |
| 2. Is interest in reading. | | B | B | B |
| 3. In expression of thoughts orally. | | C | C | C |
| 4. In expression of thoughts in writing. | | B | B | B |
| 5. In learning to spell words needed. | | A | C+ | |
| 6. In handwriting. | | A | C+ | |

### Progress in SOCIAL STUDIES

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In developing interest in and understanding of own and other communities. | | C | A | B |
| 2. In obtaining information and materials independently. | | C | C | C |

### Progress in ARITHMETIC

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In working with accuracy and reasonable speed. | | B | A | B |
| 2. In ability to reason. | | A | A | A |

### Progress in NATURAL SCIENCE

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. In ability to observe closely and to form conclusions. | | C | C | B |
| 2. In developing interest in and understanding of natural science. | | C | | |

### HEALTH

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Is developing an understanding of healthful living. | | D | D+ | D |

### MUSIC (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | | ✓ | ✓ | ✓ |
| 3. Shows little interest. | | | | |

### ART (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | | ✓ | ✓ | ✓ |
| 3. Shows little interest. | | | | |

### PHYSICAL EDUCATION (Check one)

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| 1. Outstanding achievement. | | | | |
| 2. Satisfactory participation. | | ✓ | ✓ | ✓ |
| 3. Shows little interest. | | | | |

### OTHER ACTIVITIES

1.
2.
3.
4.

### ATTENDANCE

| | Sept | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | June |
|---|---|---|---|---|---|---|---|---|---|---|
| Days present. | 12 | 22 | 17 | 18 | 19 | 15 | 18 | 21 | | |
| Days absent. | 0 | 0 | 0 | 3 | 4 | 4 | 0 | 0 | | |
| Times late. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | |

### TO PARENTS:

This report is sent home four times a year to inform you of the progress your child is making. If special help is needed to progress with the class you will be invited to confer with the teacher.

You are welcome to arrange to visit the school for a conference with the teacher or principal for further information about your child.

---

Name: _Ralph Krabb_

DATE: _Sept._ 195_5_

### TEACHER'S COMMENTS

_Ralph is eager to learn but usually wants more than his share of attention._

PARENT'S COMMENTS

Parent's Signature: _Krowell_

DATE: _Sept._ 195_6_

### TEACHER'S COMMENTS

_reading improved. Working arithmetic_

### PARENT'S COMMENTS

_Has ability to earn more than B's—_

Parent's Signature: _Krowell_

_(Principal signature)_
Principal

07 19 00    07:37   ☎8    9833           5TH FLOOR                                    ☒010

_(Rdaph Nichols)_

Where, rating is shown by letters:
A — 90 to 100
B — 70 to 79
C — 60 to 69
D — 50 to 59
E — Under 50
(Passing mark is 50)

| SUBJECT | | | FIRST REPORT Pupil's Marks | FIRST REPORT School Medians | FIRST REPORT Attitude and Effort | SECOND REPORT Pupil's Marks | SECOND REPORT School Medians | SECOND REPORT Attitude and Effort | THIRD REPORT Pupil's Marks | THIRD REPORT School Medians | THIRD REPORT Attitude and Effort | FINAL REPORT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ENGLISH | Literature | | 46 | 6 G | | 60 | 58 | | 66 | 61 | | 59 |
| | Composition | | 60 | 6 G | | 72 | 64 | | 62 | 60 | | 64 |
| SOCIAL STUDIES | History | | | | | | | | | | | |
| | Geography | | 45 | F | | 57 | 58 | | 61 | 66 | | 66 |
| | | | 60 | C | | 50 | 61 | | 39 | 60 | | 50 |
| MATHEMATICS | Arithmetic | | | | | | | | | | | |
| | Algebra. Exam | | | | | 54 | 54 | | 35 | 59 | | |
| SCIENCE | General Science | | 71 | C | | 54 | 68 | | 42 | 47 | | 56 |
| | Chemistry | | | | | | | | 47 | 75 | | |
| | Physics | | | | | | | | | | | |
| | Biology | | | | | | | | | | | |
| LANGUAGES | French | | 54 | G | | 60 | 59 | | 58 | 63 | | 60 |
| | Latin | | | | | | | | | | | |
| | German | | | | | | | | | | | |
| ART | | | | | | | | | | | | |
| MUSIC | | | | | | | | | | | | |
| HOME ECONOMICS | | | | | | | | | | | | |
| INDUSTRIAL ARTS | | | | | | | | | | | | |
| COMMERCIAL | Record Keeping | | | | | | | | | | | |
| | Business Arithmetic | | | | | | | | | | | |
| | Business Practice | | | | | | | | | | | |
| | Bookkeeping | | | | | | | | | | | |
| | Typewriting-Exam | | 39 | P | | 45 | 51 | | 48 | 52 | | 58 |
| | Typewriting-W.P.M. | | | | | | | | | | | 27 |
| | Shorthand-Exam | | | | | | | | | | | |
| | Shorthand-W.P.M. | | | | | | | | | | | |
| | Related English | | | | | | | | | | | |
| | Retail Merchandising | | | | | | | | | | | |
| HEALTH | | | | | | | | | | | | |
| PHYSICAL EDUCATION | | | 600 | | | 90 | 95 | | P 65 600 | | | P G |

**TEACHER'S COMMENTS**

FIRST REPORT:
_Ralph is working well. We are looking for better progress._

SECOND REPORT:
_Ralph may be a little over confident in his ability to do Grade X work. Too many of his marks are borderline. These concentrated effort on his studies should settle his standing._

THIRD REPORT:
_Ralph is much interested in the possibility of experimentation in Algebra, and typing, depending upon the result of the June examinations._

FINAL REPORT:

JUNE 1942

_(signature)_
Teacher or Principal