# Exhibit K

KROLIK M.D. MARY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Ralph E. Krolik, M.D.,

   Plaintiff,

vs.

National Board of Medical Examiners,

   Defendant.

No. CV05-0315 PHX FJM

DEPOSITION OF MARY LYNN FINNELL KROLIK, M.D.

Phoenix, Arizona

February 28, 2006

Prepared by:

Meri Coash, RMR
Certified Realtime Reporter
Certified Reporter #50327

(Copy)

2

1                    I N D E X

2  WITNESS                                      PAGE

Page 1

KROLIK M.D. MARY

3  symptoms in your husband. And what you had answered was
4  that you had noticed that he had test anxiety and that you
5  thought he might have a reading disorder.
6      A.  No --
7      Q.  Let me finish the question, please.
8          Now, this test anxiety and reading disorder
9  you were thinking of, did you notice those in him before
10 your residency, when you were introduced to the DSM, or
11 did you notice those in him after you were introduced to
12 those DSM factors?
13     A.  I noticed that he interrupted, because he was
14 asked to leave the study group because he interrupted so
15 much. That was before any kind of residency training. I
16 knew that he was an auditory learner in medical school. I
17 mean, I noticed that. And I noticed it took him a long
18 time to read anything. Took him a lot longer than what it
19 seemed like it should take him.
20         The test anxiety, I just thought -- I mean,
21 I was just trying to make some kind of sense, and the only
22 thing I could think of was that he went in the test and
23 just froze up. So it was something I sort of made up as a
24 reason. I never particularly noticed him having test
25 anxiety any more so than the rest of us had test anxiety.

94

1      Q.  That was before your residency?
2      A.  Before my residency.
3      Q.  Now, you had mentioned the Brown scale
4  questionnaire. Is that this Brown ADD Scales-Ready Score
5  adult form?
6      A.  I'm assuming that's what it is, yes.

Page 80

# Exhibit L

Pete V. Domenici, Jr., Esq.
Domenici Law Firm, P.C.
320 Gold Avenue SW, Suite 1000
Albuquerque, New Mexico 87102
(505) 883-6250
Attorney for Plaintiff Krolik, M.D.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RALPH E. KROLIK, M.D., ) <br> ) <br> Plaintiff, ) <br> Vs. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> NATIONAL BOARD OF ) <br> MEDICAL EXAMINERS, ) <br> ) <br> Defendants. ) <br> ) | CASE NO. CV-05-0315 PHX FJM <br><br> **SUPPLEMENTAL RESPONSE TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSIONS, INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS** |

TO:   National Board of Medical Examiners
      C/o Diane M. Johnsen, Esq.
      Osborn Maledon, P.A.
      2929 North Central, Suite 2100
      Phoenix, Arizona 85012-2794

Plaintiff Dr. Ralph Krolik, by and through his attorney of record, Domenici Law Firm, P.C. (Pete V. Domenici, Jr.), hereby submits for <u>clarification</u> his Supplemental Response to Defendant's First Set of Requests for Admissions, Interrogatories and Requests for Production of Documents.

<u>REQUESTS FOR ADMISSIONS</u>

1. Admit that prior to 1999, you had not sought accommodations, pursuant to the Americans with Disabilities Act, in connection with any examination.

Admit __X with qualifications_____ Deny _____

During my tenure in medical school, accommodations were made available to students for more time to complete exams and whether the accommodations were made pursuant to the ADA or not, I am not sure, but accommodations for more time were always made available and I used the added time to complete the exams.

2. Admit that you have never been granted accommodations, pursuant to the Americans with Disabilities Act, in connection with any examination.

Admit _X with qualifications_____ Deny _____

During my tenure in medical school, accommodations were made available to students for more time to complete exams and whether the accommodations were made pursuant to the ADA or not, I am not sure, but accommodations for more time were always made available and I used the added time to complete the exams.

<u>Clarification</u>   We enclose a copy of a November 28, 2005 letter from Frank Fine, D.C., M.D. regarding Dr. Krolik and the accommodations for him in medical school.

INTERROGATORIES

1. For the period from the date of your college graduation to the present, identify each employer with whom you have been employed (including any consulting or independent contractor work), and for each such employer, identify:

   a. the dates of your employment;

2

b. the employer's address and telephone number;

c. the name(s) of your supervisors;

d. the position or positions you held and a description of your duties;

e. the wage or salary earned from the employer; and

f. the reason your employment ended.

