Diane M. Johnsen, 007634 / djohnsen@omlaw.com
Ronda R. Fisk, 022100 / rfisk@omlaw.com
OSBORN MALEDON, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona  85012-2794
(602) 640-9000

Attorneys for National Board of Medical Examiners

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ralph E. Krolik, M.D., | No. 05-CV-0315-PHX-FJM |
| Plaintiff, | |
| vs. | **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| National Board of Medical Examiners, | |
| Defendant. | **(Oral Argument Requested)** |

Plaintiff's Response to the Motion for Summary Judgment by National Board of Medical Examiners ("NBME") fails to establish a genuine issue of material fact preventing entry of summary judgment against him.

In an order issued five months ago, this Court denied Plaintiff's Motion for Preliminary Injunction because it found that "there is no evidence that the plaintiff has been limited in the major life activities of working and learning." Dkt. 71 at 2.  The evidence offered on the pending Motion is virtually the same as Plaintiff presented in connection with his injunction application.  After full discovery, Plaintiff still has failed to offer evidence that his alleged disability has substantially limited him in any major life activity.  For this reason, and for those set forth in the Motion, NBME's motion should be granted, and the sole remaining claim should be dismissed.

A.      The Legal Standard.

Plaintiff concedes that he has the burden of demonstrating that a genuine issue of material fact exists as to whether he is disabled within the meaning of the ADA.

1   Response in Opposition to Defendant's Motion for Summary Judgment ("Resp."), at

2   6; *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir. 2005) ("*Wong*

3   *II*").

4          The Ninth Circuit applies a three-part inquiry to decide whether a plaintiff is

5   entitled to accommodations under the ADA: (1) whether the plaintiff's condition

6   constitutes a mental or physical impairment; (2) whether the life activities in which

7   the plaintiff alleges he is limited are major life activities; and (3) whether the

8   impairment substantially limits him in the identified major life activities.  *Wong II*,

9   410 F.3d at 1063.  The terms "major life activities" and "substantially limits" "need to

10  be interpreted strictly to create a demanding standard for qualifying as disabled."

11  *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 197 (2002).

12         As argued in the Motion, Plaintiff cannot satisfy any of the three requirements.

13  NBME disputes that Plaintiff is mentally impaired and that any impairment limits him

14  in a major life activity.  But for purposes of judicial economy, this Reply

15  Memorandum will focus on the third element.  To avoid summary judgment, Plaintiff

16  must present evidence that a genuine issue of material fact exists as to whether he is

17  *substantially limited in one or major life activities as compared to the average person*

18  *in the general population*.  *Wong II*, 410 F.3d at 1069.  Plaintiff fails to offer evidence

19  that he has been substantially limited in the "major life activities" of working or

20  learning.  In the absence of any evidence that Plaintiff is substantially limited as

21  compared to the average person, his claim necessarily fails.

22
    **B.      Plaintiff Cannot Prove He Is Substantially Limited In a Major Life**
23  **         Activity.**

24         Plaintiff asserts he is substantially limited in the "major life activities" of

25  learning and working.  As argued in the Motion, the Court should not consider

26  Plaintiff's belated "learning" claim, and should reject his "working" claim because of

27  questions surrounding whether "working" constitutes a "major life activity" under the

28  ADA.  But if the Court is inclined to consider Plaintiff's assertions, it should reject

1    both of them because he has failed to meet his burden to produce evidence sufficient

2    to create a material issue of fact as to whether his alleged impairment has substantially

3    limited him in either major life activity.  As the Court concluded in denying Plaintiff's

4    injunction application, "He has learned well enough to become a licensed pharmacist

5    and pilot and has had a productive work life."  Dkt. 71 at 2.

6

7    **1.    Plaintiff offers no evidence that his alleged impairment substantially limits the major life activity of working.**

8    Using Plaintiff's own admissions and documents, the Motion presented

9    indisputable evidence that for over thirty years he has been successful at working,

10   beginning before college with an honorable discharge from the U.S. Army and,

11   following college, with post-graduate pharmacy internships.  Motion for Summary

12   Judgment ("Mot."), at 9.  Eventually Plaintiff purchased and operated a pharmacy of

13   his own, then went on to found, develop and run a highly successful cleaning product

14   company, which earned him between $200,000 and $300,000 a year.  *Id.* at 9-10.  He

15   left that company after many years to attend medical school and, after graduating

16   from medical school, has resumed work as a pharmacist.  *Id.*  In sum, the evidence

17   overwhelmingly establishes that Plaintiff has enjoyed a successful work life,

18   particularly when compared, as the ADA requires, to that of "most people."  *Wong II*,

19   410 F.3d at 1064-65.[1]