RESPONSE:

| | |
|---|---|
| Dates | 1965-1969 |
| Employer | Campbell Drug, Albuquerque, NM |
| Supervisor | Dick Campbell |
| Position | Pharmacy intern |
| Wage | ? |
| Reason Left | Worked 6 months. Looking for own store. |

| | |
|---|---|
| Dates | 1969-1970 |
| Employer | Dale Drug, Phoenix, AZ |
| Supervisor | Dale ? |
| Position | Pharmacy intern |
| Wage | ? |
| Reason Left | In 1969 passed the Arizona pharmacy boards; short answer questions. First job out of pharmacy school. Quit. |

| | |
|---|---|
| Dates | 1969-1970 |
| Employer | Mark Graf Pharmacy, Phoenix, AZ |
| Supervisor | Mark and Ed Graf |
| Position | Pharmacy intern and Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| | |
|---|---|
| Dates | 1969-1970 |
| Employer | Issac School Pharmacy, Phoenix, AZ |
| Supervisor | Abe Rolnik |
| Position | Pharmacy intern and Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| | |
|---|---|
| Dates | 1969-1970 |
| Employer | Apache Trail Pharmacy, Apache Jct, AZ |
| Supervisor | Bob Bishop |
| Position | Pharmacy intern and Pharmacist |

3

Wage            ?
Reason Left     Owner went broke.


Dates           1970
Employer        St. Lukes Hospital Pharmacy
Supervisor
Position        Registered Pharmacist
Wage            ?
Reason Left     Quit to go to Mexico to attend Guadalajara medical school.

Dates           1970-1971
Employer        Guadalajara, Mexico medical school
Supervisor
Position        medical student
Wage            ?
Reason Left     Attended school for one year and was not able to overcome the dual-language program and academic challenges. Quit

Dates           1972-1974
Employer        Sav-On Drug, Gallup, NM
Supervisor      Self
Position        Owner, Pharmacist
Wage            ?
Reason Left     Returned from Mexico and opened his own pharmacy in Gallup, New Mexico. Was successful for one year but had to work 18-20 hours/day to complete all the assignments. Sold the business for cash; $40,000.

Dates           1974 -
Employer        New York Life Insurance
Supervisor      Self
Position        Agent
Wage            ?
Reason Left     Could not work in the structured environment.


Dates           1974-1991
Employer        CEO and President CAEM MFG Corp. and REK Industries, Alb, NM
Supervisor      Self
Position        CEO and President
Wage            $300,000

4

<u>Reason Left</u>   REK Industries was a distributorship for hand cleaner. Dr. Krolik developed his own product with a chemist from Lever Brothers. He had the formula for hand cleaner and plastic scrubbers. Sold business to start REK Chemical. At REK Chemical, Dr. Krolik worked 20 hours/day for 20 years. There was a lot of turnover in his staff but the customers and suppliers were loyal to the business. Dr. Krolik transitioned to medical school after the EPA and other regulatory issues made it difficult to operate without paperwork and structure.

<u>Dates</u>            1991-1996
<u>Employer</u>        Medical student – American Medical School of the Caribbean
<u>Supervisor</u>
<u>Position</u>
<u>Wage</u>
<u>Reason Left</u>    Graduated. After graduating, Dr. Krolik's wife, Mary passed her medical boards and got a residency in New Orleans.

<u>Dates</u>            1997-2000
<u>Employer</u>        C's Pharmacy, New Orleans, LA
<u>Supervisor</u>      Larry Ciolino
<u>Position</u>        Pharmacist
<u>Wage</u>            ?
<u>Reason Left</u>    Fired.

<u>Dates</u>            1997-2000
<u>Employer</u>        Rite Aid, LA
<u>Supervisor</u>
<u>Position</u>        Pharmacist
<u>Wage</u>            ?
<u>Reason Left</u>    Fired.

<u>Dates</u>            1997-2000
<u>Employer</u>        Castellon Pharmacy, LA
<u>Supervisor</u>      Dick Castellon
<u>Position</u>        Pharmacist
<u>Wage</u>            ?
<u>Reason Left</u>    Would not sell names to dealers and was fired.

<u>Dates</u>            1997-2000
<u>Employer</u>        Winn Dixie Pharmacy, LA
<u>Supervisor</u>
<u>Position</u>        Pharmacist
<u>Wage</u>            ?
<u>Reason Left</u>    Fired.