20   Plaintiff offers no affirmative evidence whatsoever to support his assertion that

21   his alleged impairment has substantially limited him in the major life activity of

22   working.  He tries unsuccessfully to contest just one of the facts set out in the Motion

23   pertaining to working: He now denies his own sworn deposition testimony that he has

24   never been let go from a job for incompetence.  *See* Plaintiff's Response to

25

26   [1]    Plaintiff  asserts that *Wong II*'s application of the "compared to most people"

27   standard was *dicta*.  Resp. at 17.  To the contrary, in that case the Ninth Circuit
     applied the legal rule established by the United States Supreme Court in *Toyota Motor*

28   *Mfg. Inc. v. Williams*, 534 U.S. 184 (2002).

Defendant's Statement of Undisputed Facts and Plaintiff's Additional Undisputed Material Facts in Support of the Opposition to Motion for Summary Judgment ("PSOF"), ¶ 29.[2]  But the only "evidence" he offers is his own answer to an interrogatory to the effect that he has been fired from some of the many jobs he has held over his career.  *Id.*  Plaintiff fails to satisfy his burden of showing evidence to support the notion that he was fired for reasons relating to his alleged impairment, or that his alleged impairment substantially limited him generally in the working world.  *Id.*[3]

### 2.    Plaintiff offers no evidence that his alleged impairment substantially limits him in the major life activity of learning.

Plaintiff likewise has failed to submit evidence sufficient to create a material fact as to whether his alleged impairment has substantially limited him in the major life activity of learning.  This inquiry is even simpler than his claim based on working because Plaintiff offers precisely the same evidence as to learning that the Court considered and rejected in connection with the Motion for Preliminary Injunction.  Plaintiff's claim as to learning is based on the so-called evidence recounted on pages 6-8 of his Response:  Isolated remarks by teachers on some elementary school report cards and assertions by Dr. Butterbaugh (who testified during the preliminary injunction hearing and whose 64-page, single-spaced report was taken into evidence at that time) to the effect that Plaintiff has a hard time sitting still, that he seems to

---

[2]     Plaintiff's consultant, Dr. Butterbaugh, opined that Plaintiff "has trouble working for other people, . . . he is a gung-ho leader type, and it's hard for him to work on a team."  Resp. at 8.  But there is no authority cited for the proposition that someone who likes to work for himself, or enjoys leadership roles, is for that reason "substantially limited" in the major life activity of working.  Plaintiff's brief concedes his long and successful history of self-employment.  Resp. at 19.

[3]     In fact, Plaintiff testified that he was let go from one job after he refused a job transfer, Exh. 1 to Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1(A) in Support of Motion for Summary Judgment ("DSOF"), at 163; he was fired from another after he disclosed that he is a Jew, *id.* at 164-165;  and was let go from another job after he had refused to fill certain narcotics prescriptions, *id.* at 166.

1   learn better by discussing rather than reading, that he is easily distracted, and that he

2   interrupts a lot.  Resp. at 6-8.  Plaintiff's Response continues to focus on the fact that

3   ADHD was unknown by that term during his childhood years, but he does not dispute

4   that ADHD is a condition whose symptoms appear in one's childhood.  As shown

5   during the injunction hearing, it is undisputed that Plaintiff was never held back in

6   elementary school and that he received average or above-average grades from

7   childhood through college and received passing or honors marks in each of his

8   medical school classes.  Mot., at 13.  He passed an all-day college entrance

9   examination, took timed examinations in college, and passed on his first attempt a

10  two-day timed written examination to become a licensed pharmacist.  *Id.*  Although

11  Plaintiff asserts that it took him longer than most students to do his work, he does not

12  contend that he sought and received additional time, beyond that allotted to other

13  students, to complete work.

14       In sum, Plaintiff simply has not presented evidence to raise a material issue of

15  fact that his alleged impairment has substantially limited him, compared to most

16  people, in the major life activity of learning.  To the contrary, by graduating from

17  college and achieving a post-graduate degree, his learning far exceeds that of "most

18  people."  *See Wong II*, 410 F.3d at 1066 (academic success is "directly inconsistent"

19  with a claim that one is substantially limited in learning, especially where, as here, no

20  prior accommodations had been granted); Exh. P to PSOF at 31, lines 4-10 (in hearing

21  testimony, Dr. Butterbaugh concedes that it "sounds about right" that fewer than 10

22  percent of the general population makes it into a postgraduate education program).

23

24       **3.    Plaintiff offers no evidence that his alleged impairment
             substantially limits the major life activity of reading.**

25       Plaintiff cannot now resurrect his long-ago abandoned claim that he has

26  suffered a substantial limitation in the major life activity of reading.  Through Dr.