<u>Dates</u>            1997-2000

5

| | |
|---|---|
| Employer | Wal-Mart Pharmacy, Hammond, LA |
| Supervisor | |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Quit. Returned to Phoenix. |

| | |
|---|---|
| Dates | 2000-2004 |
| Employer | Wal-Mart Pharmacy, New Mexico |
| Supervisor | Melissa Christenson |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| | |
|---|---|
| Dates | 2000-2004 |
| Employer | Albertsons Pharmacy, Phoenix, AZ |
| Supervisor | Brian ? |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| | |
|---|---|
| Dates | 2000-2004 |
| Employer | Bashas Pharmacy |
| Supervisor | Ed Sava |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Fired. |

| | |
|---|---|
| Dates | 2000-2004 |
| Employer | Dependable Staffing |
| Supervisor | Laura was the scheduler |
| Position | Pharmacist |
| Wage | ? |
| Reason Left | Bad assignments. Quit. |

| | |
|---|---|
| Dates | 2000-2005 |
| Employer | Studying for Medical Boards |
| Supervisor | |
| Position | |
| Wage | |
| Reason Left | |

| | |
|---|---|
| Dates | 2004-2005 |
| Employer | Working for myself - construction |

6

<u>Supervisor</u>   Self
<u>Position</u>   Construction Supervisor
<u>Wage</u>   None
<u>Reason Left</u>   Current position.

<u>Clarification:</u>  We have not further information and specific dates on the employment history for Dr. Krolik.

2.   Provide a detailed computation of the damages you are seeking in this matter, and if you are seeking more than one category of damages, provide a separate computation of each, and also identify the legal basis for your contention that you are entitled to these amounts.

<u>RESPONSE:</u>

We are still working on the damage claim and will supplement this response.

6. Concerning the first claim for relief in the First Amended Complaint, identify each and every act that you contend constitutes a violation of the Americans with Disabilities Act, a detailed description of the alleged act, who made or took each such act, the date of such act, the duration of each such act, and identify others who were present.

RESPONSE:

Dr. Wurzlow – Dr. Wurzlow is a duly certified recognized professional on ADD and gave an opinion on Dr. Krolik's disability with recommendations for reasonable accommodation. Dr. Wurzlow is a certified professional with diagnosis of the condition and the documentation was not considered and not accepted by USMLE for Krolik's reasonable accommodation request. This was the first point when Dr. Krolik's rights under the ADA were violated.

Dr. Hoblet – Dr. Hoblet's findings could not rule out ADD as a disability but ADD is less probable. However, individuals with ADD can be the last to know. Dr. Hoblet's findings were not considered and not accepted by USMLE for Krolik's reasonable accommodation request.

Dr. Butterbaugh – Dr. Butterbaugh's examination of Dr. Krolik found a reading disability and disorder, poor phonics, poor spelling, and an individual who learned through listening comprehension rather than through reading, or an individual who had good phonics but did not understand what he read. Butterbaugh's findings of Dr. Krolik also found an individual with ADD who had problems staying on task over a long period and who had problems with sustained attention. Dr. Krolik did

11

not have a problem with short term or immediate attention. Dr. Krolik's disability affected a substantial life activity. Dr. Butterbaugh put forth Krolik's self report, childhood symptoms of ADHD, current symptoms of ADHD, family members' reporting, and Krolik's substantial limitations that are disabling. These findings were not considered and not accepted by USMLE for Krolik's reasonable accommodation request and USMLE failed to state why they rejected Dr. Krolik's wife's assessment of his disability.

Dr. Butterbaugh's second report with T-scores on Dr. Krolik was disregarded by USMLE. Dr. Butterbaugh demonstrated that Dr. Krolik's major life activity of work and learning is substantially limited. Dr. Krolik' testing, study habits, not finishing exams, and not sitting and reading substantially limits his major life activity of work and learning. Dr. Krolik did pass college courses but was an underachiever. USMLE did not refute the Krolik test scores done by Dr. Butterbaugh. The USMLE step testing tests attention, comprehension, professional knowledge, professional reasoning, vocabulary, reading, and writing.

# FRANK FINE, D.C., M.D.

QUALIFIED MEDICAL EXAMINER

803 COFFEE RD., SUITE 4,
MODESTO, CA 95355
Office: (209) 569-0776
Fax: (209) 569-0778

DEC 0 5 2005

November 28, 2005

Pete Domenici, Jr. P.C.
320 Gold Avenue South-West
Suite No. 1000
Albuquerque, NM 87102

I received a phone call from Dr. Ralph Krolick the other day. As you are aware, Dr. Krolick is a very good friend of mine. We went to Medical School together and studied together. He informs me of his difficulty in passing the USMLE Medical Exam Board. Dr. Krolick has informed me that he needs some more time in order to take the test due to his history of ADHD disorder. As I recall, while we were in Medical School together, I spent many hours reading aloud and studying and reviewing for test exams with Dr. Krolick. He was also required to have some extra time to complete some testing in some of the courses such as Neuroanatomy and Microbiology courses. If I recall correctly, the Professors allowed him some extra time due to his disability.

Hopefully the USMLE Medical Board will allow Dr. Krolick some extra time to review the questions due to his disability with ADHD disorder.

If you should have any further questions in this matter, please feel free to contact me.

FRANK FINE, D.C., M.D.
FF/mk/sr
cc: Ralph Krolick, M.D.