27  Butterbaugh, Plaintiff at first asserted to NBME in early 2003 that ADHD had limited

28  his reading ability.  But once Dr. Butterbaugh properly corrected Plaintiff's reading

1  test scores to compare them to most people, he conceded that Plaintiff was

2  withdrawing his request for accommodations based on any limitation in reading.  *See*

3  Exh. D to PSOF containing Butterbaugh 12/19/03 Letter, at 3 ("Dr. Krolik's

4  eligibility for test-taking accommodations should be based on his ADHD-rather than

5  his reading-related learning disability") and Butterbaugh Neuropsychological

6  Evaluation, at 3 (citing "average" to "well-above average" reading scores).[4]  There is

7  simply no support for any contention by Plaintiff that his ADHD has caused him to be

8  substantially limited in the major life activity of reading.  *See* Defendant's Statement

9  of Undisputed Facts Pursuant to Local Rule 56.1(A) in Support of Motion for

10  Summary Judgment ("DSOF") ¶¶ 42 (citing unrebutted report of Dr. Joseph E.

11  Bernier, Ph.D, a learning disability expert), 43 (citing Dr. Butterbaugh's testimony

12  during injunction hearing that he is no longer saying that Plaintiff suffers from a

13  reading/learning disability).

14  **C.    Plaintiff's Contentions About NBME's Treatment of Other Applicants
       Are Unsupported and Irrelevant and Should Be Rejected.**

15          Rather than address his own situation, Plaintiff devotes the bulk of his

16  Response to arguing about how he contends NBME has treated other examinees'

17  applications for accommodations.  Based on discovery of the NBME's handling of 40

18  files chosen at random from a much larger group of other ADHD applications,

19  Plaintiff seems to argue that the NBME has looked only to whether other applicants

20  are impaired within the meaning of the DSM-IV, rather than also looking to see

21

22  [4]    Dr. Butterbaugh originally had compared Plaintiff's reading scores to those of
23  a group of persons who had completed 16 years of education, in other words, college
    graduates.  Exh. J to PSOF (Butterbaugh depo.), at 37-39.  By that comparison, he
24  concluded that Plaintiff was a "below average" to "above average" reader.  Exh. C to
    PSOF (original Butterbaugh Neuropsychological and Educational Evaluation report,
25  at 3).  After NBME pointed out that the "compared to most people" standard required
    comparison to a group that included lesser-educated individuals, Dr. Butterbaugh
26  compared Plaintiff's scores to a group that included individuals who had completed
    7th grade and higher.  Plaintiff's scores were "average" to "well-above average"
27  compared to that group.  *See* Exh. D to PSOF (Butterbaugh Neuropsychological
    Evaluation), at 3 (citing "average" to "well-above average" reading scores).
28

1    whether the applicants have demonstrated a substantial limitation in a major life

2    activity.  Resp. at 3.

3          Plaintiff offers no facts to support this contention, however; and in any event,

4    the question is whether Plaintiff is entitled to accommodations under the ADA, not

5    whether other applicants may have been entitled.  Further, it is simply not the case

6    that a diagnosis itself, without more, satisfies the ADA's requirement of a showing of

7    a substantial limitation in a major life activity.  *Sutton v. United Air Lines, Inc.*, 527

8    U.S. 471, 483 (1999).  The Supreme Court has held that "[m]erely having an

9    impairment does not make one disabled for purposes of the ADA.  Claimants also

10   need to demonstrate that the impairment limits a major life activity."  *Toyota*, 534

11   U.S. at 195.

12   **D.      Conclusion.**

13         Plaintiff has failed to present any evidence to create a material issue of fact that

14   his alleged ADHD has "substantially limited" him, compared to most people, in the

15   "major life activities" of working, learning or reading.  For this reason and for the

16   other reasons set forth in NBME's Motion for Summary Judgment, the Motion should

17   be granted, and the case should be dismissed.

18         DATED this 9th day of June, 2006.

19                                 OSBORN MALEDON, P.A.

20

21                      By      s/ Diane M. Johnsen
                                Diane M. Johnsen
22                              Ronda R. Fisk
                                2929 North Central
23                              Suite 2100
                                Phoenix, Arizona  85012-2794
24                              Attorneys for National Board of
                                Medical Examiners
25

26

27

28

1

CERTIFICATE OF SERVICE

2

    I hereby certify that on June 9th, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

3

4

                    Pete V. Domenici, Jr., Esq.
                    pdomenici@domenicilaw.com, jwashburn@domenicilaw.com
5                   Attorney for Plaintiff, Ralph E. Krolik, M.D.

6

  s/Kelly Dourlein
7

8       1271312_1.DOC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28